IN WITNESS WHEREOF, this instrument is executed in 5 (Number) counterparts, each one of which shall be deemed an original, this the MAY 15 2002 day of ________.

ATTEST:

Advantage Construction Services, LLC Principal

(Principal) Secretary

(SEAL)

By ________ (s)

101-B W. Railroad Street
Dickson, TN 37055
(Address)

Betty W. LaLeaf
Witness (as to Principal)
375 Baker Cemetery Rd.
Dickson TN 37055
(Address)

RLI Insurance Company
Surety

ATTEST:

Witness to Surety
30 Burton Hills, Ste 310
(Address)
Nashville, TN 37215

BY ________
Attorney-in-Fact
P.O. Box 30665
(Address)
Middleburg Heights, OH 44130

NOTE: Date of BOND must not be prior to date of Contract.

If CONTRACTOR is partnership, all partners should execute BOND.
IMPORTANT: Surety companies executing BONDS must appear on the Treasury Department's most current list (Circular 570 as amended) and be authorized to transact business in the state where the Project is located.

oOo

SURETY
DIVISION
9025 N. Lindbergh Dr. • Peoria, IL 61615

# POWER OF ATTORNEY

***Know All Men by These Presents:***

**BOND NO. SSB-** 337832

That this Power of Attorney is not valid or in effect unless attached to the bond which it authorizes executed, but may be detached by the approving officer if desired.

That **RLI INSURANCE COMPANY**, an Illinois corporation, does hereby make, constitute and appoint Robert L. Harris, Patricia S. Phipps, Charles B. Royse, Jointly or Severally in the City of Nashville, State of Tennessee its true and lawful Agent and Attorney-in-Fact, with full power and authority hereby conferred, to sign, execute, acknowledge and deliver for and on its behalf as Surety, the following described bond.

**Any bond, undertaking, recognizances, or other written obligations (other than bail bonds, bank depository bonds, mortgage deficiency bonds, mortgage guarantee bonds, guarantees of installment paper or note guarantee bonds) providing the bond penalty does not exceed Five Million Dollars ($5,000,000).**

The acknowledgement and execution of such bond by the said Attorney-in-Fact shall be as binding upon this Company as if such bond had been executed and acknowledged by the regularly elected officers of this Company.

The RLI INSURANCE COMPANY further certifies that the following is a true and exact copy of the Resolution adopted by the Board of Directors of RLI Insurance Company, and now in force to-wit:

"All bonds, policies, undertakings, Powers of Attorney, or other obligations of the corporation shall be executed in the corporate name of the company by the President, Secretary, any Assistant Secretary, Treasurer, Vice President, or by such other officers as the Board of Directors may authorize. The President, any Vice President, Secretary and Assistant Secretary, or the Treasurer, may appoint Attorneys-in-Fact or Agents who shall have authority to issue bonds, policies, or undertakings in the name of the Company. The corporate seal is not necessary for the validity of any bonds, policies, undertakings, Powers of Attorney, or other obligations of the corporation. The signature of any such officer and the corporate seal may be printed by facsimile."

*(Blue shaded area above indicates authenticity)*

IN WITNESS WHEREOF, the RLI Insurance company has caused these presents to be executed by its President with its corporate seal affixed this 1st day of January, 2000.

RLI INSURANCE COMPANY CORPORATE SEAL ILLINOIS

RLI INSURANCE COMPANY

By: [signature]
President

State of Illinois )
) SS
County of Peoria )

On this 1st day of January, 2000, before me, a Notary Public, personally appeared Jonathan E. Michael, who being by me duly sworn, acknowledged that he signed the above Power of Attorney as the aforesaid officer of the RLI INSURANCE COMPANY and acknowledged said instrument to be the voluntary act and deed of said corporation.

[signature]
Notary Public

"OFFICIAL SEAL"
CYNTHIA S. DOHM
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 02/24/02

## CERTIFICATE

I, the undersigned officer of RLI Insurance Company, a stock corporation of the State of Illinois, do hereby certify that the attached Power of Attorney is in full force and effect and is irrevocable; and furthermore, that the Resolution of the Company as set forth in the Power of Attorney, is now in force. In testimony whereof, I have hereunto set my hand and the seal of the RLI Insurance Company this ______ day of ________ , ______.

RLI INSURANCE COMPANY

By: [signature]
President

# PAYMENT BOND

KNOW ALL PERSONS BY THESE PRESENTS: that

Advantage Construction Services, LLC
(Name of Contractor)

101-B W. Railroad Street, Dickson, TN 37055
(Address of Contractor)

a Limited Liability Company hereinafter called PRINCIPAL and
(Corporation, Partnership or Individual)

RLI Insurance Company
(Name of Surety)

hereinafter called SURETY, are held and firmly bound unto
City of Portland, TN
(Name of Owner)

100 South Russell Street, Portland, TN 37148
(Address of Owner)

hereinafter called OWNER and unto all persons, firms, and corporations who or which may furnish labor, or who furnish materials to perform as described under the contract and to their successors and assigns in the total aggregate penal sum of One Hundred Thirty-Six Thousand, One Hundred Sixty-Nine Dollars ($ 136,169.00 ) in lawful money of the United States, for the payment of which sum well and truly to be made, we bind ourselves, our heirs, executors, administrators, successors, and assigns, jointly and severally, firmly by these presents.

THE CONDITION OF THIS OBLIGATION is such that whereas, the PRINCIPAL entered into a certain contract with the OWNER, dated the MAY 1 5 2002 day of 2002, a copy of which is hereto attached and made a part hereof for the construction of:

Water System Improvements, Contract 2 - Water Distribution Line

NOW, THEREFORE, if the PRINCIPAL shall promptly make payment to all persons, firms, and corporations furnishing materials for or performing labor in the prosecution of the WORK provided for in such contract, and any authorized extensions or modification thereof, including all amounts due for materials, lubricants, oil, gasoline, coal and coke, repairs on machinery, equipment and tools, consumed or used in connection with the construction of such WORK, and for all labor cost incurred in such WORK including that by a SUBCONTRACTOR, and to any mechanic or materialman lienholder whether it acquires its lien by operation of State or Federal law; then this obligation shall be void, otherwise to remain in full force and effect.

PROVIDED, that beneficiaries or claimants hereunder shall be limited to the SUBCONTRACTORS, and persons, firms, and corporations having a direct contract with the PRINCIPAL or its SUBCONTRACTORS.

PROVIDED, FURTHER, that the said SURETY for value received hereby stipulates and agrees that no change, extension of time, alteration or addition to the terms of the contract or to the WORK to be performed thereunder or the SPECIFICATIONS accompanying the same shall in any way affect its obligation on this BOND, and it does hereby waive notice of any such change, extension of time, alteration or addition to the terms of this contract or to the WORK or to the SPECIFICATIONS.

PROVIDE, FURTHER, that no suit or action shall be commenced hereunder by any claimant: (a) Unless claimant, other than one having a direct contract with the PRINCIPAL shall have given written notice to any two of the following: The PRINCIPAL, the OWNER, or the SURETY above named within ninety (90) days after such claimant did or performed the last of the work or labor, or furnished the last of the materials for which said claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the materials were furnished, or for whom the work or labor was done or performed. Such notice shall be served by mailing the same by registered mail or certified mail, postage prepaid, in an envelope addressed to the PRINCIPAL, OWNER, or SURETY, at any place where an office is regularly maintained for the transaction of business, or served in any manner in which legal process may be served in the state in which the aforesaid project is located, save that such service need not be made by a public officer. (b) After the expiration of one (1) year following the date of which PRINCIPAL ceased work on said CONTRACT, is being understood, however, that if any limitation embodied in the BOND is prohibited by any law controlling the construction hereof, such limitation shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

PROVIDED, FURTHER, that it is expressly agreed that this BOND shall be deemed amended automatically and immediately, without formal and separate amendments hereto, upon amendment to the Contract not increasing the contract price more than 20 percent, so as to bind the PRINCIPAL and the SURETY to the full and faithful performance of the Contract as so amended. The term "Amendment", wherever used in this BOND and whether referring to this BOND, the contract or the loan Documents shall include any alteration, addition, extension or modification of any character whatsoever.

PROVIDED, FURTHER, that no final settlement between the OWNER and the CONTRACTOR shall abridge the right of any beneficiary hereunder, whose claim may be unsatisfied.

WITNESS WHEREOF, this instrument is executed in 5 (Number) counterparts, each of which shall be deemed an original, this the ____ day of MAY 15 2002.

ATTEST:

Advantage Construction Services, LLC Principal

(Principal) Secretary

(SEAL)

By ____________ (s)

101-B W. Railroad Street, Dickson, TN 37055
(Address)

Witness as to Principal

Betty W. LaRose

(Address)
375 Baker Cemetery Rd.
Dickson TN 37055

RLI Insurance Company
Surety

ATTEST:

Witness as to Surety
30 Burton Hills, Ste 310
(Address)
Nashville, TN 37215

By ____________
Attorney -in-Fact
P.O. Box 30669
(Address)
Middleburg Heights, OH 44130

NOTE: Date of BOND must not be prior to date of Contract.
If CONTRACTOR Is partnership, all partners should execute BOND.

IMPORTANT: Surety companies executing BONDS must appear on the Treasury Department's most current list (Circular 570 as amended) and be authorized to transact business in the State where the Project is located.

oOo

SURETY DIVISION

9025 N. Lindbergh Dr. • Peoria, IL 61615

# POWER OF ATTORNEY

*Know All Men by These Presents:*

**BOND NO. SSB-** 337832

That this Power of Attorney is not valid or in effect unless attached to the bond which it authorizes executed, but may be detached by the approving officer if desired.

That **RLI INSURANCE COMPANY**, an Illinois corporation, does hereby make, constitute and appoint Robert L. Harris, Patricia S. Phipps, Charles B. Royse, Jointly or Severally in the City of Nashville, State of Tennessee its true and lawful Agent and Attorney-in-Fact, with full power and authority hereby conferred, to sign, execute, acknowledge and deliver for and on its behalf as Surety, the following described bond.

**Any bond, undertaking, recognizances, or other written obligations (other than bail bonds, bank depository bonds, mortgage deficiency bonds, mortgage guarantee bonds, guarantees of installment paper or note guarantee bonds) providing the bond penalty does not exceed Five Million Dollars ($5,000,000).**

The acknowledgement and execution of such bond by the said Attorney-in-Fact shall be as binding upon this Company as if such bond had been executed and acknowledged by the regularly elected officers of this Company.

The RLI INSURANCE COMPANY further certifies that the following is a true and exact copy of the Resolution adopted by the Board of Directors of RLI Insurance Company, and now in force to-wit:

"All bonds, policies, undertakings, Powers of Attorney, or other obligations of the corporation shall be executed in the corporate name of the company by the President, Secretary, any Assistant Secretary, Treasurer, Vice President, or by such other officers as the Board of Directors may authorize. The President, any Vice President, Secretary and Assistant Secretary, or the Treasurer, may appoint Attorneys-in-Fact or Agents who shall have authority to issue bonds, policies, or undertakings in the name of the Company. The corporate seal is not necessary for the validity of any bonds, policies, undertakings, Powers of Attorney, or other obligations of the corporation. The signature of any such officer and the corporate seal may be printed by facsimile."

*(Blue shaded area above indicates authenticity)*

IN WITNESS WHEREOF, the RLI Insurance company has caused these presents to be executed by its President with its corporate seal affixed this 1st day of January, 2000.

RLI INSURANCE COMPANY

By: Jonathan E. Michael

President

State of Illinois )
) SS
County of Peoria )

On this 1st day of January, 2000, before me, a Notary Public, personally appeared Jonathan E. Michael, who being by me duly sworn, acknowledged that he signed the above Power of Attorney as the aforesaid officer of the RLI INSURANCE COMPANY and acknowledged said instrument to be the voluntary act and deed of said corporation.

Cynthia S. Dohm

Notary Public

"OFFICIAL SEAL"
CYNTHIA S. DOHM
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 02/24/02

CERTIFICATE

I, the undersigned officer of RLI Insurance Company, a stock corporation of the State of Illinois, do hereby certify that the attached Power of Attorney is in full force and effect and is irrevocable; and furthermore, that the Resolution of the Company as set forth in the Power of Attorney, is now in force. In testimony whereof, I have hereunto set my hand and the seal of the RLI Insurance Company this ______ day of MAY 15 2002.

RLI INSURANCE COMPANY

By: Jonathan E. Michael

President

NOTICE OF AWARD

TO: Advanced Construction Services, LLC
101-B W. Railroad Street
Dickson, TN 37055

PROJECT
Description: Water System Improvements, Contract 2 - Water Distribution Line

The OWNER has considered the BID submitted by you for the above described WORK in response to its Advertisement for Bids dated October 21, 2001, and Information for Bidders.

You are hereby notified that your BID has been accepted for items in the amount of $ 136,169.00.

You are required by the Information for Bidders to execute the Agreement and furnish the required CONTRACTOR'S Performance BOND, Payment BOND and certificates of insurance within ten (10) calendar days from the date of this Notice to you.

If you fail to execute said Agreement and to furnish said BONDS within ten (10) days from the date of this Notice, said OWNER will be entitled to consider all your rights arising out of the OWNER's acceptance of your BID as abandoned and as a forfeiture of your BID BOND. The OWNER will be entitled to such other rights as may be granted by law.

You are required to return an acknowledged copy of this NOTICE OF AWARD to the OWNER.

Dated this 6th day of May, 2002.

City of Portland
Owner

By [signature]

Title Mayor

ACCEPTANCE OF NOTICE

Receipt of the above NOTICE OF AWARD is hereby acknowledged

by Advantage Construction Services, LLC. this the MAY 0 6 2002 day of ____________, 20________.
By [signature]
Title Owner

NOTICE TO PROCEED

TO: Advantage Construction Services, LLC
101-B W. Railroad St.,
Dickson, TN 37055

DATE: June 24, 2002

Project: Water System Improvements, Contract 2 - Water Distribution Line

You are hereby notified to commence WORK in accordance with the Agreement dated MAY 15 2002, 2002, on or before June 3, 2002, 2002, and you are to complete the WORK within 150 consecutive calendar days thereafter. The date of completion of all WORK is therefore Oct. 31, 20 02.

City of Portland
Owner

By Jim Calloway

Title Mayor

ACCEPTANCE OF NOTICE

Receipt of the above NOTICE TO PROCEED is hereby acknowledged by Advantage Construction Services, LLC, this the May 24, 2002

By [signature]

Title Owner

Employer Identification Number 62-1789301

oOo

# TABLE OF CONTENTS

## TECHNICAL SPECIFICATIONS

## CONTRACT 2 - WATER DISTRIBUTION LINE


| DIVISION | SUBJECT | PAGES |
|---|---|---|
| 01045 | Cutting and Patching | 1 - 3 |
| 01050 | Field Engineering | 1 - 2 |
| 01090 | Reference Standards | 1 - 2 |
| 01340 | Shop Drawings/Product Data & Samples | 1 - 4 |
| 01530 | Barriers | 1 |
| 01560 | Temporary Controls | 1 – 2 |
| 01570 | Traffic Regulation | 1 – 2 |
| 01710 | Cleaning | 1 – 2 |
| 02221 | Trenching, Backfilling & Compaction | 1 – 6 |
| 02305 | Boring and Jacking | 1 – 2 |
| 02485 | Lawn and Grass Landscaping | 1 – 6 |
| 02605 | Separation of Piped Utilities | 1 – 2 |
| 02713 | Water Distribution Systems | 1 – 12 |
| 02795 | Measurement & Basis of Payment – Water | 1 – 2 |


Case 3:04-cv-00555 Document 74 Filed 07/19/05 Page 9 of 50 PageID #: 253

# CONTRACT 2
# WATER DISTRIBUTION LINE

C. Report unsatisfactory or questionable conditions to Engineer in writing; do not proceed with work until Engineer has provided further instructions.

3.02 PREPARATION

A. Provide adequate temporary support as necessary to assure structural value or integrity of affected portion of work.

B. Provide devices and methods to protect other portions of project from damage.

C. Provide protection from elements for that portion of the project which may be exposed by cutting and patching work, and maintain excavations free from water.

3.03 PERFORMANCE

A. Execute cutting and demolition by methods which will prevent damage to other work, and will provide proper surfaces to receive installation of repairs.

B. Execute excavating and backfilling by methods which will prevent settlement or damage to other work.

C. Employ original installer or fabricator to perform cutting and patching for:

1. Weather-exposed or moisture-resistant elements.

2. Sight-exposed finished surfaces.

D. Execute fitting and adjustment of products to provide a finished installation to comply with specified products, functions, tolerances and finishes.

E. Restore work which has been cut or removed; install new products to provide completed work in accordance with requirements of contract documents.

F. Fit work airtight to pipes, sleeves, ducts, conduit and other penetrations through surfaces.

G. Refinish entire surfaces as necessary to provide an even finish to match adjacent finishes:

1. For continuous surfaces, refinish to nearest intersection.

2. For an assembly, refinish entire unit.

END OF SECTION

SECTION 01050

FIELD ENGINEERING

PART 1 GENERAL

1.01 REQUIREMENTS INCLUDED

A. Provide and pay for field engineering services required for the Project.

1. Survey work required in execution of Project.

2. Civil, structural or other professional engineering services specified, or required to execute Contractor's construction methods.

B. Owner's Representative will identify existing control points and property line corner stakes indicated on the drawings, as required.

1.02 RELATED REQUIREMENTS

A. Conditions of the Contract

B. Section 01010: Summary of Work

C. Section 01720: Record Documents

1.03 QUALIFICATIONS OF SURVEYOR OR ENGINEER

A. Qualified engineer or registered land surveyor, acceptable to Contractor and Owner.

B. Registered professional engineer of the discipline required for the specific service on the Project, if required, licensed in the state in which the project is located.

1.04 SURVEY REFERENCE POINTS

A. Existing basic horizontal and vertical control points for the Project are those designated on drawings.

B. Locate and protect control points prior to starting site work, and reserve all permanent reference points during construction.

1. Make no changes or relocations without prior written notice to Engineer.

2. Report to Engineer when any reference point is lost or destroyed, or required relocation because of necessary changes in grades or locations.


Case 3:04-cv-00555 Document 74 Filed 07/19/05 Page 12 of 50 PageID #: 256

## SECTION 01090

## REFERENCE STANDARDS

PART 1 GENERAL

1.01 REQUIREMENTS INCLUDED

A. Abbreviations and acronyms used in Contract Documents to identify reference standards.

1.02 QUALITY ASSURANCE

A. Application: When a standard is specified by reference, comply with requirements and recommendations stated in that standard, except when requirements are modified by the Contract Documents, or applicable codes establish stricter standards.

B. Publication Date: The publication in effect on the date of issue of Contract Documents, except when a specific publication date is specified.

1.03 ABBREVIATIONS, NAMES, AND ADDRESSES OF ORGANIZATIONS

A. Obtain copies of referenced standard direct from publication source, when needed for proper performance of Work, or when required for submittal by Contract Documents.

AASHTO American Association of State Highway and Transportation Officials
444 North Capitol Street, N.W.
Washington, D.C. 20001

ANSI American National Standards Institute
(Formerly American Standards Association - ASA)
1430 Broadway
New York, New York 10018

AREA American Railroad Engineering Association
2000 "L" Street, N.W.
Washington, D.C. 20036

ASCE American Society of Civil Engineers
345 East 47th Street
New York, New York 10017

SECTION 01340

SHOP DRAWINGS, PRODUCT DATA AND SAMPLES

PART 1 GENERAL

1.01 REQUIREMENTS INCLUDED:

A. Submit shop drawings, product data and samples required by Contract Documents.

1.02 RELATED REQUIREMENTS:

A. Conditions of the Contract: Definitions and additional responsibilities of the parties.

B. Designate in the construction activity listing, or in a separate coordinated schedule, the dates for submission and the dates that reviewed Shop Drawings, Product Data and Samples will be needed.

1.03 SHOP DRAWINGS:

A. Drawings shall be presented in a clear and thorough manner.

1. Details shall be identified by reference to sheet and detail, schedule or room numbers shown on the Contract Drawings.

1.04 PRODUCT DATA:

A. Preparation:

1. Clearly mark each copy to identify pertinent products or models.

2. Show performance characteristics and capacities.

3. Show dimensions and clearances required.

4. Show wiring or piping diagrams and controls.

B. Manufacturer's Standard Schematic Drawings and Diagrams:

1. Modify drawings and diagrams to delete information which is not applicable to the work.

2. Supplement standard information to provide information specifically applicable to the work.


Case 3:04-cv-00555 Document 74 Filed 07/19/05 Page 14 of 50 PageID #: 258

SECTION 01530

BARRIERS

PART 1 GENERAL

1.01 REQUIREMENTS INCLUDED

A. Furnish, install and maintain suitable barriers as required to prevent public entry, and to protect the work, existing facilities, trees and plants from construction operations; remove when no longer needed, or at completion of work.

PART 2 PRODUCTS

2.01 MATERIALS, GENERAL

A. Materials may be new or used, suitable for the intended purpose, but must not violate requirements of applicable codes and standards.

2.02 FENCING

A. Materials to Contractor's option, minimum fence height six (6) feet.

2.03 BARRIERS

A. Materials to Contractor's option, as appropriate to serve required purpose.

PART 3 EXECUTION

3.01 GENERAL

A. Install facilities of a neat and reasonable uniform appearance, structurally adequate for required purposes.

B. Maintain barriers during entire construction period.

C. Relocate barriers as required by progress of construction.

3.02 FENCES

A. Prior to start of work at the project site, install enclosure fence with suitably locked entrance gates.

END OF SECTION


Case 3:04-cv-00555 Document 74 Filed 07/19/05 Page 15 of 50 PageID #: 259

SECTION 01560

TEMPORARY CONTROLS

PART 1 GENERAL

1.01 REQUIREMENTS INCLUDED

A. Provide and maintain methods, equipment, and temporary construction, as necessary to provide controls over environmental conditions at the construction site and related areas under Contractor's control; remove physical evidence of temporary facilities at completion of work.

1.02 RELATED REQUIREMENTS

A. Section 01570: Traffic Regulation

B. Section 01710: Cleaning

1.03 DUST CONTROL

A. Provide positive methods and apply dust control materials to minimize raising dust from construction operation, and provide positive means to prevent air-borne dust from dispersing into the atmosphere.

1.04 WATER CONTROL

A. Provide methods to control surface water to prevent damage to the project, the site, or adjoining properties.

1. Control fill, grading and ditching to direct surface drainage away from excavations, pits, tunnels and other construction areas; and to direct drainage to proper runoff.

B. Provide, operate and maintain hydraulic equipment of adequate capacity to control surface and water.

C. Dispose of drainage water in a manner to prevent flooding, erosion, or other damage to any portion of the site or to adjoining areas.

1.05 DEBRIS CONTROL

A. Maintain all areas under Contractor's control free of extraneous debris.

SECTION 01570

TRAFFIC REGULATION

PART 1 GENERAL

1.01 REQUIREMENTS INCLUDED

A. Provide, operate and maintain equipment, services and personnel, with traffic control and protective devices, as required to expedite vehicular traffic flow on haul routes, at site entrances, on-site access roads, and parking areas.

B. Remove temporary equipment and facilities when no longer required, restore grounds to original, or to specified conditions.

1.02 RELATED REQUIREMENTS

A. Section 01530: Barriers

B. Section 01560: Temporary Controls

1.03 TRAFFIC SIGNALS AND SIGNS

A. Provide and operate traffic control and directional signals required to direct and maintain an orderly flow of traffic in all areas under Contractor's control, or affected by Contractor's operations.

B. Provide traffic control and directional signs, mounted on barricades or standard posts:

1. At each change of direction of a roadway and at each crossroad.

2. At detours.

3. At parking areas.

1.04 FLAGMEN

A. Provide qualified and suitably equipped flagmen when construction operations encroach on traffic lanes, as required for regulation of traffic.

1.05 FLARES AND LIGHTS

A. Provide flares and lights during periods of low visibility:

1. To clearly delineate traffic lanes and to guide traffic.


Case 3:04-cv-00555 Document 74 Filed 07/19/05 Page 17 of 50 PageID #: 261

SECTION 01710

CLEANING

PART 1 GENERAL

1.01 REQUIREMENTS INCLUDED

A. Execute cleaning, during progress of the work, and at completion of the work, as required by General Conditions.

1.02 RELATED REQUIREMENTS

A. Conditions of the Contract.

B. Section 01560: Temporary Controls

C. Each Specification Section: Cleaning for specific products or work.

1.03 DISPOSAL REQUIREMENTS

A. Conduct cleaning and disposal operations to comply with codes, ordinances, regulations, and anti-pollution laws.

PART 2 PRODUCTS

2.01 MATERIALS

A. Use only those cleaning materials which will not create hazards to health or property and which will not damage surfaces.

B. Use only those cleaning materials and methods recommended by manufacturer of the surface material to be cleaned.

C. Use cleaning materials only on surfaces recommended by cleaning material manufacturer.

PART 3 EXECUTION

3.01 DURING CONSTRUCTION

A. Execute periodic cleaning to keep the work, the site and adjacent properties free from accumulations of waste materials, rubbish and windblown debris, resulting from construction operations.



Case 3:04-cv-00555 Document 74 Filed 07/19/05 Page 18 of 50 PageID #: 262

SECTION 02221

# TRENCHING, BACKFILLING, AND COMPACTION

## PART 1 GENERAL

### 1.01 WORK INCLUDED

A. Excavation for piped utility material.

B. Provide necessary sheeting, shoring and bracing.

C. Prepare trench bottom with appropriate materials.

D. Dewater excavation as required.

E. Place and compact granular beds, as required, and backfill.

### 1.02 PRECAUTIONS

A. Notify utility companies when necessary to disturb existing facilities and abide by their requirements for repairing and replacing.

B. Protect all vegetation and other features to remain.

C. Protect all benchmarks and survey points.

## PART 2 PRODUCTS

### 2.01 BEDDING FOR SEWAGE FORCE MAINS

A. Bed in a trench cut in natural ground for sewage force mains installed in unimproved areas. Provide a 4 inch crushed stone bed for sewage force mains installed underneath streets, highways, State highway shoulders, or paved driveways. Crushed stone so provided shall be included in the price per linear foot of pipe installed.

B. Dig bell holes to assure uniform support throughout entire pipe length.

C. Excavate the trench in such a manner as to form a suitable bed on which to place the pipe.


Case 3:04-cv-00555 Document 74 Filed 07/19/05 Page 19 of 50 PageID #: 263

3.03 SHEETING, SHORING AND BRACING

A. When necessary furnish, put in place, and maintain such sheeting, bracing, etc., as may be required to support the sides of the excavation and to prevent movement.

B. Take care to prevent voids outside the sheeting.

C. If voids are formed, immediately fill and ram the void area.

D. Devise plans for performing this work.

E. Unless adjacent facilities will be injured, remove all sheeting, shoring, and bracing after backfill has been placed to a depth of 18 inches over the pipeline.

F. Cut shoring off at the top of the pipe and leave the lower section in the trench.

3.04 USE OF EXPLOSIVES

A. Conduct all blasting operations in accordance with prevailing municipal, State, or other agency regulations, codes, ordinances, or laws.

B. Exercise due caution when blasting adjacent to existing structures and pipelines.

C. If structures or pipelines are damaged, promptly replace or repair them at no expense to Owner.

D. Do not conduct blasting operations within 25 feet of water, sewer, gas or other utility lines.

E. Cover all shots with blasting mats to prevent flying material.

3.05 DISPOSAL OF EXCAVATED MATERIAL

A. Satisfactorily dispose of all excess excavated material that cannot be used for or is not suitable for embankments.

3.06 UNAUTHORIZED EXCAVATION

A. All excavation outside or below the proposed lines and grades shown on the Plans.

B. Backfill areas of unauthorized excavation with the type material necessary (earth, rock or concrete) to insure the stability of the structure of construction involved.

C. Unauthorized excavation or backfill to replace same shall not be a pay item.


Case 3:04-cv-00555 Document 74 Filed 07/19/05 Page 20 of 50 PageID #: 264

1. Deposit Class I granular material (where required), or in unimproved areas use loose soil free from lumps, clods, frozen material or stones in layers approximately 6 inches thick. Crushed stone so placed shall not be a pay item, but included in the price per linear foot of pipe.

2. Compact by hand, or with manually operated machine tampers actuated by compressed air or other suitable means.

3. Use tamps and machines of a suitable type which do not crush or otherwise damage the pipe.

3.10 FINAL BACKFILLING

A. After the backfill has reached a point 18 inches or more above the top of the pipe, perform final backfilling depending upon the location of the work and danger from subsequent settlement.

B. Backfilling in unimproved areas:

1. Dispose of and replace all soft or yielding material which is unsuitable for trench backfill with suitable material.

2. Deposit backfill to the surface of the ground by dragline, bulldozer, or other suitable equipment in such a manner so as not to disturb the pipe.

3. Neatly round sufficient surplus excavated material over the trench to compensate for after settlement.

4. Dispose of all surplus excavated material.

5. Prior to final acceptance, remove all mounds to the elevation of the surrounding terrain.

C. Backfilling beneath driveways and streets where non-rigid and rigid type surfacing is to be replaced:

1. Use Class I granular material Type A, Grading D, crushed limestone or crushed gravel of high weight and density. Crushed stone so placed shall not be a pay item, but included in the price per linear foot of pipe.

2. Carefully deposit in uniform layers, not to exceed 6 inches thick.

3. Compact each layer thoroughly by rolling, ramming and tamping with tools suitable for that purpose in such a manner so as to not disturb the pipe.


Case 3:04-cv-00555 Document 74 Filed 07/19/05 Page 21 of 50 PageID #: 265

# BORING AND JACKING

## PART 1 GENERAL

### 1.01 WORK INCLUDED

A. Placing casing and carrier pipe by boring and jacking und

### 1.02 RELATED WORK

A. Appropriate Piped Utility Sections (02700 numbers).

### 1.03 REGULATIONS AND PERMITS

A. Permits for a crossing highways or railroads will be obta

B. For highway crossings, satisfy the Highway Department t posted surety bonds.

C. For railroad crossings, furnish certificates of insurance in railroad company, naming the railroad as the insured.

## PART 2 PRODUCTS

### 2.01 STEEL CASING PIPE

A. Minimum yield strength of 35,000 psi.

B. Minimum Thickness:

| Nominal Diameter (Inches) | Minimum Thic (Inches) |
|---|---|
| Under 14 | 0.188 |
| 14-16 | 0.219 |
| 18 | 0.250 |
| 20 | 0.281 |
| 22 | 0.312 |
| 24 | 0.344 |
| 26 | 0.375 |
| 28-30 | 0.406 |
| 32 | 0.438 |
| 34-36 | 0.469 |
| 38-42 | 0.500 |

SECTION 02485

LAWN AND GRASS LANDSCAPING

PART 1 GENERAL

1.01 WORK INCLUDED

A. Preparation of landscape area including loosening, pulverizing and fertilizing.

B. Placement of seed, sprigging, sod and topsoil including mulch, where required.

C. Watering of landscaping.

1.02 RELATED WORK

A. Section 02110: Clearing and Grubbing

PART 2 PRODUCTS

2.01 SEED MATERIALS

A. Inspect and test seed for germination and purity prior to mixing.

B. Uniformly mix by Group:

| SEED NAME | QUANTITY % BY WEIGHT |
|---|---|
| GROUP "A" | |
| Lespedeza (Common or Korean | 20% |
| Sericea Lespedeza | 15% |
| Kentucky 31 Fescue | 40% |
| English Rye | 25% |
| GROUP "B" | |
| Kentucky 31 Fescue | 55% |
| Redtop | 15% |
| English Rye | 30% |
| GROUP "C" | |
| Sericea Lespedeza | 50% |
| Kentucky 31 Fescue | 30% |
| English Rye | 20% |

C. Use Group "A" seed from February 1 to August 1.

D. Use Group "B" seed from August 1 to December 1, with the exception that either Group "A" or "B" may be used during the month of August.



Case 3:04-cv-00555 Document 74 Filed 07/19/05 Page 23 of 50 PageID #: 267

2.03 JUTE MESH

A. Open plain weave of single jute yarn and non-toxic to vegetation.

B. Tag jute rolls for identification with 58 warp ends per yard, 41 weft ends per yard and weighing approximately 0.9 pounds per square yard with an acceptable tolerance of 5%.

2.04 STAPLES

A. New and unused, machine made of No. 11 gauge steel wire formed into a "U" shape.

2.05 SOD MATERIALS

A. Live dense, well-rooted growth of permanent grasses, free from Johnson grass, nutgrass, and other undesirable grasses or weeds and well-suited for the proposed application to particular soils.

B. Cleanly cut in strips having a reasonably uniform thickness of not less than 2-1/2 inches, a uniform width of approximately 8 inches, and a minimum length of 12 inches.

2.06 COMMERCIAL FERTILIZERS

A. Unless otherwise specified, inorganic 10-20-10 nitrogen, phosphoric acid, and potash for seeding and 15-15-15 or 1-1-1 for sodding.

B. Furnish in standard containers with the brand name, weight, and guaranteed analysis of the contents clearly marked.

C. Comply with Federal, State, and local laws.

D. Ammonium Nitrate shall be a standard commercial product, having a minimum of 33.5% nitrogen.

E. Agricultural limestone shall contain a minimum of 85% of calcium carbonate and magnesium carbonate combined, and be of particular size that 85% will pass a No. 10 mesh sieve.

2.07 WATER

A. Free from harmful organisms or other objectionable materials.

2.08 TOPSOIL

A. Natural, friable fertile, fine sandy loam possessing characteristics of representative topsoils in the vicinity which produce heavy growths of vegetation.

2. Hold hay or straw mulch in place by the use of a mulch binder applied at the approximate rate of 4 gallons per 1,000 square feet as required.

3. Cover bridges, guardrails, signs and appurtenances, if the mulch binder is applied in such a way that it would come in contact with or discolor the structure(s).

4. When wood fiber mulch is used, uniformly apply at the rate of 28 to 35 pounds per 1,000 square feet with hydraulic mulching equipment.

3.02 SPRIGGING

A. Lightly incorporate fertilizer into the soil for a depth of 1/2 inch at the rate of:

1. Twelve pounds per 1,000 square feet for grade 0-20-20 or equivalent.

2. One-hundred pounds per 1,000 square feet for agricultural limestone.

B. Perform sprigging during September-November or April-May and only when the soil is in tillable or workable condition.

C. Do not set crowns during windy weather or when the ground surface is frozen.

D. Set crowns as soon as preparation of the sprig bed has been completed.

E. Set crowns at the rate of three sprigs per square yard by means of a tree-planting bar or equal.

F. When specified, perform mulching before sprigging:

1. Spread mulch material evenly over the area to be planted at the rate of 100 pounds per 1,000 square feet. This rate may be varied by the Engineer depending upon the texture and condition of the mulch material and the ground surface.

2. Cover with a uniform layer of mulch so that 20 to 25% of the ground is visible. The mulch shall be loose enough to allow sunlight to penetrate and air to circulate slowly, but thick enough to partially shade the ground and to reduce erosion.

3. Hold the mulch in place with mulch binders applied at the rate directed by the Engineer, not to exceed 0.1 gallon per square yard, as required to hold the mulch in place.

3.03 SODDING

A. Place sod at all locations shown on the Plans or where directed.


Case 3:04-cv-00555 Document 74 Filed 07/19/05 Page 25 of 50 PageID #: 269

SECTION 02605

SEPARATION OF PIPED UTILITIES

PART 1 GENERAL

1.01 REQUIREMENTS INCLUDED

A. Location of piped utilities to separate water mains from sewer facilities.

1.02 RELATED WORK

A. Section 02304: Boring and Jacking.

B. Appropriate Piped Utility Sections (02700 numbers).

PART 2 PRODUCTS

(Not Used)

PART 3 EXECUTION

3.01 PARALLEL INSTALLATION

A. Separate water mains at least 10 feet horizontally, measured edge to edge, from any sewer facility whenever possible.

B. When local conditions prevent a horizontal separation of 10 feet, closer installations may be made if:

1. The bottom of the water main is at least 18 inches above the top of the sewer facility; or

2. The sewer is constructed of materials equivalent to water main standards and pressure tested to assure watertightness prior to backfilling

3.02 CROSSINGS

A. Separate water mains crossing sewer facilities by at least 18 inches between the bottom of the water main and the top of the sewer facility whenever possible.

B. When local conditions prevent a vertical separation as described above, the following construction shall be used:


Case 3:04-cv-00555 Document 74 Filed 07/19/05 Page 26 of 50 PageID #: 270

1. Manufactured in accordance with ANSI A-21.50 (AWWA C-151) and ANSI A-21.10 (AWWA C-110).

2. A cement lining meeting the requirements of ANSI 21.4 (AWWA C-104).

3. A minimum of 1-mil thick bituminous coating on the outside surface.

4. Clearly mark with manufacturer's name, D.I. or Ductile, weight, class or nominal thickness, and casting period.

5. Unless otherwise specified or shown on the plans, ductile iron pipe shall be Class 50 for 200 psi working pressure.

B. Fittings:

1. Fittings 4" - 24": Pressure rated at 350 psi.

2. Fittings 30" - 26": Pressure rated at 240 psi.

3. Joints meeting the requirements of ANSI A-21.11 (AWWA C-111).

2.03 SERVICE PIPE

A. Polyethylene Pipe: /**(NOT IN THIS CONTRACT)**

1. Class 160, SDR 9, polyethylene classified PE 3406C suitable for a working pressure of 160 psi.

2. 100% non-toxic polyethylene resin compound of ultra-high molecular weight in accordance with ASTM D-1248.

3. 3/4-inch nominal diameter unless otherwise specified or shown on the plans.

4. Service pipe shall be used to connect the corporation stop with the meter yoke. Use the minimum length required to make a straight line connection including a gooseneck.

B. Copper Pipe:

1. Seamless copper tubing meeting the requirements of ASTM B-88, Type K.

2. Contain not less than 99.90% copper and not more than 0.04% phosphorous.

3. Suitable for use with a working water pressure of 160 psi.

4. 3/4-inch nominal diameter unless otherwise specified or shown on the plans.


Case 3:04-cv-00555 Document 74 Filed 07/19/05 Page 27 of 50 PageID #: 271

6. Suitable to operation at 200 psi working water pressure and adjustable.

D. Valve Boxes:

1. Cast iron 2 or 3-piece, screw type with shaft diameter of not less than 5".

2. Heavy roadway type equipped with a cover containing the work "WATER" in raised letters on the top.

3. Base of such size as to permit its installation without allowing it to come in contact with either the valve or the pipe.

2.06 AIR RELEASE ASSEMBLIES

A. Furnish in 1" nominal diameter for 8" mains and smaller and in 2" nominal diameter for 10" mains and larger, unless otherwise specified or shown on Plans.

B. Air release assemblies shall consist of:

1. Double strap, bronze service clamp with neoprene gasket (for PVC lines).

2. Galvanized steel pipe of the nominal diameter required by the main size.

3. Red brass corporation stop.

4. Galvanized steel elbow.

5. Gate valve.

6. Air release valve.

C. Combination air release valves consisting of:

1. An air vacuum valve coupled with an air release valve.

2. Case iron body, stainless steel float, bronze linkage, bronze trim, suitable for use in mains having a working pressure of 200 psi.

D. Install in a precast concrete manhole, 48" in diameter and 48" deep, with 24" nominal diameter cast iron frame and cover.

E. Place crushed stone from the top of main to 12" below the bottom of main.

C. Pressurization:

1. Slowly fill each valved section of pipe with water.

2. Apply the specified test pressure, based on the elevation of the lowest point of the line, or section under test, and correct to the elevation of the test gauge by means of a pump connected to the pipe in a manner satisfactory to the Owner.

D. Air Removal:

1. Before applying the specified test pressure, expel air completely from the pipe, valves, and hydrants.

2. If permanent air vents are not located at all high points, install corporation cocks at such points to expel air as the line if filled with water.

3. After all the air has been expelled, close the corporation cocks and apply the test pressure.

4. At the conclusion of the pressure test, remove the corporation cocks and plug, or lease in place at the discretion of the Owner.

E. Examination:

1. Carefully examine all exposed pipe, fittings, valves, hydrants, and joints.

2. Repair, or replace, any damaged, or defective pipe, fittings, valve, or hydrants, that are discovered with sound material and repeat the test until it is satisfactory to the Owner.

3.06 WATER LINE LEAKAGE TESTS

A. Concurrently conduct a leakage test with the pressure test.

B. Leakage Defined: The quantity of water that must be supplied into the newly laid pipe to maintain the specified test pressure after the air in the pipeline has been expelled and the pipe has been filled with water.

C. Allowable Leakage:

1. The maximum allowable leakage (water lines and sewage force mains) shall not exceed 10 gallons per inch of pipe diameter per mile of pipe per 24 hours when tested at 1-1/2 times the working pressure or rated pressure of the pipe, whichever is greater.

2. When hydrants are in the test section, test against the closed hydrant.



Case 3:04-cv-00555 Document 74 Filed 07/19/05 Page 29 of 50 PageID #: 273

SECTION 02795

# MEASUREMENT AND BASIS OF PAYMENT - WATER

## PART 1 GENERAL

The Contractor shall furnish all the necessary labor, equipment, materials and incidentals required to perform all work including all excavation and backfill, without additional compensation, for the unit prices indicated in the proposal for the various work items provided for.

## PART 2 WORK ITEMS

### 2.01 WATER LINES

A. Water lines shall be measured along the centerline of the pipe without deduction for valves or fittings. Crushed stone backfill when required shall not be measured for payment, but included in the price per linear foot of pipe. Water lines shall be paid for at the contract unit price per linear foot of pipe for the various sizes and type materials shown in the contract proposal. The price per linear foot shall also include tracer wire and all necessary fittings.

### 2.02 WATER SERVICE PIPE

A. Water service pipe shall be measured along the centerline of the pipe without deduction for valves or fittings. Payment for service line shall be paid for at the contract unit price per linear foot of pipe, complete and in place for the bored and open cut methods of installation.

### 2.03 GATE VALVES AND BOXES

A. Gate valves and boxes shall be measured and paid for at the contract unit price per each installed and accepted complete and in place.

### 2.04 FIRE HYDRANTS

A. Fire hydrants shall be measured and paid for at the contract unit price per each installed and accepted, including connections to the main line, isolating gate valve, and incidentals as shown in the details on the construction plans.



Case 3:04-cv-00555 Document 74 Filed 07/19/05 Page 30 of 50 PageID #: 274

WATER SYSTEM IMPROVEMENTS
CONTRACT 2 – WATER DISTRIBUTION LINE
JCH PROJECT NO. 9611
BID TIME: 10:00 AM / BID DATE:

**MUST BE TN LICENSED CONTRACTOR / $100.00 DEPOSIT REQUIRED**

## BIDDERS LIST

| SET NO. | RECIPIENT NAME | DATE OF P/U | DATE MAILED | DEPOSIT AMOUNT | REFUND AMOUNT | LICENSE CLASS |
|---|---|---|---|---|---|---|
| 1 & 2 | CITY OF PORTLAND<br>100 SOUTH RUSSELL STREET<br>PORTLAND TN 37148<br>325-6776 (O) 325-5345 (F)<br>(KEN WILBER) | N/A | PRIORITY MAILED 10/24/01 ($6.45) | N/A | N/A | N/A |
| 3 | U S DEPT OF AGRICULTURE<br>RURAL DEVELOPMENT<br>NASHVILLE AREA OFFICE<br>3322 WEST END AVE - SUITE 302<br>NASHVILLE TN 37203-6835<br>783-1359 (O) 783-1340 (F)<br>(BARBARA BROWN) | N/A | PRIORITY MAILED 10/24/01 ($3.95) | N/A | N/A | N/A |
| 4 & 5 | F W DODGE<br>1604 ELM HILL PIKE - SUITE 200<br>NASHVILLE TN 37210<br>366-4173 (O)<br>366-7420 (F)<br>(LORETTA OR CINDY) | COURIER P/U ON 10/24/01 | N/A | N/A | N/A | N/A |
| 6 | NASHVILLE CNTRS ASSOC INC<br>1214 PINE STREET<br>NASHVILLE TN 37203<br>254-8346 (O) 254-1223 (F) | N/A | PRIORITY MAILED 10/24/01 ($3.95) | N/A | N/A | N/A |
| 7 | WEST TN PLANS ROOM<br>439 AIRWAYS BOULEVARD<br>JACKSON TN 38301<br>901-427-2573 (O) 901-427-3741 (F) | N/A | PRIORITY MAILED 10/24/01 ($3.95) | N/A | N/A | N/A |
| 8 | CONSTRUCTION MARKET DATA<br>2 INTERNATIONAL DR STE 108<br>NASHVILLE TN 37217<br>399-8991 (O) 399-9141 (F)<br>901-362-6367 (O) 901-362-8426 (F)<br>(DEBRA – MEMPHIS) | N/A | PRIORITY MAILED 10/24/01 ($3.95) | N/A | N/A | N/A |
| 9 | JOHNSON&JOHNSON CONSTR INC<br>1725 LESTER FLATT RD<br>SPARTA TN 38583<br>(JUNIOR JOHNSON)<br>931-738-2043 (O) 931-738-2093 (F) | N/A | PRIORITY MAILED 10/23/01 ($3.95) | $100.00 CHECK TO JILL ON 10/24/01 | | TN LIC: 21361<br>EXP: 07/31/02<br>MU-A<br>$3,000,000.00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 10 | PERDUE TRUCKING & EXCAVATING (130 MORNINGSIDE DRIVE) P O BOX 848 PORTLAND TN 37148 615-325-6177 (O & F) CALL FIRST | N/A | PRIORITY MAILED 10/23/01 ($3.95) | $100.00 CHECK TO JILL ON 10/24/01 | | TN LIC: 37875 EXP: 04/30/02 BC-28;CMC-A; MU-A(2,3), C $1,000,000.00 |
| 11 | JENKINS CONSTRUCTION 1976 ROCKBRIDGE ROAD BETHPAGE TN 37022 615-888-2717 (O/F) (MATT JENKINS) | N/A | PRIORITY MAILED 10/30/01 ($5.20) | TO BE MAILED | | TN LIC: 16301 EXP: 01/31 MU-A.1,2,3,4 $2,000,000.00 |
| 12 | PARRIS CONSTRUCTION INC (8870 HWY 111) P O BOX 424 BYRDSTOWN TN 38549 931-864-6554 (O) 931-864-6280 (F) (JERRY PARRIS) | | PRIORITY MAILED 10/30/01 ($5.20) | $100.00 CHECK TO JILL ON 11/05/01 | | TN LIC: 30952 EXP: 01/31 MU-A,C,D-5;BC; MU-A-(1,3),B,C UNLIMITED |
| 13 | BOLDEN PIPE CNST PIPE CO INC (7005 WESTBELT DRIVE) P O BOX 90388 NASHVILLE TN 37209 615-350-6100 (O) 615-350-6103 (F) | PICK-UP ON 11/01/01 | N/A | $100.00 CHECK HOLD | | TN LIC: 18754 EXP: 05/31 BC-28;MU; HC;HRA;CMC; BC-5,31 UNLIMITED |
| 14 | CLEARY CONSTRUCTION INC 1860 EDMONTON ROAD TOMPKINSVILLE KY 72167 270-427-6146 (M) 270-487-8029 (F) (DON CLEARY) | N/A | PRIORITY MAILED 11/01/01 ($5.20) | $100.00 CHECK TO JILL OM 11/5/01 | | TN LIC: 41957 EXP: 05/31 MU-A,C $1,000,000.00 |
| 15 | PORTLAND UTILITIES CONSTR CO LLC P O BOX 510 PORTLAND TN 37148 615-325-3374 (O) 615-325-3367 (F) | N/A | PRIORITY MAILED 11/02/01 ($5.20) | RTND FOR NEW CHECK 11/5/01 | | TN LIC: 29789 EXP: 11/30 MU-A;BC-A $3,000,000.00 |
| 16 | CONTRACTING SERVICES INC 2267 BAPTIST CHURCH ROAD CULLEOKA TN 38451 931-987-3014 (O) 931-527-9919 (F) | PICK-UP ON 11/05/01 | N/A | $100.00 CHECK HOLD | | TN LIC: 45857 EXP: 07/31 BC-28 $950,000.00 |
| 17 | KENNETH RICH CONSTR INC 109 HOLIDAY COURT STE C-4 FRANKLIN KY 37067 615-595-9600 (O) 615-595-7010 (F) (KENNETH RICH) | PICK-UP ON 11/06/01 | N/A | $100.00 CHECK HOLD | | TN LIC: 35110 EXP: 05/31 HRA MU $1,000,000.00 |
| 18 | LATHAM'S BACKHOE & DOZER SVC 2087 DUNMOR DEERLICK ROAD LEWISBURG KY 42256 270-657-2101 (O) 270-657-2140 (F) (RICHARD LATHAM) | N/A | PRIORITY MAILED 11/07/01 ($5.20) | $50.00 CHECK HOLD; $50.00 TO BE SENT | | TN LIC: 42070 EXP: 09/30 MU-A(2&3) $750,000.00 |

COPY

TO: John Gilmore

FROM: Kenneth Wilber

RE: Pre-bid meeting November 8, 2001

1. What method to remove rock?
2. Will there be a rock clause included in the agreement?
3. Can river pipe be used in the swell?
4. Pay item for concrete for encasement.
5. How much cover will be needed on the 16-inch line?
6. Clarify who will make connection to the Water Treatment Plant?
7. Explain how bid will be awarded if we go the alternate route.

November 8, 2001

Pre Bid Meeting for the Water Distribution Line (12-inch line from WTP)

Please sign in:

1. Jerry Parrish -
2. Ronnie Rerdue
3. Darline Baker
4. Dany Harfore D + M Const.
5. Lynwood Johnson J&J
6. Kenneth R Rich Kenneth Rich Const. Co.
7. Jim Brasher Bolden Pipe
8. Benny Hand " "
9. Steve Sigrey " "
10. Wayne Timbs Dodd Const.
11. Adam Ray Contracting Services Inc.
12. Wayne Haynes " "
13 Jenkins Const Co. - Mack Jenkins
14 " Sammy Steffen
15 John Keck Portland Utilities Construction
16 Danny Hardin John Coleman Hayes P.C.
17 [illegible] City of Portland
18 Brian Goodwin City of Portland
19 John Stegman City of Portland
20. Melvin Minnis
21 Jimmy Stewart

Case 3:04-cv-00555 Document 74 Filed 07/19/05 Page 34 of 50 PageID #: 278

CITY OF PORTLAND
WATER PLANT UPGRADE II
100 SOUTH RUSSELL ST
PORTLAND, TN 37148

1043

87-299/641

July 19, 2002 DATE

THE
DER OF Advantage Construction Services $ 75,348.00

Seventy Five Thousand Three Hundred Forty Eight and no/100 DOLLARS

Security Features Details on Back.

Volunteer State Bank
Portland, TN 37148

R Distribution Main Contract - Pay Estimate #1

Jim Calloway
Billy Cunningham

MP

⑈001043⑈ ⑆064102999⑆ 050 439 4⑈

DATE: July 19, 2002

CHECK: #1043

TO: Advantage Construction Services

INVOICE: Pay Estimate #1

FOR: Phase II Lake Project
Distribution Main Contract

TOTAL: $75,348.00

413-11218 Bank
413-52116-930

cc: Billy Cunningham
Patricia Keen
Accounts Payable

EXHIBIT
#3 Wilber
6-6-05 cm

FORM APPROVED
OMB NO. 0575-0042

# CITY OF PORTLAND

USDA-FmHA
Form FmHA 1924-18
(Rev. 2/87)

## PARTIAL PAYMENT ESTIMATE

NO. JUL
PARTIAL PAYMENT ESTIMATE NO. 1 2002
PAGE 1 OF 3

OWNER: City of Portland, TN

CONTRACTOR: Advantage Const. Svcs

PERIOD OF ESTIMATE FROM June 1 TO 6/14/02

**CONTRACT CHANGE ORDER SUMMARY**

| No. | FmHA Approval Date | Amount Additions | Amount Deductions |
|---|---|---|---|
| | | | |
| TOTALS | | | |
| NET CHANGE | | | |

**ESTIMATE**

1. Original Contract ............ 136,169.00
2. Change Orders ............ 0
3. Revised Contract (1 + 2) ............ 136,169.00
4. Work Completed * ............ 0
5. Stored Materials * ............ 83720
6. Subtotal (4 + 5) ............ 83720
7. Retainage * ............ 8372
8. Previous Payments ............ 0
9. Amount Due (6-7-8) ............ 75,348

* Detailed breakdown attached

**CONTRACT TIME**

Original (days) 150
Revised 0
Remaining

On Schedule ☒ Yes ☐ No

Starting Date June 12, 2002
Projected Completion July 20, 02

**CONTRACTOR'S CERTIFICATION:**
The undersigned Contractor certifies that to the best of their knowledge, information and belief the work covered by this payment estimate has been completed in accordance with the contract documents, that all amounts have been paid by the contractor for work for which previous payment estimates was issued and payments received from the owner, and that current payment shown herein is now due.

Contractor Advantage Const. Svcs
By [signature]
Date 6/14/02

**ARCHITECT OR ENGINEER'S CERTIFICATION:**
The undersigned certifies that the work has been carefully inspected and to the best of their knowledge and belief, the quantities shown in this estimate are correct and the work has been performed in accordance with the contract documents.

Architect or Engineer John Coleman Hayes, P.C.
By [signature]
Date JUL 02 2002

**APPROVED BY OWNER:**

Owner City of Portland, TN
By [signature] Callaway, Mayor
Date 7/9/02

**ACCEPTED BY FmHA:**
The review and acceptance of this estimate by FmHA does not attest to the correctness of the quantities shown or that the work has been performed in accordance with the contract documents.

By [signature], RDS
Date July 10, 2002

FORM APPROVED OMB NO. 0575-0042

USDA-FmHA
Form FmHA 1924-7
(Rev. 2/87)

# CONTRACT CHANGE ORDER

| | |
|---|---|
| ORDER NO. | One |
| DATE | 7/24/02 |
| STATE | Tennessee |
| COUNTY | Sumner |

CONTRACT FOR Water System Improvements - Contract 2 - Water Distribution Line

OWNER City of Portland, TN

To Advantage Construction Services, LLC (Contractor)

You are hereby requested to comply with the following changes from the contract plans and specifications:

| Description of Changes | DECREASE in Contract Price | INCREASE in Contract Price |
|---|---|---|
| 1. ADD 206 LF of 16" Class 50, Ductile Iron Pipe @ $24.22/LF | | $ 4,989.32 |
| 2. DEDUCT 100 Tons of Crushed Stone @ $9.00/Ton | $ 900.00 | |
| 3. DEDUCT 50 SY of Hot Mix Pavement Replacement @ $25.00/SY | $ 1,250.00 | |
| TOTALS | $ 2,150.00 | $ 4,989.32 |
| NET CHANGE IN CONTRACT PRICE | $ | $ 2,839.32 |

JUSTIFICATION: Balance final quantities.

The amount of the Contract will be Increased By the Sum Of: Two Thousand and Eight Hundred Thirty-Nine and 32 / 100 Dollars ($ 2,839.32 ). The Contract Total Including this and previous Change Orders Will Be: One Hundred Thirty-Nine Thousand, Eight and 32 / 100 Dollars ($ 139,008.32 ).

The Contract Period Provided for Completion Will Be Unchanged: 440 Days.

This document will become a supplement to the contract and all provisions will apply hereto.

Requested: Jim Calloway — City of Portland (Owner) — 9/17/02 (Date)

Recommended: [signature] — John Coleman Hayes, P.C. (Owner's Architect/Engineer) — JUL 24 2002 (Date)

Accepted: [signature] — Advantage Construction Services, LLC (Contractor) — 7-24-02 (Date)

Approved By FmHA: Barbara C. Brown, Rural Develop-ment Specialist (Name and Title) — 9/18/02 (Date)

EXHIBIT
#4 Wilber
6-6-05

-FmHA
Form FmHA 1924-18
(Rev. 2/87)

# PARTIAL PAYMENT ESTIMATE

CONTRACT NO.

PARTIAL PAYMENT ESTIMATE NO. 2

PAGE 1 OF 2

OWNER: City of Portland

CONTRACTOR: Advantage Construction Svcs.

PERIOD OF ESTIMATE FROM 6/15 TO 7/23

**CONTRACT CHANGE ORDER SUMMARY**

| No. | FmHA Approval Date | Amount Additions | Amount Deductions |
|---|---|---|---|
| | | | |
| TOTALS | | | |
| NET CHANGE | | | |

**ESTIMATE**

| | |
|---|---|
| 1. Original Contract | 136,169.00 |
| 2. Change Orders | 2,839.32 |
| 3. Revised Contract (1 + 2) | 139,008.32 |
| 4. Work Completed * | 139,008.32 |
| 5. Stored Materials * | |
| 6. Subtotal (4 + 5) | 139,008.32 |
| 7. Retainage * | 14,300.83 |
| 8. Previous Payments | 75,348.00 |
| 9. Amount Due (6-7-8) | 49,359.49 |

* *Detailed breakdown attached*

**CONTRACT TIME**

Original (days) 150
Revised
Remaining

On Schedule ☒ Yes ☐ No
ahead of schedule

Starting Date June 12, 2002
Projected Completion July 26, 2002

**CONTRACTOR'S CERTIFICATION:**
The undersigned Contractor certifies that to the best of their knowledge, information and belief the work covered by this payment estimate has been completed in accordance with the contract documents, that all amounts have been paid by the contractor for work for which previous payment estimates was issued and payments received from the owner, and that current payment shown herein is now due.

Contractor Advantage Construction Services, LLC
By [signature]
Date 7-24-02

**ARCHITECT OR ENGINEER'S CERTIFICATION:**
The undersigned certifies that the work has been carefully inspected and to the best of their knowledge and belief, the quantities shown in this estimate are correct and the work has been performed in accordance with the contract documents.

Architect or Engineer John Coleman Hayes, P.C.
By [signature]
Date AUG 29 2002

EXHIBIT
#5 Wilber 6-6-05 LM

**APPROVED BY OWNER:**

Owner
By
Date

**ACCEPTED BY FmHA:**
The review and acceptance of this estimate by FmHA does not attest to the correctness of the quantities shown or that the work has been performed in accordance with the contract documents.

By
Date



FORM APPROVED OMB NO. 0575-0042

| ITEM | DESCRIPTION | CONTRACT (revised) QUANTITY | CONTRACT UNIT PRICE | CONTRACT AMOUNT | THIS PERIOD QUANTITY | THIS PERIOD AMOUNT | TOTAL TO DATE QUANTITY | TOTAL TO DATE AMOUNT | % COMPLETE |
|---|---|---|---|---|---|---|---|---|---|
| 1A | 16" C50 | 5406 | $ 24.22 | $ 130,933.32 | 5406 | $ 130,933.32 | 5406 | $ 130,933.32 | 100 |
| 2 | 16" Gate Valve | 1 | 1700.00 | 1,700.00 | 1 | 1,700.00 | 1 | 1,700.00 | 100 |
| 3 | Tapping Tee & Valve | 1 | 1700.00 | 1,700.00 | 1 | 1,700.00 | 1 | 1,700.00 | 100 |
| 5 | Concrete | 15 | 45.00 | 675.00 | 15 | 675.00 | 15 | 675.00 | 100 |
| 7 | Connection | 2 | 2000.00 | 4,000.00 | 2 | 4,000.00 | 2 | 4,000.00 | 100 |
| | TOTALS | | | | | | | 139,008.32 | |

TYPICAL LUMP SUM PRICE BREAKDOWN *

| ITEM | DESCRIPTION | SCHEDULED VALUE | WORK COMPLETED THIS PERIOD | WORK COMPLETED TO DATE | % COMPLETE |
|---|---|---|---|---|---|
| | | $ | $ | $ | |
| | TOTALS | | | | |

TYPICAL STORED MATERIALS AND RETAINAGE BREAKDOWN *

MATERIALS STORED AT END OF THIS PAYMENT PERIOD

| DESCRIPTION | QUANTITY | UNIT VALUE | AMOUNT |
|---|---|---|---|
| None | | $ | $ |

RETAINAGE

| | THIS ESTIMATE | PERCENT | RETAINED |
|---|---|---|---|
| WORK COMPLETED: | $ 139,008.32 | 100 % | $ 14,300.83 |
| STORED MATERIALS: | None | | |
| OTHER (explain) | | | |
| TOTAL | 139,008.32 | | 14,300.83 |

* As a minimum, detailed breakdowns should contain this information.

U.S. GPO: 1987-754-007/41515



FmHA 1924-18
REVERSE

**To:** Tim Winship, Senior Claim Analyst
**Fax #:** 309-692-6796
**Re:** Advantage Construction Services, LLC
**Date:** January 21, 2003
**Pages:** 2, including this cover sheet.

# FACSIMILE

I understand that you have now talked to Mr. John Coleman Hayes, Engineer for City of Portland, on the Water System Improvements, Contract 2 - Water Distribution Line. He advises that you have been notified of a meeting in the morning at 10:00 a.m. at the City Hall regarding this project. The City of Portland has now taken the project over due to the default of your insured. A copy of the letter sent to Advantage is attached.

As I mentioned in our phone conversation, Mr. Ken Wilber, Director of Public Works is out of the country. I have talked to his secretary and she believes the person he spoke with at US Pipe is Mr. Mike Stegald, phone number 615-883-2747.

I look forward to seeing you or your representative in the morning at the City of Portland.

cc: Mr. James Calloway, Mayor - City of Portland

From the desk of...

DAVID M. AMONETTE
ATTORNEY
AMONETTE & STUBBS
554 WEST MAIN STREET
GALLATIN, TENNESSEE 37066

(615) 452-5537
Fax: (615) 452-5592

EXHIBIT
#6 Wilber
6-6-05 um

AMONETTE AND STUBBS
ATTORNEYS AT LAW
AN ASSOCIATION OF SOLE PRACTITIONERS
591 WEST MAIN STREET
GALLATIN, TENNESSEE 37066

DAVID M. AMONETTE
WALTER H. STUBBS

GALLATIN
(615) 452-5467
TELECOPIER
(615) 452-5563

January 8, 2003

Mr. Trent B. Smith
Advantage Construction Services, LLC
101-B W. Railroad Street
Dickson, TN 37055

**CERTIFIED-RETURN RECEIPT REQUESTED and REGULAR MAIL**

RE: Advantage Construction Services, LLC
Performance and Payment Bond No. SSB-337832
Project: Water System Improvements, Contract 2 - Water Distribution Line

Dear Mr. Smith:

The status of your company's performance under the contract dated May 15, 2002 relating to the construction of a Water Distribution Line has been reviewed by City of Portland officials in consultation with Mr. John Coleman Hayes, the City Engineer. It has been determined that your company has failed to meet the requirements of this contract by having the project completed properly and within the time period required by the contract and there has been no apparent progress made in correcting the significant number of installation errors that have occurred.

Therefore, pursuant to Section 15.02 of the General Conditions of the Contract, notice is hereby given that the services of your company are terminated effective ten (10) days after the receipt by you of this letter. The City of Portland intends to take over the project and finish the work by whatever means and methods the City of Portland deems expedient. As indicated, notice of this action is being sent to you and your surety and you are respectfully asked to remove your company and subcontractors within the time required.

By taking this action, the City of Portland does not release your company or its surety for all costs and damages that the City of Portland may occur as a result of the failure of your company to perform the contract.

Should you have questions, feel free to call me.

Very truly yours,

David M. Amonette
City Attorney

DMA/jm

cc: RLI Insurance Company, Surety (sent Certified and Regular)
Mayor Jim Calloway, City of Portland
Mr. Ken Wilber, Superintendent of Public Works
City of Portland
✓Mr. John Coleman Hayes, Engineer, John Coleman Hayes, P.C.

C:\OFFICE\WPWIN\WPDOCS\MUNICIPA\COP-ADV.WPD

# FAX TRANSMISSION

**AMONETTE & STUBBS**
554 WEST MAIN STREET
GALLATIN, TENNESSEE 37066
(615) 452-5537
FAX: (615) 452-5502

**To:** MAYOR JIM CALLOWAY **Date:** January 20, 2003

**Fax #:** 325-5345 **Pages:** 1, including this cover sheet.

**From:** DAVID M. AMONETTE

**Subject:** LETTER TO JOHN COLEMAN HAYES

COMMENTS:

The letter is fine but I think you need to let him know about what has happened today. I tried to call back but the answering machine kept coming on.

CITY OF PORTLAND, TN
Proud, Progressive Portland
Home of the STRAWBERRY FESTIVAL

Jim Calloway
Mayor

Luther Bratton
Vice-Mayor

City Council:
Don Anderson
Jim Butler
Jerry Denning
Ronnie Meadows
Walter "Buck" Morris
Marilyn Utley

100 South Russell, Portland, Tennessee 37148
615-325-6776

January 20, 2003

John Coleman Hayes
Woodmont Centre
104 Woodmont Blvd. Suite 401
Nashville, Tennessee 37205

Dear Mr. Hayes:

Pursuant to the City Attorney David Amonette's letter to Advantage Construction Service, LLC, dated January 8, 2003, please notify Advantage Construction Services, LLC they are hereby requested to vacate the City property relative to the construction of a water distribution line.

Sincerely,

Jim Calloway

Jim Calloway
Mayor

JC/dbb

Enclosure

CC: David Amonette, City Attorney
Ken Wilber

LAW OFFICES
SCHULMAN, LEROY & BENNETT, P.C.
SUITE 701-THE FIVE HUNDRED AND ONE UNION BUILDING
POST OFFICE BOX 190676
NASHVILLE, TENNESSEE 37219-0676
TELEPHONE (615) 244-6670
FACSIMILE (615) 254-5407

W. WAYNE LEROY
ANGUS GILLIS, III
GARY S. RUBENSTEIN
KEENE W. BARTLEY
BARBARA J. PERUTELLI
DOUGLAS E. JONES
ASHLEY N. ARNOLD

OF COUNSEL
JOHN I. HARRIS, III
BRENDA MEASELLS DOWDLE

I. R. SCHULMAN
(1908-1986)
T. T. McCARLEY
(1918-1975)
LEWIS D. PRIDE
(1933-1978)
H. MICHAEL BENNETT
(RETIRED 1998)
OF COUNSEL
SEYMOUR SAMUELS, JR.
(1912-1992)

COPY

September 10, 2003

**VIA FAX - 452-5592**
**AND U. S. MAIL**

David Amonette, Esq.
554 West Main Street
Gallatin, TN 37066-3132

Re: City of Portland Claim Against RLI Insurance Company Based On Alleged Breach of Contract by Advantage Construction Services, LLC

Dear David:

Enclosed you will find a facsimile copy of the Release, Assignment and Agreement. The facsimile copy has been executed by Timothy N. Winship on behalf of RLI Insurance Company. I am also enclosing an original of this document. I am requesting that your client sign the original as well as the facsimile copy. The facsimile copy is totally binding. For record keeping purposes, I prefer to get one that is not a facsimile. This is the reason I am sending you a second Release, Assignment and Agreement.

I am also enclosing a check made payable to the City of Portland, Tennessee in the amount of $46,216.50 which you are authorized to execute when the Release, Assignment and Agreement is properly executed by the City of Portland and returned to me. Your cooperation in this matter is greatly appreciated.

Sincerely,

Angus

Angus Gillis, III

AG:ags
Enclosures
cc: Mr. Tim Winship
RLI Insurance Company

# RELEASE, ASSIGNMENT, AND AGREEMENT

WHEREAS, RLI Insurance Company, a surety corporation with principal offices in Peoria, Illinois, hereinafter "Surety", executed as Surety a bond covering the following contract:

| | |
|---|---|
| Principal | Advantage Construction Services, LLC |
| Bond No. | 337832 |
| Type of Bond | Performance Bond |
| Obligee | City of Portland, Tennessee |
| Project | Water System Improvements Contract 2-Water Distribution Line |

and

WHEREAS, City of Portland, Tennessee has made claim against the Surety under said bond and does covenant and warrant that Advantage Construction Services, LLC has not performed the work in accordance with the plans and specifications, and

WHEREAS, the original contract amount was in the amount of $136,169.00, and

WHEREAS, there was one change order to the contract in the amount of $2,839.32 dated July 24, 2002, and

WHEREAS, the sum of $75,348.00 has been paid under the contract; and

WHEREAS, $63,660.32 remains unpaid under the contract; and

WHEREAS, City of Portland and RLI Insurance Company have agreed to resolve any claims that the City of Portland may have against RLI Insurance Company subject to the terms as contained herein, and

WHEREAS, the parties wish to execute this Release and Assignment to set forth their agreement.

NOW, THEREFORE, for and in consideration of the premises and of the payment by the Surety of the sum of $46,216.50 to the City of Portland, Tennessee, the parties agree as follows:

1. The City of Portland, Tennessee, for and on behalf of itself, its officers, elected officials, successors and assigns, does hereby release RLI Insurance Company, its officers, directors, successors and assigns from any and all liability that RLI Insurance Company might have to the City of Portland under the Performance Bond which bears Bond No. 337832 and which is the Performance Bond for the Water System Improvements, Contract 2 - Water Distribution Line (the Project).

2. The City of Portland, Tennessee shall be responsible for the completion of the work that was to be performed by Advantage Construction Services, LLC and for the correction of any work performed by Advantage Construction Services, LLC or its subcontractors.

3. There was a Payment Bond issued on this project which also bears Bond No. 337832 under which the principal is Advantage Construction Services, LLC, the Surety is RLI Insurance Company and the City of Portland is the owner or obligee. RLI Insurance Company is relieved of any liability under this bond except for the payment of any claims that are properly and timely made by material suppliers who have supplied material to the project prior to January 22, 2003.

Nothing herein shall be construed as a waiver or relinquishment of any defenses Surety has against any claims made by any material suppliers. Each of the parties represent and warrant that they are not aware of any potential claims by material suppliers except for a claim by Walter A. Wood Supply Company, Inc., the alleged pipe supplier and a company who alleges it supplied fuel to the project.

4. The City of Portland, Tennessee does hereby assign, transfer and set over to said Surety any and all claims it has of any nature against Advantage Construction Services, LLC and its successors, assigns, officers, owners and members as well as any claims it has against any

subcontractors performing work on the project and their officers, directors, owners, successors and assigns. This assignment includes any claim the City of Portland, Tennessee might have pertaining to the Project whether such claims are based on breach of contract, tort or other theory. This assignment is made to insure that Surety is fully subrogated to all the rights of the City of Portland so as to allow Surety to recover from Advantage Construction Services LLC and any other responsible entities or persons all sums it has paid to settle the claim made by the City of Portland. Notwithstanding the foregoing, if the City of Portland is sued by Advantage Construction Services LLC alleging that the City of Portland breached the contract with Advantage Construction Services LLC, the City of Portland shall be entitled to assert any claims being assigned to Surety under this paragraph as a setoff against any such liability. In such event, the claim assigned to the Surety shall be deemed returned to the City of Portland to the extent a court of competent jurisdiction should determine that the City of Portland breached its contract with Advantage Construction Services LLC. If this occurs, the amount of the claim that is returned shall be equal to the allowed amount of the setoff. In no event shall Surety be obligated to pay any additional money to the City of Portland. If the City of Portland is sued by Advantage Construction Services alleging breach of the subject contract, the City of Portland shall not allege any setoff against the claim of Advantage Construction Services LLC unless it gives immediate notice to Surety that it is claiming such offset. This notice provision is included to afford Surety with the opportunity to intervene in the lawsuit and protect its interest.

5. The City of Portland, Tennessee represents and acknowledges that it shall have no warranty claims whether now existing or arising in the future against Advantage Construction Services, LLC, the Surety and/or their successors, assigns, officers, owners and members.

6. The City of Portland, Tennessee shall indemnify and hold harmless Surety from any and all claims of any nature that might be made against Surety by the engineers on the project, whether such claims are for additional engineering services, additional inspection services or otherwise.

IN WITNESS WHEREOF, the parties have hereunto set their hands on the day and date set forth opposite their names.

Dated: 9/15/03

CITY OF PORTLAND, TENNESSEE

By: Jim Calloway

Dated: September 8, 2003

RLI INSURANCE COMPANY

By: Timothy E. Winship

Timothy E. Winship

Its: Sr. Bond Claims Analyst

SURETY



Case 3:04-cv-00555 Document 74 Filed 07/19/05 Page 48 of 50 PageID #: 292

STATE OF TENNESSEE
COUNTY OF Sumner

Before me, Teresa Keen of the State and County aforesaid, personally appeared Tim Callaway, with whom I am personally acquainted, or proved to me on the basis of satisfactory evidence, and who, upon oath, acknowledged him to be the Mayor of City of Portland, Tennessee, the within bargainor, and that he as such Mayor, being so authorized to do, executed the foregoing instrument for the purpose therein contained by signing the name of City of Portland, Tennessee by Tim Callaway as Mayor.

Witness my hand and official seal at Portland, Sumner County, Tennessee, this the 15th day of September, 2003.

Teresa Keen
Notary Public

Commission Expires:
08/16/2004

STATE OF IL
COUNTY OF Peoria

Before me, Sandra J. Clayton of the State and County aforesaid, personally appeared Timothy E. Winship, with whom I am personally acquainted, or proved to me on the basis of satisfactory evidence, and who, upon oath, acknowledged himself to be the Sr. Bond Claims Analyst of RLI Insurance Company, the within bargainor, and that he as such analyst, being so authorized to do, executed the foregoing instrument for the purpose therein contained by signing the name of RLI Insurance Company by himself as analyst.

Witness my hand and official seal at Peoria, Peoria County, Illinois this the 8th day of September 2003.

Sandra J. Clayton
Notary Public

Commission Expires:
10/29/05

"OFFICIAL SEAL"
NOTARY PUBLIC STATE OF ILLINOIS
SANDRA J. CLAYTON
COMMISSION EXPIRES 10/29/05

STATE OF TENNESSEE
COUNTY OF Sumner

Before me, ___ ____________________ of the State and County aforesaid, personally appeared __________________________, with whom I am personally acquainted, or proved to me on the basis of satisfactory evidence, and who, upon oath, acknowledged ________ to be the _____ ________________ of City of Portland, Tennessee, the within bargainor, and that ___ as such ___ ___________, being so authorized to do, executed the foregoing instrument for the purpose therein contained by signing the name of City of Portland, Tennessee by ___________ as _____________ ___________.

Witness my hand and official seal at __________, _____________ County, Tennessee, this the ____ day of _____________, 2003.

________________________________
Notary Public

Commission Expires:

__________________

STATE OF
COUNTY OF

Before me, __________________________ of the State and County aforesaid, personally appeared Timothy E. Winship, with whom I am personally acquainted, or proved to me on the basis of satisfactory evidence, and who, upon oath, acknowledged himself to be the ________________ _____ of RLI Insurance Company, the within bargainor, and that he as such _____________, being so authorized to do, executed the foregoing instrument for the purpose therein contained by signing the name of RLI Insurance Company by himself as _______________.

Witness my hand and official seal at __________, _____________ County, __________, this the ____ day of _____________, 2003.

________________________________
Notary Public

Commission Expires:

__________________