**RLI**

Claim # 00153529

Check # 0414031

TOSM

TWINS

RLI Insurance Co.

ATTN: ANGUS GILLIS, III

SCHULMAN, LEROY & BENNETT
501 UNION BUILDING, SUITE 701
P.O. BOX 190676
NASHVILLE TN 372190676

THE FRONT OF THIS CHECK HAS A MULTI-TONE GREEN BACKGROUND AND A MICRO-PRINT BORDER

**RLI** RLI Insurance Co.
9025 N. Lindbergh Drive
Peoria, Illinois 61615

CLAIM # 00153529
POLICY # SSB0037862
DATE OF LOSS 12/23/02
BRANCH SURETY AMERICA INC
INSURED ADVANTAGE CONSTRUCTION SERVICE
CLAIMANT CITY OF PORTLAND

CHECK # 0414031 2-1/710

DATE 09/09/03

Bank One, NA
Peoria, Illinois

STMT OF ACCT: IN FULL AND FINAL SETTLEMENT FROM ANY AND ALL CLAIMS ARISING OUT OF THIS OCCURENCE

CHECK AMOUNT ****46,216.50

Forty-Six Thousand Two Hundred Sixteen and 50/100 Dollars

☐ OPEN ☐ FINAL

Amount of $5,000 and Over Require Two Signatures

PAY TO THE ORDER OF
CITY OF PORTLAND, TN

RLI Insurance Co.

Authorized Signature (s)

⑈0414031⑈ ⑆071000013⑆ ⑈280⑉076⑉791⑈

CHECK IS VOID IF BACKGROUND OR MICROPRINT BORDER ARE MISSING — CHECK HAS A TRUE WATERMARK. HOLD TO LIGHT TO VIEW.

EXHIBIT
#7 Wilber
6-6-05

FORM APPROVED
OMB NO. 0575-0042

Form RD 1924-18
(Rev. 6-97)

UNITED STATES DEPARTMENT OF AGRICULTURE
RURAL DEVELOPMENT
FARM SERVICE AGENCY

Completion ~~PARTIAL~~ PAYMENT ESTIMATE

CONTRACT NO. WATER DIST. LINE (RE-BID)

~~PARTIAL~~ PAYMENT ESTIMATE NO. 2

PAGE 1

OWNER: CITY of PORTLAND

CONTRACTOR: NORRIS EXCAVATING

PERIOD OF ESTIMATE FROM 10-06-03 TO 11-20-03

CONTRACT CHANGE ORDER SUMMARY

| No. | Agency Approval Date | Amount Additions | Amount Deductions |
|---|---|---|---|
| | | | |
| TOTALS | | | |
| NET CHANGE | | | |

ESTIMATE

| | |
|---|---|
| 1. Original Contract | 107,037.50 |
| 2. Change Orders | |
| 3. Revised Contract (1 + 2) | |
| 4. Work Completed* | 107,110.00 |
| 5. Stored Materials* | |
| 6. Subtotal (4 + 5) | 107,110.00 |
| 7. Retainage* | 10,711.00 |
| 8. Previous Payments | 47,475.00 |
| 9. Amount Due (6-7-8) | 48,924.00 |

* *Detailed breakdown attached*

CONTRACT TIME

Original (days) 150
Revised
Remaining 105

On Schedule ☒ Yes ☐ No
Completed

Starting Date 10-06-03
~~Projected~~ Completion Completed 11-20-03

CONTRACTOR'S CERTIFICATION:
The undersigned Contractor certifies that to the best of their knowledge, information and belief the work covered by this payment estimate has been completed in accordance with the contract documents, that all amounts have been paid by the contractor for work for which previous payment estimates was issued and payments received from the owner, and that current payment shown herein is now due.

Contractor NORRIS EXCAVATING

By Imogene Norris

Date 11-20-03

ARCHITECT OR ENGINEER'S CERTIFICATION:
The undersigned certifies that the work has been carefully inspected and to the best of their knowledge and belief, the quantities shown in this estimate are correct and the work has been performed in accordance with the contract documents.

Architect or Engineer

By

Date

APPROVED BY OWNER:

Owner

By

Date

EXHIBIT
#8 Wilber
6-6-05 LM

ACCEPTED BY AGENCY:
The review and acceptance of this estimate does not attest to the correctness of the quantities shown or that the work has been performed in accordance with the contract documents.

By

Title

Date

*According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0575-0042. The time required to complete this information collection is estimated to average 30 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.*

TYPICAL UNIT PRICE BREAKDOWN *

| ITEM | DESCRIPTION | CONTRACT (revised) | | | THIS PERIOD | | TOTAL TO DATE | | % COMPLETE |
|---|---|---|---|---|---|---|---|---|---|
| | | QUANTITY | UNIT PRICE | AMOUNT | QUANTITY | AMOUNT | QUANTITY | AMOUNT | |
| 1 | RE-MOVE, RE-INSTALL + TEST PIPE | 5140 | $17.20 | $88,408.00 | | $ | 5140 | $88,408.00 | 100 |
| 2 | 16" Class 50, Ductile Iron Pipe | 300 | 37.50 | 11,250.00 | | | 300 | 11,250.00 | 100 |
| 3 | 6-INCH MUllER FIRE HYDRANT | 1 | 1,750.00 | 1,750.00 | | | 1 | 1,750.00 | 100 |
| 4 | CRUSHED STONE | 226.16 TON | 12.50 | 2,827.00 | | | 226.16 TON | 2,827.00 | 100 |
| 5 | CONCRETE AT THRUST Blocks | 20 C.Y. | 65.00 | 1,300.00 | | | 20 C.Y. | 1,300.00 | 100 |
| 6 | FITTINGS 16-INCH D.I. | 1050 lbs | 1.50 | 1,575.00 | | | 1050 lbs. | 1,575.00 | 100 |
| | TOTALS | | | 107,110.00 | | | | 107,110.00 | 100% |

TYPICAL LUMP SUM PRICE BREAKDOWN *

| ITEM | DESCRIPTION | SCHEDULED VALUE | WORK COMPLETED | | % COMPLETE |
|---|---|---|---|---|---|
| | | | THIS PERIOD | TO DATE | |
| | | $ | $ | $ | |
| | TOTALS | | | | |

TYPICAL STORED MATERIALS AND RETAINAGE BREAKDOWN *

MATERIALS STORED AT END OF THIS PAYMENT PERIOD

| DESCRIPTION | QUANTITY | UNIT VALUE | AMOUNT |
|---|---|---|---|
| | | $ | $ |

RETAINAGE

| | THIS ESTIMATE | PERCENT | RETAINED |
|---|---|---|---|
| WORK COMPLETED: | $ | % | $ |
| STORED MATERIALS: | | | |
| OTHER (explain) | | | |
| TOTAL | | | |

* As a minimum, detailed breakdowns should contain this information.

Form RD 1924-7
(Rev. 2-97)

FORM APPROVED
OMB NO. 0575-0042

UNITED STATES DEPARTMENT OF AGRICULTURE
RURAL DEVELOPMENT AND
FARM SERVICE AGENCY

# CONTRACT CHANGE ORDER

ORDER NO. Change #1

DATE 11/20/03

STATE TN

COUNTY Sumner

CONTRACT FOR City of Portland Water Dist.Line (Re-Bid) 16- inch

OWNER City of Portland

To ______________________ (Contractor)

You are hereby requested to comply with the following changes from the contract plans and specifications:

| Description of Changes (Supplemental Plans and Specifications Attached) | DECREASE in Contract Price | INCREASE in Contract Price |
|---|---|---|
| Item #1 Reinstall Pipe 140' @ $17.20 | $ | $ 2408.00 |
| Item #4 Bedding Pipe 151.16 @ 12.50 | | 1889.50 |
| Item #5 Concrete 20 @ $65.00 | $1300.00 | |
| Item #6 Fittings 1950 @ $1.50 | $2925.00 | |
| TOTALS | $ $4225.00 | $4297.50 |
| NET CHANGE IN CONTRACT PRICE | $ | $72.50 |

JUSTIFICATION:

The amount of the Contract will be (Decreased) (Increased) By The Sum Of: Seventy two & 50 cents Dollars ($ 72.50 ).

The Contract Total Including this and previous Change Orders Will Be: One hundred &seven thousand one hundred & ten Dollars ($ 107,110.00 ).

The Contract Period Provided for Completion Will Be (Increased) (Decreased) (Unchanged): ______ Days.

This document will become a supplement to the contract and all provisions will apply hereto.

equested ______________________ (Owner) ______________ (Date)

commended ______________________ (Owner's Architect/Engineer) ______________ (Date)

cepted Imogene Norris for Norris Excavating (Contractor) 11-20-03 (Date)

proved by Agency ______________________ (Name and Title) ______________ (Date)

ic reporting burden for this collection of information is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data sources, ering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this ction of information, including suggestions for reducing this burden, to U.S. Department of Agriculture, Clearance Officer, STOP 7602, 1400 Independence Avenue, S.W., ington, D.C. 20250-7602. Please DO NOT RETURN this form to this address. Forward to the local USDA office only. You are not required to respond to this collection of mation unless it displays a currently valid OMB control number.



POSITION 6

# BID SCHEDULE

WATER SYSTEM IMPROVEMENTS
CONTRACT 2 - WATER DISTRIBUTION LINE - RE-BID

idder acknowledges receipt of the following Addendum(s): ____________________

idder agrees to perform all improvements described in the specifications and as shown on the plans for the following unit prices:

| ITEM NO. | DESCRIPTION & UNIT PRICE IN WORDS | ESTIMATED QUANTITY | UNIT | UNIT PRICE | EXTENDED AMOUNT |
|---|---|---|---|---|---|
| 1. | Removal & Reinstallation of 16" Piping for Entire Project 140 L.F. of Existing / Unused On-Site Stored 16-Inch D.I. Pipeing & Appurtenances are Included for Use in the Reinstallation.<br>For ______<br>Dollars ______<br>Cents, per Linear Foot | 5,000<br>5,140 | L.F. | $ 17.20 | $ 88,408 – |
| 2. | 16" Class 50, Ductile Iron Pipe. (Installation of this Piping is Included in Item 1.)<br>For ______<br>Dollars ______<br>Cents, per Linear Foot | 300<br>300 | L.F. | $ 37.50 | $ 11,250 – |
| 3. | 6-Inch Muller Fire Hydrant Assembly with One (1) 4½-Inch Pumper Connection & Two (2) 2½-Inch Nozzle Connections.<br>For ______<br>Dollars ______<br>Cents, per Each | 1 | EA | $ 1750.00 | $ 1,750 – |
| 4. | A Layer of Crushed Stone Bedding at Rock Bottoms.<br>For ______<br>Dollars ______<br>Cents, per Ton | 75<br>226.16 | TONS | $ 12.50 | $ 2827 – |

MACWTPADDENDUM1.BK2REBID

| | | | | | |
|---|---|---|---|---|---|
| 5. | Concrete Required at Thrust Blockings at Existing / New Bends.<br>For ____<br>Dollars ____<br>Cents, per Cubic Yard | 40<br>20 | C.Y. | $ 65 | $ 1,300 - |
| 6. | 16-Inch D.I. Fittings.<br>For ____<br>Dollars ____<br>Cents, per Pound | 3000<br>1050 | LBS | $ 1.50 | $ 1,575 |

$107,110

+ 72.50

**TOTAL BID:** $ ____

____
(Total Amount in Words)

pectfully submitted:

By ____ (Signature)

____ (Business Name, Address & Zip Code)

____ (Title)

____

____

____

____ (License Numbe

COPY

FORM APPROVED
OMB NO. 0575-0042

Form RD 1924-18
(Rev. 6-97)

UNITED STATES DEPARTMENT OF AGRICULTURE
RURAL DEVELOPMENT
FARM SERVICE AGENCY

Completion ~~PARTIAL~~ PAYMENT ESTIMATE

CONTRACT NO. WATER DIST. LINE (RE-BID)

~~PARTIAL~~ PAYMENT ESTIMATE NO. 2

PAGE 1

OWNER: CITY of PORTLAND

CONTRACTOR: NORRIS EXCAVATING

PERIOD OF ESTIMATE FROM 10-06-03 TO 11-20-03

CONTRACT CHANGE ORDER SUMMARY

| No. | Agency Approval Date | Amount: Additions | Amount: Deductions |
|---|---|---|---|
| | | | |
| TOTALS | | | |
| NET CHANGE | | | |

ESTIMATE

| | |
|---|---|
| 1. Original Contract | 107,037.50 |
| 2. Change Orders | |
| 3. Revised Contract (1 + 2) | |
| 4. Work Completed* | 107,110.00 |
| 5. Stored Materials* | |
| 6. Subtotal (4 + 5) | 107,110.00 |
| 7. Retainage* | 10,711.00 |
| 8. Previous Payments | 47,475.00 |
| 9. Amount Due (6-7-8) | 48,924.00 |

* *Detailed breakdown attached*

CONTRACT TIME

Original (days) 150
Revised
Remaining 105

On Schedule Completed ☒ Yes ☐ No

Starting Date 10-06-03
~~Projected~~ Completion Completed 11-20-03

CONTRACTOR'S CERTIFICATION:

The undersigned Contractor certifies that to the best of their knowledge, information and belief the work covered by this payment estimate has been completed in accordance with the contract documents, that all amounts have been paid by the contractor for work for which previous payment estimates was issued and payments received from the owner, and that current payment shown herein is now due.

Contractor NORRIS EXCAVATING

By Imogene Norris

Date 11-20-03

APPROVED BY OWNER:

Owner

By

Date

ARCHITECT OR ENGINEER'S CERTIFICATION:

The undersigned certifies that the work has been carefully inspected and to the best of their knowledge and belief, the quantities shown in this estimate are correct and the work has been performed in accordance with the contract documents.

Architect or Engineer

By

Date

ACCEPTED BY AGENCY:

The review and acceptance of this estimate does not attest to the correctness of the quantities shown or that the work has been performed in accordance with the contract documents.

By

Title

Date

*According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0575-0042. The time required to complete this information collection is estimated to average 30 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.*

## TYPICAL UNIT PRICE BREAKDOWN *

| ITEM | DESCRIPTION | CONTRACT (revised) | | | THIS PERIOD | | TOTAL TO DATE | | % COMPLETE |
|---|---|---|---|---|---|---|---|---|---|
| | | QUANTITY | UNIT PRICE | AMOUNT | QUANTITY | AMOUNT | QUANTITY | AMOUNT | |
| 1 | RE-MOVE, RE-INSTALL & TEST PIPE | 5140 | $17.20 | $88,408.00 | | $ | 5140 | $88,408.00 | 100 |
| 2 | 16" Class 50, Ductile Iron Pipe | 300 | 37.50 | 11,250.00 | | | 300 | 11,250.00 | 100 |
| 3 | 6-INCH MUllER FIRE HYDRANT | 1 | 1,750.00 | 1,750.00 | | | 1 | 1,750.00 | 100 |
| 4 | CRUSHED STONE | 226.16 TON | 12.50 | 2,827.00 | | | 226.16 TON | 2,827.00 | 100 |
| 5 | CONCRETE AT THRUST Bloc. | 20 C.Y. | 65.00 | 1,300.00 | | | 20 C.Y. | 1,300.00 | 100 |
| 6 | FITTINGS 16-INCH D.I. | 1050 lbs | 1.50 | 1,575.00 | | | 1050 lbs. | 1,575.00 | 100 |
| | TOTALS | | | 107,110.00 | | | | 107,110.00 | 100% |

## TYPICAL LUMP SUM PRICE BREAKDOWN *

| ITEM | DESCRIPTION | SCHEDULED VALUE | WORK COMPLETED | | % COMPLETE |
|---|---|---|---|---|---|
| | | | THIS PERIOD | TO DATE | |
| | | $ | $ | $ | |
| | TOTALS | | | | |

## TYPICAL STORED MATERIALS AND RETAINAGE BREAKDOWN *

MATERIALS STORED AT END OF THIS PAYMENT PERIOD

| DESCRIPTION | QUANTITY | UNIT VALUE | AMOUNT |
|---|---|---|---|
| | | $ | $ |

RETAINAGE

| | THIS ESTIMATE | PERCENT | RETAINED |
|---|---|---|---|
| WORK COMPLETED: | $ | % | $ |
| STORED MATERIALS: | | | |
| OTHER (explain) | | | |
| TOTAL | | | |

* As a minimum, detailed breakdowns should contain this information.

20 North Orange Avenue
Suite 200
Orlando, Florida 32801
T 407 254 2999
F 407 481 8682

HUGHES

October 27, 2003

City of Portland
100 South Russell St
Portland TN 37148

To Whom it May Concern:

The purpose of this letter is to inform you that Hughes Supply, Inc. has been asked to supply materials to **Norris Excavating** for the following described project for which you are listed as the owner or general contractor:

*Water Distribution Line*
*Denning Ford Road*
*Portland TN*
*Sumner County*

Should you wish to verify amounts due, require a lien waiver, or need any other information, please do not hesitate to contact the undersigned. When contacting us, please reference our job number **273030-7011-04** or attach a copy of this notice to any correspondance.

Hughes Supply is committed to providing our customers with the best products and services in the industry.

Sincerely,

Chris Richards

Chris Richards
District Credit Manager
704-375-9508x16

via Certified Mail, Return Receipt Requested
71555474410012107897

Celebrating 75 Years of Building Relationships.

SPECIFICATIONS AND CONTRACT DOCUMENTS

FOR

# WATER SYSTEM IMPROVEMENTS
# CITY OF PORTLAND, TENNESSEE

## CONTRACT 2 - WATER DISTRIBUTION LINE
## (RE-BID)

MAYOR

**JIM CALLOWAY**

VICE MAYOR

**BILL CAUDILL**

ALDERMEN

| | |
|---|---|
| LUTHER BRATTON | TIMOTHY ALAN COKER |
| JERRY DENNING | ALLEN DYER |
| PHILIP HOBBY | JODY MCDOWELL |

| | | |
|---|---|---|
| CITY ENGINEER<br>BRIAN GOODWIN, P.E. | Acting<br>CITY RECORDER<br>~~(VACANT)~~<br>Patricia Keen | PUBLIC WORKS SUPT.<br>KEN WILBER |

JUNE 2003

PREPARED BY:


**JOHN COLEMAN HAYES, P.C.**

104 WOODMONT BOULEVARD, SUITE 401
NASHVILLE, TENNESSEE 37205
TELEPHONE (615) 269-6397 FAX (615) 269-6415
E-MAIL JCH@HAYESCOMPANIES.COM


JOHN COLEMAN HAYES, P.C. REGISTERED ENGINEER No. 5078 STATE OF TENNESSEE 6/25/03

EXHIBIT Wilber #96-6-05 lm

PROJECT NO. 9611

SET NO. 14

C:/MAC/FORMS/WTPCOVERBK2.REBID

Resolution

# City of Portland, Tennessee

No. 4750

**A RESOLUTION AUTHORIZING THE ACCEPTANCE OF THE BEST BID FOR NEW CONSTRUCTION FOR A WATER LINE FROM THE NEW WATER PLANT TO THE CITY OF PORTLAND.**

**WHEREAS**, the reconstruction of the 16-inch water line which the City has taken over from Advantage Construction on January 20, 2003, due to failure to complete construction; and

**WHEREAS**, the following bids have been properly solicited and received for a water line from the new water plant to the City of Portland which is included in the new water treatment plant and lake project; and

| BIDDING CONTRACTOR | BID AMOUNT |
|---|---|
| Jenkins Construction | $109,050.00 |
| 101 Construction Company | $164,430.00 |
| Norris Construction | $107,037.50 |

**WHEREAS**, this project has been properly re-bid due to Advantage Construction failure to complete the project; and

**WHEREAS**, the funding will be from the remainder of this project which leaves $60, 821.00 and funding from Advantage's insurance company; and

**WHEREAS**, the City of Portland Public Works Inspector will be doing inspections on the project; and

**NOW, THEREFORE BE IT RESOLVED** by the Mayor and Board of Aldermen of the City of Portland accept the best bid from Norris Construction for the reconstruction of the 16-inch line water line; and

**BE IT FURTHER RESOLVED** that this Resolution shall become effective upon its passage, the public welfare requiring it.

Case 3:04-cv-00555 Document 75 Filed 07/19/05 Page 11 of 40 PageID #: 305

Jim Calloway
Mayor

Patricia Kern
Acting City Recorder

Approved this 4th day of August, 2003

Res_4750_bid_new 16inch_waterline

ADDENDUM NO. ONE (1)

WATER SYSTEM IMPROVEMENTS
CITY OF PORTLAND, TN

CONTRACT – WATER DISTRIBUTION LINE (RE-BID)

PLANS & SPECIFICATIONS DATE: JUNE 2, 2003
BID DATE & TIME: JULY 30, 2003 @ 2:00 P.M.
ADDENDUM DATE: JULY 24, 2003

This Addendum is issued to clarify a portion of the bid documents. Receipt of this Addendum should be taken intc consideration when formulating your proposal and should be acknowledged on the 1st page of the Base Proposal Schedule; failure to do so shall not relieve the Proposer of the revisions set forth herein. The changes are as follows:

1. Specifications and Contract Documents:

   A. Bid Schedule:

      Discard in its entirety the Bid Schedule originally issued with the Specifications and Contract Documents manua and replace with the revised Bid Schedule issued with this Addendum.

2. Fire Hydrant Detail Sheet 1:

   This document is a new document and is intended to be used to further detail the installation of the added fir hydrant to the water distribution line.

3. Construction Plans:

   A. Sheet 3:

      A layer of crushed stone bedding shall be installed at rock bottoms within the shallow area as shown on this Sheet Modify shallow area from Sta. 2+50 to Sta. 5+00 (±).

END OF ADDENDUM 1

JOHN COLEMAN HAYES JR.
REGISTERED ENGINEER
NO. 5078
AGRICULTURE COMMERCE
STATE OF TENNESSEE

# BID SCHEDULE

WATER SYSTEM IMPROVEMENTS
CONTRACT 2 - WATER DISTRIBUTION LINE - RE-BID

Bidder acknowledges receipt of the following Addendum(s): ______________________

________________________________________

Bidder agrees to perform all improvements described in the specifications and as shown on the plans for the following unit prices:

| ITEM NO. | DESCRIPTION & UNIT PRICE IN WORDS | ESTIMATED QUANTITY | UNIT | UNIT PRICE | EXTENDED AMOUNT |
|---|---|---|---|---|---|
| 1. | Removal & Reinstallation of 16" Piping for Entire Project 140 L.F. of Existing / Unused On-Site Stored 16-Inch D.I. Pipeing & Appurtenances are Included for Use in the Reinstallation.<br>For ____________<br>Dollars ____________<br>Cents, per Linear Foot | 5,000 | L.F. | $ ________ | $ ________ |
| 2. | 16" Class 50, Ductile Iron Pipe. (Installation of this Piping is Included in Item 1.)<br>For ____________<br>Dollars ____________<br>Cents, per Linear Foot | 300 | L.F. | $ ________ | $ ________ |
| 3. | 6-Inch Muller Fire Hydrant Assembly with One (1) 4½-Inch Pumper Connection & Two (2) 2½-Inch Nozzle Connections.<br>For ____________<br>Dollars ____________<br>Cents, per Each | 1 | EA | $ ________ | $ ________ |
| 4. | A Layer of Crushed Stone Bedding at Rock Bottoms.<br>For ____________<br>Dollars ____________<br>Cents, per Ton | 75 | TONS | $ ________ | $ ________ |

| | | | | | |
|---|---|---|---|---|---|
| 5. | Concrete Required at Thrust Blockings at Existing / New Bends.<br>For ____________<br>Dollars ____________<br>Cents, per Cubic Yard | 40 | C.Y. | $ ________ | $ ________ |
| 6. | 16-Inch D.I. Fittings.<br>For ____________<br>Dollars ____________<br>Cents, per Pound | 3000 | LBS | $ ________ | $ ________ |

**TOTAL BID:** $ ____________________

____________________________________________

(Total Amount in Words)

Respectfully submitted:

By ______________________ (Signature)

______________________ (Business Name, Address & Zip Code)

______________________ (Title)

______________________

______________________

______________________

______________________ (License Numbe



C:\MAC\WTPADDENDUM1.BK2REBID

NOTE:
UNIT PRICE BID ON ALL FIRE HYDRANTS SHALL INCLUDE
ALL OF THE APPURTENANCS BELOW




## FIRE HYDRANT DETAIL

NOT TO SCALE


John
Coleman
Hayes, P.C.
Consulting Engineers
104 Woodmont Boulevard
Nashville, Tennessee 37205
(615) 662-5275 FAX (615) 269-5415


WATER SYSTEM IMPROVEMENTS
PORTLAND, TENNESSEE
CONTRACT 2 WATER DISTRIBUTION LINE
REINSTALLED 16" WATER LINE

SHEET
1

Case 3:04-cv-00555 Document 75 Filed 07/19/05 Page 16 of 40 PageID #: 310

# TABLE OF CONTENTS

## CONTRACT 2 - WATER DISTRIBUTION LINE - RE-BID


| DIVISION | SUBJECT | PAGES |
|---|---|---|
| | Information for Bidders | 1 - 3 |
| | General Conditions | 1 - 22 |
| | Supplemental General Conditions | 1 - 6 |
| | **CONTRACT DOCUMENTS** | |
| | Certificate of Owner's Attorney | 1 |
| | RUS Concurrence | 1 |
| | Recommended Construction Sign | 1 |
| | Certification Regarding Debarment, Suspension, Ineligibility & Voluntary Exclusion–Lower Tier Covered Transactions | 1 - 2 |
| | Certification of Contracts, Grants & Loans | 1 - 2 |
| | Compliance Statement | 1 - 3 |
| | Contract Change Order | 1 |
| | Partial Payment Estimate | 1 - 2 |
| | Bid Bond | 1 - 2 |
| | Bid Form | 1 - 3 |
| | Bid Schedule | 1 |
| | Agreement | 1 - 4 |
| | Performance Bond | 1 - 3 |
| | Payment Bond | 1 - 3 |
| | Notice of Award | 1 |
| | Notice to Proceed | 1 |
| | **TECHNICAL SPECIFICATIONS** | |
| 01045 | Cutting and Patching | 1 - 3 |
| 01050 | Field Engineering | 1 - 2 |
| 01090 | Reference Standards | 1 - 2 |

# INFORMATION FOR BIDDERS

BIDS will be received by the City of Portland, TN (herein called the "OWNER"), at 100 South Russell Street, Portland, TN 37148 until 2:00 P.M., July 30, 2003, and then at said office publicly opened and read aloud. All "CONTRACTORS" will be required to attend a "MANDATORY" Pre-Bid Meeting at 100 South Russell Street, Portland, TN 37148 at 10:00 A.M., July 23, 2003.

Each BID must be submitted in a sealed envelope, addressed to the City of Portland at 100 South Russell Street, Portland, TN 37148. Each sealed envelope containing a BID must be plainly marked on the outside as "WATER SYSTEM IMPROVEMENTS CONTRACT 2: WATER DISTRIBUTION LINE - RE-BID" and the envelope should bear on the outside the BIDDER's name, address, and license number if applicable, and the name of the project for which the BID is submitted. If forwarded by mail, the sealed envelope containing the BID must be enclosed in another envelope addressed to the OWNER at 100 South Russell Street, Portland, TN 37148.

Each BID in excess of $100,000 must be accompanied by lobbying activity certification, as required by Public Law PL 101-121. The certification form, provided in the BIDDING DOCUMENTS, must be signed and dated by the BIDDER.

All BIDS must be made on the required BID form(s). All blank spaces for BID prices must be filled in, in ink, or typewritten, and the BID form must be fully completed and executed when submitted. Only one copy of the BID form is required.

The OWNER may waive any informalities, or minor defects, or reject any and all BIDS. Any BID may be withdrawn prior to the above scheduled time for the opening of BIDS, or authorized postponement thereof. Any BID received after the time and date specified shall not be considered. No BIDDER may withdraw a BID within 60 days after the actual date of the opening thereof. Should there be reasons why the CONTRACT cannot be awarded within the specified period, the time may be extended by mutual agreement between the OWNER and the BIDDER.

BIDDERS must satisfy themselves of the accuracy of the estimated quantities in the BID Schedule by examination of the site and a review of the drawings and specifications including ADDENDA. After BIDS have been submitted, the BIDDER shall not assert that there was a misunderstanding concerning the quantities of WORK, or of the nature of the WORK to be done.

The OWNER shall provide to BIDDERS prior to BIDDING, all information which is pertinent to, and delineates and describes, the land owned and rights-of-way acquired, or to be acquired.



Case 3:04-cv-00555 Document 75 Filed 07/19/05 Page 18 of 40 PageID #: 312

A conditional, or qualified BID, will not be accepted.

Award will be made to the lowest responsible BIDDER.

All applicable laws, ordinances, and the rules and regulations of all authorities having jurisdiction over construction of the PROJECT shall apply to the contract throughout.

Each BIDDER is responsible for inspecting the site and for reading and being thoroughly familiar with the CONTRACT DOCUMENTS. The failure, or omission, of any BIDDER to do any of the foregoing shall in no way relieve any BIDDER from any obligation in respect to its BID.

Further, the BIDDER agrees to abide by the requirements under Executive Order No. 11246, as amended, including specifically, the provisions of the equal opportunity clause setforth in the SUPPLEMENTAL GENERAL CONDITIONS.

The low BIDDER shall supply the names and addresses of major material SUPPLIERS and SUBCONTRACTORS when required to do so by the OWNER.

The ENGINEER is John Coleman Hayes, P.C. The ENGINEER's address is 104 Woodmont Boulevard, Suite 401, Nashville, TN 37205 . Copies of the CONTRACT DOCUMENTS may be obtained at the office of the ENGINEER upon payment of $100.00 for each set of CONTRACT 2 - RE-BID. Any BIDDER, except the successful BIDDER, upon returning the CONTRACT DOCUMENTS promptly and in good condition, will be refunded their full deposit; any NON-BIDDER upon so returning the CONTRACT DOCUMENTS promptly after the bid opening, will be refunded $50.00 for CONTRACT 2 - RE-BID.

The CONTRACT DOCUMENTS may be examined at the following locations after July 16, 2003:

McGraw Hill Construction - Dodge, 1604 Elm Hill Pike, Suite 200, Nashville, TN 37210

Nashville Contractors Association, Inc., 1214 Pine Street, Nashville, TN 37203

Construction Market Data, 2 International Drive, Suite 108, Nashville, TN 37217

# GENERAL CONDITIONS

1. Definitions
2. Additional Instructions and Detail Drawings
3. Schedules, Reports, and Records
4. Drawings and Specifications
5. Shop Drawings
6. Materials, Services, and Facilities
7. Inspection and Testing
8. Substitutions
9. Patents
10. Surveys, Permits, Regulations
11. Protection of Work, Property, Persons
12. Supervision by Contractor
13. Changes in the Work
14. Changes in Contract Price
15. Time for Completion and Liquidated Damages
16. Correction of Work
17. Subsurface Conditions
18. Suspension of Work, Termination, and Delay
19. Payments to Contractor
20. Acceptance of Final Payment as Release
21. Insurance
22. Contract Security
23. Assignments
24. Indemnification
25. Separate Contracts
26. Subcontracting
27. Engineer's Authority
28. Land and Rights-of-Way
29. Guaranty
30. Arbitration
31. Taxes
32. Environmental Requirements

## 1. DEFINITIONS

1.1 Wherever used in the CONTRACT DOCUMENTS, the following terms shall have the meanings indicated and shall be applicable to both the singular and plural thereof:

1.2 ADDENDA - Written or graphic instruments issued prior to the execution of the Agreement which modify or interpret the CONTRACT DOCUMENTS, DRAWINGS and SPECIFICATIONS, by additions, deletions, clarifications, or corrections.

1.3 BID - The offer or proposal of the BIDDER submitted on the prescribed form setting forth the prices for the WORK to be performed.

1.4 BIDDER - Any person, firm, or corporation submitting a BID for the WORK.

1.5 BONDS - Bid, Performance, and Payment Bonds and other instruments of surety, furnished by the CONTRACTOR and the CONTRACTOR'S surety in accordance with the CONTRACT DOCUMENTS.

Case 3:04-cv-00555 Document 75 Filed 07/19/05 Page 20 of 40 PageID #: 314

1.19 SHOP DRAWINGS - All drawings, diagrams, illustrations, brochures, schedules and other data which are prepared by the CONTRACTOR, a SUBCONTRACTOR, manufacturer, SUPPLIER or distributor, which illustrate how specific portions of the WORK shall be fabricated or installed.

1.20 SPECIFICATIONS - A part of the CONTRACT DOCUMENTS consisting of written descriptions of a technical nature of materials, equipment, construction systems, standards and workmanship.

1.21 SUBCONTRACTOR - An individual, firm, or corporation having a direct contract with CONTRACTOR or with any other SUBCONTRACTOR for the performance of a part of the WORK at the site.

1.22 SUBSTANTIAL COMPLETION - That date certified by the ENGINEER when the construction of the PROJECT or a specified part thereof is sufficiently completed, in accordance with the CONTRACT DOCUMENTS, so that the PROJECT or specified part can be utilized for the purposes for which it is intended.

1.23 SUPPLEMENTAL GENERAL CONDITIONS - Modifications to General Conditions required by a Federal agency for participation in the PROJECT and approved by the agency in writing prior to inclusion in the CONTRACT DOCUMENTS, or such requirements that may be imposed by applicable state laws.

1.24 SUPPLIER - Any person or organization who supplies materials or equipment for the WORK, including that fabricated to a special design, but who does not perform labor at the site.

1.25 WORK - All labor necessary to produce the construction required by the CONTRACT DOCUMENTS, and all materials and equipment incorporated or to be incorporated in the PROJECT.

1.26 WRITTEN NOTICE - Any notice to any party of the Agreement relative to any part of this Agreement in writing and considered delivered and the service thereof completed, when posted by certified or registered mail to the said party at their last given address, or delivered in person to said party or their authorized representative on the WORK.

2. ADDITIONAL INSTRUCTIONS AND DETAIL DRAWINGS

2.1 The CONTRACTOR may be furnished additional instructions and detail drawings, by the ENGINEER, as necessary to carry out the WORK required by the CONTRACT DOCUMENTS.

2.2 The additional drawings and instructions thus supplied will become a part of the CONTRACT DOCUMENTS. The CONTRACTOR shall carry out the WORK in accordance with the additional detail drawings and instructions.

5.1 The CONTRACTOR shall provide SHOP DRAWINGS as may be necessary for the prosecution of the WORK as required by the CONTRACT DOCUMENTS. The ENGINEER shall promptly review all SHOP DRAWINGS. The ENGINEER'S approval of any SHOP DRAWING shall not release the CONTRACTOR from responsibility for deviations from the CONTRACT DOCUMENTS. The approval of any SHOP DRAWING which substantially deviates from the requirement of the CONTRACT DOCUMENTS shall be evidenced by a CHANGE ORDER.

5.2 When submitted for the ENGINEER's review, SHOP DRAWINGS shall bear the CONTRACTOR'S certification that he has reviewed, checked and approved the SHOP DRAWINGS and that they are in conformance with the requirements of the CONTRACT DOCUMENTS.

5.3 Portions of the WORK requiring a SHOP DRAWING or sample submission shall not begin until the SHOP DRAWING or submission has been approved by the ENGINEER. A copy of each approved SHOP DRAWING and each approved sample shall be kept in good order by the CONTRACTOR at the site and shall be available to the ENGINEER.

6. MATERIALS, SERVICES AND FACILITIES

6.1 It is understood that, except as otherwise specifically stated in the CONTRACT DOCUMENTS, the CONTRACTOR shall provide and pay for all materials, labor, tools, equipment, water, light, power, transportation, supervision, temporary construction of any nature, and all other services and facilities of any nature whatsoever necessary to execute, complete, and deliver the WORK within the specified time.

6.2 Materials and equipment shall be so stored as to insure the preservation of their quality and fitness for the WORK. Stored materials and equipment to be incorporated in the WORK shall be located so as to facilitate prompt inspection.

6.3 Manufactured articles, materials, and equipment shall be applied, installed, connected, erected, used, cleaned and conditioned as directed by the manufacturer.

6.4 Materials, supplies, and equipment shall be in accordance with samples submitted by the CONTRACTOR and approved by the ENGINEER.

6.5 Materials, supplies, or equipment to be incorporated into the WORK shall not be purchased by the CONTRACTOR or the SUBCONTRACTOR subject to a chattel mortgage or under a conditional sale contract or other agreement by which an interest is retained by the seller.

7.8 If the ENGINEER considers it necessary or advisable that covered WORK be inspected or tested by others, the CONTRACTOR, at the ENGINEER'S request, will uncover, expose or otherwise make available for observation, inspection or testing as the ENGINEER may require, that portion of the WORK in question, furnishing all necessary labor, materials, tools, and equipment. If it is found that such WORK is defective, the CONTRACTOR will bear all the expenses of such uncovering, exposure, observation, inspection and testing and of satisfactory reconstruction, if, however, such WORK is not found to be defective, the CONTRACTOR will be allowed an increase in the CONTRACT PRICE or an extension of the CONTRACT TIME, or both, directly attributable to such uncovering, exposure, observation, inspection, testing and reconstruction and an appropriate CHANGE ORDER shall be issued.

8. SUBSTITUTIONS

8.1 Whenever a material, article, or piece of equipment is identified on the DRAWINGS or SPECIFICATIONS by reference to brand name or catalogue numbers, it shall be understood that this is referenced for the purpose of defining the performance or other salient requirements and that other products of equal capacities, quality and function shall be considered. The CONTRACTOR may recommend the substitution of a material, article, or piece of equipment of equal substance and function for those referred to in the CONTRACT DOCUMENTS by reference to brand name or catalogue number, and if, in the opinion of the ENGINEER, such material, article, or piece of equipment is of equal substance and function to that specified, the ENGINEER may approve its substitution and use by the CONTRACTOR. Any cost differential shall be deductible from the CONTRACT PRICE and the CONTRACT DOCUMENTS shall be appropriately modified by CHANGE ORDER. The CONTRACTOR warrants that if substitutes are approved, no major changes in the function or general design of the PROJECT will result. Incidental changes or extra component parts required to accommodate the substitute will be made by the CONTRACTOR without a change in the CONTRACT PRICE or CONTRACT TIME.

9. PATENTS

9.1 The CONTRACTOR shall pay all applicable royalties and license fees, and shall defend all suits or claims for infringement of any patent rights and save the OWNER harmless from loss on account thereof, except that the OWNER shall be responsible for any such loss when a particular process, design, or product of a particular manufacturer or manufacturers is specified, however, if the CONTRACTOR has reason to believe that the design, process or product specified is an infringement of a patent, the CONTRACTOR shall be responsible for such loss unless the CONTRACTOR promptly gives such information to the ENGINEER.

11.2 The CONTRACTOR will comply with all applicable laws, ordinances, rules, regulations and orders of any public body having jurisdiction. The CONTRACTOR will erect and maintain, as required by the conditions and progress of the WORK, all necessary safeguards for safety and protection. The CONTRACTOR will notify owners of adjacent utilities when prosecution of the WORK may affect them. The CONTRACTOR will remedy all damage, injury or loss to any property caused, directly or indirectly, in whole or part, by the CONTRACTOR, any SUBCONTRACTOR or anyone directly or indirectly employed by any of them or anyone directly or indirectly employed by any of them or anyone of whose acts any of them be liable, except damage or loss attributable to the fault of the CONTRACT DOCUMENTS or to the acts or omissions of the OWNER, of the ENGINEER or anyone employed by either of them or anyone for whose acts either of them may be liable, and not attributable, directly or indirectly, in whole or in part, to the fault or negligence of the CONTRACTOR.

11.3 In emergencies affecting the safety of persons or the WORK or property at the site or adjacent thereto, the CONTRACTOR, without special instructions or authorization from the ENGINEER or OWNER, shall act to prevent threatened damage, injury or loss. The CONTRACTOR will give the ENGINEER prompt WRITTEN NOTICE of any significant changes in the WORK or deviations from the CONTRACT DOCUMENTS caused thereby, and a CHANGE ORDER shall thereupon be issued covering the changes and deviations involved.

12. SUPERVISION BY CONTRACTOR

12.1 The CONTRACTOR will supervise and direct the WORK. He will be solely responsible for the means, methods, techniques, sequences and procedures of construction. The CONTRACTOR will employ and maintain on the WORK a qualified supervisor or superintendent who shall have been designated in writing by the CONTRACTOR as the CONTRACTOR'S representative at the site. The supervisor shall have full authority to act on behalf of the CONTRACTOR and all communications given to the supervisor shall be as binding as if given to the CONTRACTOR. The supervisor shall be present on the site at all times as required to perform adequate supervision and coordination of the WORK.

13. CHANGES IN THE WORK

13.1 The OWNER may at any time, as the need arises, order changes within the scope of the WORK without invalidating the Agreement. If such changes increase or decrease the amount due under the CONTRACT DOCUMENTS, or in the time required for performance of the WORK, an equitable adjustment shall be authorized by CHANGE ORDER.

15.4.1 To any preference, priority or allocation order duly issued by the OWNER.

15.4.2 To unforeseeable causes beyond the control and without the fault or negligence of the CONTRACTOR, including but not restricted to, acts of God, or of the public enemy, acts of the OWNER, acts of another CONTRACTOR in the performance of a contract with the OWNER, fires, floods, epidemics, quarantine restrictions, strikes, freight embargoes, and abnormal and unforeseeable weather; and

15.4.3 To any delays of SUBCONTRACTORS occasioned by any of the causes specified in paragraphs 15.4.1 and 15.4.2 of this article.

16. CORRECTION OF WORK

16.1 The CONTRACTOR shall promptly remove from the premises all WORK rejected by the ENGINEER for failure to comply with the CONTRACT DOCUMENTS, whether incorporated in the construction or not, and the CONTRACTOR shall promptly replace and reexecute the WORK in accordance with the CONTRACT DOCUMENTS and without expense to the OWNER and shall bear the expense of making good all WORK of other CONTRACTORS destroyed or damaged by such removal or replacement.

16.2 All removal and replacement WORK shall be done at the CONTRACTOR'S expense. If the CONTRACTOR does not take action to remove such rejected WORK within ten (10) days after receipt of WRITTEN NOTICE, the OWNER may remove such WORK and store the materials at the expense of the CONTRACTOR.

17. SUBSURFACE CONDITIONS

17.1 The CONTRACTOR shall promptly, and before such conditions are disturbed, except in the event of an emergency, notify the OWNER by WRITTEN NOTICE of:

17.1.1 Subsurface or latent physical conditions at the site differing materially from those indicated in the CONTRACT DOCUMENTS; or

17.1.2 Unknown physical conditions at the site, of an unusual nature, differing materially from those ordinarily encountered and generally recognized as inherent in WORK of the character provided for in the CONTRACT DOCUMENTS.

18.3 Where the CONTRACTOR'S services have been so terminated by the OWNER, said termination shall not affect any right of the OWNER against the CONTRACTOR then existing or which may thereafter accrue. Any retention or payment of monies by the OWNER due the CONTRACTOR will not release the CONTRACTOR from compliance with the CONTRACT DOCUMENTS.

18.4 After ten (10) days from delivery of a WRITTEN NOTICE to the CONTRACTOR and the ENGINEER, the OWNER may, without cause and without prejudice to any other right or remedy, elect to abandon the PROJECT and terminate the CONTRACT. In such case the CONTRACTOR shall be paid for all WORK executed and any expense sustained plus reasonable profit.

18.5 If, through no act or fault of the CONTRACTOR, the WORK is suspended for a period of more than ninety (90) days by the OWNER or under an order of court or other public authority, or the ENGINEER fails to act on any request for payment within thirty (30) days after it is submitted, or the OWNER fails to pay the CONTRACTOR substantially the sum approved by the ENGINEER or awarded by arbitrators within thirty (30) days of its approval and presentation, then the CONTRACTOR may, after ten (10) days from delivery of a WRITTEN NOTICE to the OWNER and the ENGINEER terminate the CONTRACT and recover from the OWNER payment for all WORK executed and all expenses sustained. In addition and in lieu of terminating the CONTRACT, if the ENGINEER has failed to act on a request for payment or if the OWNER has failed to make any payment as aforesaid, the CONTRACTOR may upon ten (10) days written notice to the OWNER and the ENGINEER stop the WORK until paid all amounts then due, in which event and upon resumption of the WORK CHANGE ORDERS shall be issued for adjusting the CONTRACT PRICE or extending the CONTRACT TIME or both to compensate for the costs and delays attributable to the stoppage of the WORK.

18.6 If the performance of all or any portion of the WORK is suspended, delayed, or interrupted as a result of a failure of the OWNER or ENGINEER to act within the time specified in the CONTRACT DOCUMENTS, or if no time is specified, within a reasonable time, an adjustment in the CONTRACT PRICE or an extension of the CONTRACT TIME, or both, shall be made by CHANGE ORDER to compensate the CONTRACTOR for the costs and delays necessarily caused by the failure of the OWNER or ENGINEER.

19.5 Upon completion and acceptance of the WORK, the ENGINEER shall issue a certificate attached to the final payment request that the WORK has been accepted under the conditions of the CONTRACT DOCUMENTS. The entire balance found to be due the CONTRACTOR, including the retained percentages, but except such sums as may be lawfully retained by the OWNER, shall be paid to the CONTRACTOR within thirty (30) days of completion and acceptance of the WORK.

19.6 The CONTRACTOR will indemnify and save the OWNER or the OWNER'S agents harmless from all claims growing out of the lawful demand of SUBCONTRACTORS, laborers, workmen, mechanics, materialmen, and furnishers of machinery and parts thereof, equipment, tools, and all supplies, incurred in the furtherance of the performance of the WORK. The CONTRACTOR shall, at the OWNER'S request, furnish satisfactory evidence that all obligations of the nature designated above have been paid, discharged, or waived. If the CONTRACTOR fails to do so the OWNER may, after having notified the CONTRACTOR, either pay unpaid bills or withhold from the CONTRACTOR'S unpaid compensation a sum of money deemed reasonably sufficient to pay any and all such lawful claims until satisfactory evidence is furnished that all liabilities have been fully discharged whereupon payment to the CONTRACTOR shall be resumed in accordance with the terms of the CONTRACT DOCUMENTS, but in no event shall the provisions of this sentence be construed to impose any obligations upon the OWNER to either the CONTRACTOR, the CONTRACTOR'S Surety, or any third party. In paying any unpaid bills of the CONTRACTOR, any payment so made by the OWNER shall be considered as a payment made under the CONTRACT DOCUMENTS by the OWNER to the CONTRACTOR and the OWNER shall not be liable to the CONTRACTOR for any such payments made in good faith.

19.7 If the OWNER fails to make payment thirty (30) days after approval by the ENGINEER, in addition to other remedies available to the CONTRACTOR, there shall be added to each such payment interest at the maximum legal rate commencing on the first day after said payment is due and continuing until the payment is received by the CONTRACTOR.

20. ACCEPTANCE OF FINAL PAYMENT AS RELEASE

20.1 The acceptance by the CONTRACTOR of final payment shall be and shall operate as a release to the OWNER of all claims and all liability to the CONTRACTOR other than claims in stated amounts as may be specifically excepted by the CONTRACTOR for all things done or furnished in connection with this WORK and for every act and neglect of the OWNER and others relating to or arising out of this WORK. Any payment, however, final or otherwise, shall not release the CONTRACTOR or its sureties from any obligations under the CONTRACT DOCUMENTS or the Performance and Payment BONDS.

21.3.1 CONTRACTOR'S General Public Liability and Property Damage Insurance including vehicle coverage issued to the CONTRACTOR and protecting the CONTRACTOR from all claims for personal injury, including death, and all claims for destruction of or damage to property, arising out of or in connection with any operations under the CONTRACT DOCUMENTS, whether such operations be by the CONTRACTOR or by any SUBCONTRACTOR employed by the CONTRACTOR or anyone directly or indirectly employed by the CONTRACTOR or by a SUBCONTRACTOR employed by the CONTRACTOR. Insurance shall be written with a limit of liability of not less than $500,000 for all damages arising out of bodily injury, including death, at any time resulting therefrom, sustained by any one person in any one accident; and a limit of liability of not less than $500,000 aggregate for any such damages sustained by two or more persons in any one accident. Insurance shall be written with a limit of liability of not less than $200,000 for all property damage sustained by any one person in any one accident; and a limit of liability of not less than $200,000 aggregate for any such damage sustained by two or more persons in any one accident.

21.3.2 The CONTRACTOR shall acquire and maintain, if applicable, Fire and Extended Coverage insurance upon the PROJECT to the full insurable value thereof for the benefit of the OWNER, the CONTRACTOR, and SUBCONTRACTORS as their interest may appear. This provision shall in no way release the CONTRACTOR or CONTRACTOR'S surety from obligations under the CONTRACT DOCUMENTS to fully complete the PROJECT.

21.4 The CONTRACTOR shall procure and maintain, at the CONTRACTOR'S own expense, during the CONTRACT TIME, in accordance with the provisions of the laws of the state in which the WORK is performed, Workmen's Compensation Insurance, including occupational disease provisions, for all of the CONTRACTOR'S employees at the site of the PROJECT and in case any WORK is sublet, the CONTRACTOR shall require such SUBCONTRACTOR similarly to provide Workmen's Compensation Insurance, including occupational disease provisions for all of the latter's employees unless such employees are covered by the protection afforded by the CONTRACTOR. In case any class of employees engaged in hazardous work under this contract at the site of the PROJECT is not protected under Workmen's Compensation statue, the CONTRACTOR shall provide, and shall cause each SUBCONTRACTOR to provide, adequate and suitable insurance for the protection of its employees not otherwise protected.

21.5 The CONTRACTOR shall secure, if applicable, "All Risk" type Builder's Risk Insurance for WORK to be performed. Unless specifically authorized by the OWNER, the amount of such insurance shall not be less than the CONTRACT PRICE totaled in the BID. The policy shall cover not less than the losses due to fire, explosion, hail, lightning, vandalism, malicious mischief, wind, collapse, riot, aircraft, and smoke during the CONTRACT TIME, and until the WORK is accepted by the OWNER. The policy shall name as the insured the CONTRACTOR, and the OWNER.

24.2 In any and all claims against the OWNER or the ENGINEER, or any of their agents or employees, by any employee of the CONTRACTOR, any SUBCONTRACTOR, anyone directly or indirectly employed by any of them, or anyone for whose acts any of them may be liable, the indemnification obligation shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for the CONTRACTOR or any SUBCONTRACTOR under workmen's compensation acts, disability benefit acts or other employee benefits acts.

24.3 The obligation of the CONTRACTOR under this paragraph shall not extend to the liability of the ENGINEER, its agents or employees arising out of the preparation or approval of maps, DRAWINGS, opinions, reports, surveys, CHANGE ORDERS, designs or SPECIFICATIONS.

25. SEPARATE CONTRACTS

25.1 The OWNER reserves the right to let other contracts in connection with this PROJECT. The CONTRACTOR shall afford other CONTRACTORS reasonable opportunity for the introduction and storage of their materials and the execution of their WORK, and shall properly connect and coordinate the WORK with theirs. If the proper execution or results of any part of the CONTRACTOR'S WORK depends upon the WORK of any other CONTRACTOR, the CONTRACTOR shall inspect and promptly report to the ENGINEER any defects in such WORK that render it unsuitable for such proper execution and results.

25.2 The OWNER may perform additional WORK related to the PROJECT or the OWNER may let other contracts containing provisions similar to these. The CONTRACTOR will afford the other CONTRACTORS who are parties to such Contracts (or the OWNER, if the OWNER is performing the additional WORK) reasonable opportunity for the introduction and storage of materials and equipment and the execution of WORK, and shall properly connect and coordinate the WORK with theirs.

25.3 If the performance of additional WORK by other CONTRACTORS or the OWNER is not noted in the CONTRACT DOCUMENTS prior to the execution of the CONTRACT, written notice thereof shall be given to the CONTRACTOR prior to starting any such additional WORK. If the CONTRACTOR believes that the performance of such additional WORK by the OWNER or others involves it in additional expense or entitles it to an extension of the CONTRACT TIME, the CONTRACTOR may make a claim thereof as provided in Sections 14 and 15.

26. SUBCONTRACTING

26.1 The CONTRACTOR may utilize the services of specialty SUBCONTRACTS on those parts of the WORK which, under normal contracting practices, are performed by specialty SUBCONTRACTORS.

28.2 The OWNER shall provide to the CONTRACTOR information which delineates and describes the lands owned and rights-of-way acquired.

28.3 The CONTRACTOR shall provide at its own expense and without liability to the OWNER any additional land and access thereto that the CONTRACTOR may desire for temporary construction facilities, or for storage of materials.

29. GUARANTEE

29.1 The CONTRACTOR shall guarantee all materials and equipment furnished and WORK performed for a period of one (1) year from the date of SUBSTANTIAL COMPLETION. The CONTRACTOR warrants and guarantees for a period of one (1) year from the date of SUBSTANTIAL COMPLETION of the system that the completed system is free from all defects due to faulty materials or workmanship and the CONTRACTOR shall promptly make such corrections as may be necessary by reason of such defects including the repairs of any damage to other parts of the system resulting from such defects. The OWNER will give notice of observed defects with reasonable promptness. In the event that the CONTRACTOR should fail to make such repairs, adjustments, or other WORK that may be made necessary by such defects, the OWNER may do so and charge the CONTRACTOR the cost thereby incurred. The Performance BOND shall remain in full force and effect through the guarantee period.

30. ARBITRATION BY MUTUAL AGREEMENT

30.1 All claims, disputes, and other matters in question arising out of, or relating to, the CONTRACT DOCUMENTS or the breach thereof, except for claims which have been waived by making an acceptance of final payment as provided by Section 20, may be decided by arbitration if the parties mutually agree. Any agreement to arbitrate shall be specifically enforceable under the prevailing arbitration law. The award rendered by the arbitrators shall be final, and judgment may be entered upon it in any court having jurisdiction thereof.

30.2 Notice of the request for arbitration shall be filed in writing with the other party to the CONTRACT DOCUMENTS and a copy shall be filed with the ENGINEER. Request for arbitration shall in no event be made on any claim, dispute, or other matter in question which would be barred by the applicable statute of limitations.

30.3 The CONTRACTOR will carry on the WORK and maintain the progress schedule during any arbitration proceedings, unless otherwise mutually agreed in writing.

# RUS Supplemental General Conditions

The provisions of the Rural Utilities Service (RUS) Supplemental General Conditions as described herein change, amend, or supplement the General Conditions and shall supersede any conflicting provisions of this CONTRACT. All provisions of the General Conditions which are not changed, amended, or supplemented, remain in full force.

1. CONTRACT APPROVAL
2. CONTRACT CHANGE ORDERS
3. PARTIAL PAYMENT ESTIMATES
4. CONFLICT OF INTEREST
5. PROTECTION OF LIVES AND PROPERTY
6. REMEDIES
7. GRATUITIES
8. AUDIT AND ACCESS TO RECORDS
9. SMALL, MINORITY AND WOMEN'S BUSINESSES
10. ANTI-KICKBACK
11. VIOLATING FACILITIES
12. STATE ENERGY POLICY
13. EQUAL OPPORTUNITY REQUIREMENTS
14. CERTIFICATE OF OWNER'S ATTORNEY
15. RUS CONCURRENCE

1. Contract Approval.

1.1 The OWNER and the CONTRACTOR will furnish the OWNER'S Attorney such evidence as required so that the OWNER'S Attorney can complete and execute "Certificate of Owner's Attorney" (Section 14) before the OWNER submits the executed Contract Documents to RUS for approval.

1.2 Concurrence by the State Program Official or designee in the award of the CONTRACT is required before it is effective and the "RUS Concurrence" (Section 15), shall be attached and made a part of the Agreement.

1.3 Surety companies executing BONDS must appear on the Treasury Department's most current list (Circular 570 as amended) and be authorized to transact business in the State where the project is located. *[Revision 1, 07/11/1997]*

1.4 This CONTRACT is expected to be funded in part with funds from the RUS. Neither the United States nor any of its departments, agencies, or employees is or will be a party to this CONTRACT or any SUBCONTRACT.

3.2.6 Performance of WORK in violation of the terms of the CONTRACT DOCUMENTS.

3.3 Where WORK on unit price items is substantially complete but lacks testing, clean-up and/or corrections, amounts shall be deducted from unit prices in partial payment estimates to amply cover such testing, clean-up and/or corrections.

3.4 When the items in 3.2 and 3.3 are cured, payment shall be made for amounts withheld because of them.

3.5 Payments will not be made that would deplete the retainage nor place in escrow any funds that are required for retainage nor invest the retainage for the benefit of the CONTRACTOR.

4. Conflict of Interest.

4.1. Unacceptable bidders. An ENGINEER (individual or firm including persons they employ) who has prepared plans and specifications will not be considered an acceptable bidder. Any firm or corporation in which such ENGINEER (including persons they employ) is an officer, employee, or holds or controls a substantial interest will not be considered an acceptable bidder. Contracts or purchases by the CONTRACTOR shall not be awarded or made to a supplier or manufacturer if the ENGINEER (firm or individual) who prepared the plans and specifications has a corporate or financial affiliation with the supplier or manufacturer. Bids will not be awarded to firms or corporations which are owned or controlled wholly or in part by a member of the governing body of the OWNER or to an individual who is such a member.

4.2. The OWNER'S officers, employees, or agents shall not engage in the award or administration of this CONTRACT if a conflict of interest, real or apparent, would be involved. Such a conflict would arise when: (a) the employee, officer or agent; (b) any member of their immediate family; (c) their partner or (d) an organization which employs, or is about to employ, any of the above has financial or other interest in the CONTRACTOR. The OWNER'S officers, employees, or agents shall neither solicit nor accept gratuities, favors or anything of monetary value from the CONTRACTOR or subcontractor.

5. Protection of Lives and Property

5.1 In order to protect the lives and health of its employees under the CONTRACT, the CONTRACTOR shall comply with all pertinent provisions of the Occupational Safety and Health Administration (OSHA) and any State Safety and Health agency requirements.

7.2 In the event this CONTRACT is terminated as provided in paragraph 7.1 the OWNER may pursue the same remedies against the CONTRACTOR as it could pursue in the event of a breach of the CONTRACT by the CONTRACTOR. As a penalty, in addition to any other damages to which it may be entitled by law, the OWNER may pursue exemplary damages in an amount (as determined by the OWNER) which shall be not less than three nor more than ten times the costs the CONTRACTOR incurs in providing any such gratuities to any such officer or employee.

8. Audit and Access to Records. For all negotiated contracts (except those of $10,000 or less), the RUS, the Comptroller General, the OWNER or any of their duly authorized representatives, shall have access to any books, documents, papers, and records of the CONTRACTOR, which are pertinent to the CONTRACT, for the purpose of making audits, examinations, excerpts and transcriptions. The CONTRACTOR shall maintain all required records for three years after final payment is made and all other pending matters are closed.

9. Small, Minority and Women's Businesses. If the CONTRACTOR intends to let any subcontracts for a portion of the work, the CONTRACTOR shall take affirmative steps to assure that small, minority and women's businesses are used when possible as sources of supplies, equipment, construction, and services.

10. Anti-Kickback. The CONTRACTOR shall comply with the Copeland Anti-Kickback Act (18 USC 874) as supplemented in Department of Labor regulations (29 CFR, Part 3). This act provides that each CONTRACTOR shall be prohibited from inducing, by any means, any person employed in the construction, completion, or repair of public facilities, to give up any part of the compensation to which they are otherwise entitled. The OWNER shall report all suspected or reported violations to RUS.

11. Violating Facilities. Where this CONTRACT exceeds $100,000 the CONTRACTOR shall comply with all applicable standards, orders or requirements issued under section 306 of the Clean Air Act (42 U.S.C. 1857(h)), section 508 of the Clean Water Act (33 U.S.C. 1368), Executive Order 11738, and Environmental Protection Agency regulations 40 CFR Part 15 which prohibit the awarding of non-exempt federal contracts, grants, or loans to facilities included on EPA's list of violating facilities. The CONTRACTOR will report violations to the EPA.

12. State Energy Policy. The CONTRACTOR shall comply with the Energy Policy and Conservation Act (P.L. 94-163). Mandatory standards and policies relating to energy efficiency, contained in the State Energy Conservation Plan, shall be utilized.

13. Equal Opportunity Requirements. For all contracts in excess of $10,000, the CONTRACTOR shall comply with Executive Order 11246, entitled "Equal Employment Opportunity," as amended by Executive Order 11375, and as supplemented in Department of Labor regulations (41 CFR Part 60).

13.1 If the CONTRACT exceeds $10,000, the CONTRACTOR will execute Form RD 400-6, "Compliance Statement."

13.2 The CONTRACTOR'S compliance with Executive Order 11246 shall be based on its implementation of the Equal Opportunity Clause, specific affirmative action obligations required by the Standard Federal Equal Employment Opportunity Construction Contract Specifications, as set forth in 41 CFR Part 60-4 and its efforts to meet the goals established for the geographical area where the CONTRACT is to be performed. The hours of minority and female employment and training must be substantially uniform throughout the length of the CONTRACT, and in each trade, and the CONTRACTOR shall make a good faith effort to employ minorities and women evenly on each of its projects. The transfer of minority or female employees or trainees from contractor to contractor or from project to project for the sole purpose of meeting the CONTRACTOR'S goals shall be a violation of the CONTRACT, the Executive Order and the regulations in 41 CFR Part 60-4. Compliance with the goals will be measured against the total work hours performed.

13.3 The CONTRACTOR shall provide written notification to the Director of the Office of Federal Contract Compliance Programs within 10 working days of award of any construction subcontract in excess of $10,000 at any tier for construction work under the CONTRACT resulting from this solicitation. The notification shall list the name, address and telephone number of the subcontractor; employer identification number; estimated dollar amount of subcontract; estimated starting and completion dates of the subcontract; and the geographical area in which the CONTRACT is to be performed.

5.2 The CONTRACTOR alone shall be responsible for the safety, efficiency, and adequacy of its plant, appliances, and methods, and for any damage which may result from their failure or their improper construction, maintenance or operation.

6. Remedies. Unless otherwise provided in this CONTRACT, all claims, counterclaims, disputes, and other matters in question between the OWNER and
the CONTRACTOR arising out of or relating to this CONTRACT or the breach thereof will be decided by arbitration if the parties mutually agree, or in a court of competent jurisdiction within the State in which the OWNER is located.

6.1 The arbitration provisions of this section may be initiated by either party to this CONTRACT by filing with the other party and the ENGINEER a WRITTEN REQUEST for arbitration.

6.2 Each party to this CONTRACT will appoint one arbitrator; the two arbitrators will select a third arbitrator.

6.3 The arbitrators will select a hearing location as close to the OWNER'S locale as possible.

6.4 The procedure for conducting the hearings will follow the Construction Industry Arbitration Rules of the American Arbitration Association.

7. Gratuities.

7.1 If the OWNER finds after a notice and hearing that the CONTRACTOR, or any of the CONTRACTOR'S agents or representatives, offered or gave gratuities (in the form of entertainment, gifts, or otherwise) to any official, employee, or agent of the OWNER, the State, or RUS officials in an attempt to secure this CONTRACT or favorable treatment in awarding, amending, or making any determinations related to the performance of this CONTRACT, the OWNER may, by written notice to the CONTRACTOR, terminate this CONTRACT. The OWNER may also pursue other rights and remedies that the law or this CONTRACT provides. However, the existence of the facts on which the OWNER bases such findings shall be an issue and may be reviewed in proceedings under the Remedies clause of this CONTRACT.

2. Contract Change Orders.

2.1 All changes affecting the project's construction cost or modifications of the terms or conditions of the contract must be authorized by means of a written contract change order which is mutually agreed to by the OWNER and CONTRACTOR and is approved by RUS. The contract change order will include extra work, work for which quantities have been altered from those shown in the bidding schedule, as well as decreases or increases in the quantities of installed units which are different than those shown in the bidding schedule because of final measurements. All changes must be recorded on a contract change order before they can be included in a partial payment estimate.

2.2 FORM RD 1924-7, "Contract Change Order" or similar form approved by RUS shall be used to record CONTRACT changes.

2.3 When the CONTRACT sum is, in whole or in part, based on unit prices, the OWNER reserves the right to increase or decrease a unit price quantity as may be deemed reasonable or necessary in order to complete the work contemplated by this CONTRACT.

3. Partial Payment Estimates.

3.1 FORM RD 1924-18, "Partial Payment Estimate," or similar form approved by RUS shall be used when estimating periodic payments due the CONTRACTOR.

3.2 The OWNER may after consultation with the ARCHITECT/ENGINEER withhold or, on account of subsequently discovered evidence, nullify the whole or part of any approved partial payment estimate to such extent as may be necessary to protect the OWNER from loss on account of:

3.2.1 Defective work not remedied.

3.2.2 Claims filed.

3.2.3 Failure of CONTRACTOR to make payments properly to subcontractors or suppliers.

3.2.4 A reasonable doubt that the WORK can be completed for the balance then unpaid.

3.2.5 Damage to another CONTRACTOR.

31. TAXES

31.1 The CONTRACTOR will pay all sales, consumer, use, and other similar taxes required by the laws of the place where the WORK is performed.

32. ENVIRONMENTAL REQUIREMENTS

The CONTRACTOR, when constructing a project involving trenching and/or other related earth excavation, shall comply with the following environmental constraints.

32.1 WETLANDS - The CONTRACTOR, when disposing of excess, spoil, or other construction materials on public or private property, WILL NOT FILL IN or otherwise CONVERT WETLANDS.

32.2 FLOODPLAINS - The CONTRACTOR, when disposing of excess, spoil, or other construction materials on public or private property, WILL NOT FILL IN or otherwise CONVERT 100 YEAR FLOODPLAIN areas delineated on the latest FEMA Floodplain Maps.

32.3 HISTORIC PRESERVATION - Any excavation by the Contractor that uncovers an historical or archaeological artifact shall be immediately reported to the PROJECT ENGINEER and a representative of RUS. Construction shall be temporarily halted pending the notification process and further directions issued by RUS after consultation with the State Historic Preservation Officer (SHPO).

32.4 ENDANGERED SPECIES - The CONTRACTOR shall comply with the Endangered Species Act, which provides for the protection of endangered and/or threatened species and critical habitat. Should any evidence of the presence of endangered and/or threatened species or their critical habitat be brought to the attention of the CONTRACTOR, the CONTRACTOR will immediately report this evidence to the PROJECT ENGINEER and a representative of RUS. Construction shall be temporarily halted pending the notification process and further directions issued by RUS after consultation with the U.S. Fish and Wildlife Service.

o0o

26.2 The CONTRACTOR shall not award WORK to SUBCONTRACTOR(s), in excess of fifty (50%) percent of the CONTRACT PRICE, without prior written approval of the OWNER.

26.3 The CONTRACTOR shall be fully responsible to the OWNER for the acts and omissions of its SUBCONTRACTORS, and of persons either directly or indirectly employed by them, as the CONTRACTOR is for the acts and omissions of persons directly employed by the CONTRACTOR.

26.4 The CONTRACTOR shall cause appropriate provisions to be inserted in all subcontracts relative to the WORK to bind SUBCONTRACTORS to the CONTRACTOR by the terms of the CONTRACT DOCUMENTS insofar as applicable to the WORK of SUBCONTRACTORS and to give the CONTRACTOR the same power as regards terminating any subcontract that the OWNER may exercise over the CONTRACTOR under any provision of the CONTRACT DOCUMENTS.

26.5 Nothing contained in this CONTRACT shall create any contractual relationship between any SUBCONTRACTOR and the OWNER.

27. ENGINEER'S AUTHORITY

27.1 The ENGINEER shall act as the OWNER'S representative during the construction period, shall decide questions which may arise as to quality and acceptability of materials furnished and WORK performed, and shall interpret the intent of the CONTRACT DOCUMENTS in a fair and unbiased manner. The ENGINEER will make visits to the site and determine if the WORK is proceeding in accordance with the CONTRACT DOCUMENTS.

27.2 The CONTRACTOR will be held strictly to the intent of the CONTRACT DOCUMENTS in regard to the quality of materials, workmanship, and execution of the WORK. Inspections may be made at the factory or fabrication plant of the source of material supply.

27.3 The ENGINEER will not be responsible for the construction means, controls, techniques, sequences, procedures, or construction safety.

27.4 The ENGINEER shall promptly make decisions relative to interpretation of the CONTRACT DOCUMENTS.

28. LAND AND RIGHTS-OF-WAY

28.1 Prior to issuance of NOTICE TO PROCEED, the OWNER shall obtain all land and rights-of-way necessary for carrying out and for the completion of the WORK to be performed pursuant to the CONTRACT DOCUMENTS, unless otherwise mutually agreed.

## 22. CONTRACT SECURITY

22.1 The CONTRACTOR shall within ten (10) days after the receipt of the NOTICE OF AWARD furnish the OWNER with a Performance BOND and a Payment BOND in penal sums equal to the amount of the CONTRACT PRICE, conditioned upon the performance by the CONTRACTOR of all undertakings, covenants, terms, conditions and agreements of the CONTRACT DOCUMENTS, and upon the prompt payment by the CONTRACTOR to all persons supplying labor and materials in the prosecution of the WORK provided by the CONTRACT DOCUMENTS. Such BONDS shall be executed by the CONTRACTOR and a corporate bonding company licensed to transact such business in the state in which the WORK is to be performed and named on the current list of "Surety Companies Acceptable on Federal Bonds" as published in the Treasury Department Circular Number 570. The expense of these BONDS shall be borne by the CONTRACTOR. If at any time a surety on any such BOND is declared a bankrupt or loses its right to do business in the state in which the WORK is to be performed or is removed from the list of Surety Companies accepted on Federal Bonds, CONTRACTOR shall within ten (10) days after notice from the OWNER to do so, substitute an acceptable BOND (or BONDS) in such form and sum and signed by such other surety or sureties as may be satisfactory to the OWNER. The premiums on such BOND shall be paid by the CONTRACTOR. No further payment shall be deemed due nor shall be made until the new surety or sureties shall have furnished an acceptable BOND to the OWNER.

## 23. ASSIGNMENTS

23.1 Neither the CONTRACTOR nor the OWNER shall sell, transfer, assign, or otherwise dispose of the Contract or any portion thereof, or of any right, title or interest therein, or any obligations thereunder, without written consent of the other party.

## 24. INDEMNIFICATION

24.1 The CONTRACTOR will indemnify and hold harmless the OWNER and the ENGINEER and their agents and employees from and against all claims, damages, losses and expenses including attorney's fees arising out of or resulting from the performance of the WORK, provided that any such claims, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property including the loss of use resulting therefrom; and is caused in whole or in part by any negligent or willful act or omission of the CONTRACTOR, and SUBCONTRACTOR, anyone directly or indirectly employed by any of them or anyone for whose acts any of them may be liable.

21. INSURANCE

21.1 The CONTRACTOR shall purchase and maintain such insurance as will protect it from claims set forth below which may arise out of, or result from, the CONTRACTOR'S execution of the WORK, whether such execution be by the CONTRACTOR, any SUBCONTRACTOR, or by anyone directly or indirectly employed by any of them, or by anyone for whose acts any of them may be liable:

21.1.1 Claims under workmen's compensation, disability benefit and other similar employee benefit acts;

21.1.2 Claims for damages because of bodily injury, occupational sickness or disease, or death of employees;

21.1.3 Claims for damages because of bodily injury, sickness or disease, or death of any person other than employees;

21.1.4 Claims for damages insured by usual personal injury liability coverage which are sustained (1) by any person as a result of an offense directly or indirectly related to the employment of such person by the CONTRACTOR, or (2) by any other person; and

21.1.5 Claims for damages because of injury to or destruction of tangible property, including loss of use resulting therefrom.

21.2 Certificates of Insurance acceptable to the OWNER shall be filed with the OWNER prior to commencement of the WORK. These Certificates shall contain a provision that coverages afforded under the policies will not be canceled unless at least fifteen (15) days prior WRITTEN NOTICE has been given to the OWNER.

21.3 The CONTRACTOR shall procure and maintain, at the CONTRACTOR'S own expense, during the CONTRACT TIME, Liability insurance as hereinafter specified: