John Coleman Hayes, P.C.
Engineers, Architects & Construction Managers
Woodmont Centre
104 Woodmont Boulevard, Suite 401, Nashville, Tennessee 37205
(615) 269-6397 FAX (615) 269-6415 E-MAIL JCHAYESPC@AOL.COM

# FACSIMILE COVER SHEET

| | |
|---|---|
| TO: | Mr. Ken Wilber<br>Director of Public Works |
| COMPANY: | City of Portland |
| PHONE: | 325-6776 |
| FAX: | 325-5345 |
| FROM: | Mr. John E. Gilmore, Jr., P. E. |
| PHONE: | 615-269-6397 |
| FAX: | 615-269-6415 |
| DATE: | 3/26/02 |
| PAGES INCLUDING THIS COVER PAGE: | Two (2) |
| COMMENTS: | Ken - My letter to Mayor Calloway, dated 3/26/02, follows for your information and/or use as may be needed. A copy of this letter is also being mailed to you this date. Should you have any questions, please do not hesitate to contact me. - John Gilmore |

FILE: FAXFORM.TEM

John Coleman Hayes, P. C.
Engineers, Architects & Construction Managers
Woodmont Centre
104 Woodmont Boulevard, Suite 401 • Nashville, Tennessee 37205
(615) 269-6397 FAX (615) 269-6415

March 26, 2002

Honorable Jim Calloway
Mayor
City of Portland
100 South Russell Street
Portland, Tennessee 37148

RE: Contract 2 - Water Distribution Line
Water System Improvements
City of Portland, TN

Dear Mayor Calloway:

Bids were received for the referenced project on March 14, 2002. The low bidder was Advantage Construction Services LLC in the amount of $136,169.00. The low bidder intends to sub most, if not all, work out to Cyclone Construction Company. We have contacted references of the contractor and find them to be experienced on this type of work and with adequate equipment to perform the work. The references advise that Cyclone Construction Company performs adequately, although I did not get shining praises about their work; however, they do perform satisfactorily.

We recommend that the award be given to the low bidder, and further recommend that ductile iron pipe be used on this important waterline.

Sincerely,

John E. Gilmore, Jr., P.E.
Chief Engineer

/dlm.JGLtr.9611.1

cc: Mr. Ken Wilber, Director of Public Works, City of Portland, TN
Ms. Barbara Brown, U.S. Department of Agriculture, Rural Development
File

G:\MO\FORM\TEMPLATE.LTR

John Coleman Hayes, P.C.
Engineers, Architects & Construction Managers
Woodmont Centre
104 Woodmont Boulevard, Suite 401, Nashville, Tennessee 37205
(615) 269-6397 FAX (615) 269-6415 E-MAIL JCHAYESPC@AOL.COM

# FACSIMILE COVER SHEET

| | |
|---|---|
| TO: | Mr. Ken Wilber<br>Director of Public Works |
| COMPANY: | City of Portland |
| PHONE: | 325-6776 |
| FAX: | 325-5345 |
| FROM: | Mr. John E. Gilmore, Jr., P. E. |
| PHONE: | 615-269-6397 |
| FAX: | 615-269-6415 |
| DATE: | 3/26/02 |
| PAGES INCLUDING THIS COVER PAGE: | Two (2) |
| COMMENTS: | Ken - My letter to Mayor Calloway, dated 3/26/02, follows for your information and/or use as may be needed. A copy of this letter is also being mailed to you this date. Should you have any questions, please do not hesitate to contact me. - John Gilmore |

FILE: FAXFORM.TEM

WATER SYSTEM IMPROVEMENTS
CONTRACT 2 – WATER DISTRIBUTION LINE
JCH PROJECT NO. 9611
BID TIME: 10:00 AM / BID DATE:

**MUST BE TN LICENSED CONTRACTOR / $100.00 DEPOSIT REQUIRED**

BIDDERS LIST

| SET NO. | RECIPIENT NAME | DATE OF P/U | DATE MAILED | DEPOSIT AMOUNT | REFUND AMOUNT | LICENSE CLASS |
|---|---|---|---|---|---|---|
| 1 & 2 | CITY OF PORTLAND<br>100 SOUTH RUSSELL STREET<br>PORTLAND TN 37148<br>325-6776 (O) 325-5345 (F)<br>(KEN WILBER) | N/A | PRIORITY MAILED 10/24/01 ($6.45) | N/A | N/A | N/A |
| 3 | U S DEPT OF AGRICULTURE<br>RURAL DEVELOPMENT<br>NASHVILLE AREA OFFICE<br>3322 WEST END AVE - SUITE 302<br>NASHVILLE TN 37203-6835<br>783-1359 (O) 783-1340 (F)<br>(BARBARA BROWN) | N/A | PRIORITY MAILED 10/24/01 ($3.95) | N/A | N/A | N/A |
| 4 & 5 | F W DODGE<br>1604 ELM HILL PIKE - SUITE 200<br>NASHVILLE TN 37210<br>366-4173 (O)<br>366-7420 (F)<br>(LORETTA OR CINDY) | COURIER P/U ON 10/24/01 | N/A | N/A | N/A | N/A |
| 6 | NASHVILLE CNTRS ASSOC INC<br>1214 PINE STREET<br>NASHVILLE TN 37203<br>254-8346 (O) 254-1223 (F) | N/A | PRIORITY MAILED 10/24/01 ($3.95) | N/A | N/A | N/A |
| 7 | WEST TN PLANS ROOM<br>439 AIRWAYS BOULEVARD<br>JACKSON TN 38301<br>901-427-2573 (O) 901-427-3741 (F) | N/A | PRIORITY MAILED 10/24/01 ($3.95) | N/A | N/A | N/A |
| 8 | CONSTRUCTION MARKET DATA<br>2 INTERNATIONAL DR STE 108<br>NASHVILLE TN 37217<br>399-8991 (O) 399-9141 (F)<br>901-362-6367 (O) 901-362-8426 (F)<br>(DEBRA – MEMPHIS) | N/A | PRIORITY MAILED 10/24/01 ($3.95) | N/A | N/A | N/A |
| 9 | JOHNSON&JOHNSON CONSTR INC<br>1725 LESTER FLATT RD<br>SPARTA TN 38583<br>(JUNIOR JOHNSON)<br>931-738-2043 (O) 931-738-2093 (F) | N/A | PRIORITY MAILED 10/23/01 ($3.95) | $100.00 CHECK TO JILL ON 10/24/01 | | TN LIC: 21361<br>EXP: 07/31/02<br>MU-A<br>$3,000,000.00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 10 | PERDUE TRUCKING & EXCAVATING<br>(130 MORNINGSIDE DRIVE)<br>P O BOX 848<br>PORTLAND TN 37148<br>615-325-6177 (O & F) CALL FIRST | N/A | PRIORITY MAILED 10/23/01 ($3.95) | $100.00 CHECK TO JILL ON 10/24/01 | | TN LIC: 37875<br>EXP: 04/30/02<br>BC-28;CMC-A;<br>MU-A(2,3), C<br>$1,000,000.00 |
| 11 | JENKINS CONSTRUCTION<br>1976 ROCKBRIDGE ROAD<br>BETHPAGE TN 37022<br>615-888-2717 (O/F)<br>(MATT JENKINS) | N/A | PRIORITY MAILED 10/30/01 ($5.20) | TO BE MAILED | | TN LIC: 16301<br>EXP: 01/31<br>MU-A 1,2,3,4<br>$2,000,000.00 |
| 12 Present Pre-Bid | PARRIS CONSTRUCTION INC<br>(8870 HWY 111)<br>P O BOX 424<br>BYRDSTOWN TN 38549<br>931-864-6554 (O) 931-864-6280 (F)<br>(JERRY PARRIS) | | PRIORITY MAILED 10/30/01 ($5.20) | $100.00 CHECK TO JILL ON 11/05/01 | | TN LIC: 30952<br>EXP: 01/31<br>MU-A,C,D-5;BC;<br>MU-A-(1,3),B,C<br>UNLIMITED |
| 13 | BOLDEN PIPE CNST PIPE CO INC<br>(7005 WESTBELT DRIVE)<br>P O BOX 90388<br>NASHVILLE TN 37209<br>615-350-6100 (O) 615-350-6103 (F) | PICK-UP ON 11/01/01 | N/A | $100.00 CHECK HOLD | | TN LIC: 18754<br>EXP: 05/31<br>BC-28;MU;<br>HC;HRA;CMC;<br>BC-5,31<br>UNLIMITED |
| 14 | CLEARY CONSTRUCTION INC<br>1860 EDMONTON ROAD<br>TOMPKINSVILLE KY 72167<br>270-427-6146 (M) 270-487-8029 (F)<br>(DON CLEARY) | N/A | PRIORITY MAILED 11/01/01 ($5.20) | $100.00 CHECK TO JILL OM 11/5/01 | | TN LIC: 41957<br>EXP: 05/31<br>MU-A,C<br>$1,000,000.00 |
| 15 | PORTLAND UTILITIES CONSTR CO LLC<br>P O BOX 510<br>PORTLAND TN 37148<br>615-325-3374 (O) 615-325-3367 (F) | N/A | PRIORITY MAILED 11/02/01 ($5.20) | RTND FOR NEW CHECK 11/5/01 | | TN LIC: 29789<br>EXP: 11/30<br>MU-A;BC-A<br>$3,000,000.00 |
| 16 | CONTRACTING SERVICES INC<br>2267 BAPTIST CHURCH ROAD<br>CULLEOKA TN 38451<br>931-987-3014 (O) 931-527-9919 (F) | PICK-UP ON 11/05/01 | N/A | $100.00 CHECK HOLD | | TN LIC: 45857<br>EXP: 07/31<br>BC-28<br>$950,000.00 |
| 17 | KENNETH RICH CONSTR INC<br>109 HOLIDAY COURT STE C-4<br>FRANKLIN KY 37067<br>615-595-9600 (O) 615-595-7010 (F)<br>(KENNETH RICH) | PICK-UP ON 11/06/01 | N/A | $100.00 CHECK HOLD | | TN LIC: 35110<br>EXP: 05/31<br>HRA MU<br>$1,000,000.00 |
| 18 | LATHAM'S BACKHOE & DOZER SVC<br>2087 DUNMOR DEERLICK ROAD<br>LEWISBURG KY 42256<br>270-657-2101 (O) 270-657-2140 (F)<br>(RICHARD LATHAM) | N/A | PRIORITY MAILED 11/07/01 ($5.20) | $50.00 CHECK HOLD; $50.00 TO BE SENT | | TN LIC: 42070<br>EXP: 09/30<br>MU-A(2&3)<br>$750,000.00 |

FORM APPROVED
OMB NO. 0575-0042

USDA-FmHA
Form FmHA 1924-18
(Rev. 2/87)

# PARTIAL PAYMENT ESTIMATE

CONTRACT NO.

PARTIAL PAYMENT ESTIMATE NO. 1

PAGE 1 OF 3

OWNER: City of Portland, TN

CONTRACTOR: Advantage Const. Svcs

PERIOD OF ESTIMATE FROM June 1 TO 6/14/02

## CONTRACT CHANGE ORDER SUMMARY

| No. | FmHA Approval Date | Amount: Additions | Amount: Deductions |
|---|---|---|---|
| | | | |
| TOTALS | | | |
| NET CHANGE | | | |

## ESTIMATE

| | |
|---|---|
| 1. Original Contract | 136,169.00 |
| 2. Change Orders | 0 |
| 3. Revised Contract (1 + 2) | 136,169.00 |
| 4. Work Completed * | 0 |
| 5. Stored Materials * | 83720 |
| 6. Subtotal (4 + 5) | 83720 |
| 7. Retainage * | 8372 |
| 8. Previous Payments | 0 |
| 9. Amount Due (6-7-8) | 75,348 |

* *Detailed breakdown attached*

## CONTRACT TIME

Original (days) 150
Revised 0
Remaining

On Schedule ☒ Yes ☐ No

Starting Date June 12, 2002
Projected Completion July 20, 02

**CONTRACTOR'S CERTIFICATION:**
The undersigned Contractor certifies that to the best of their knowledge, information and belief the work covered by this payment estimate has been completed in accordance with the contract documents, that all amounts have been paid by the contractor for work for which previous payment estimates was issued and payments received from the owner, and that current payment shown herein is now due.

Contractor Advantage Const. Svcs
By [signature]
Date 6/14/02

**ARCHITECT OR ENGINEER'S CERTIFICATION:**
The undersigned certifies that the work has been carefully inspected and to the best of their knowledge and belief, the quantities shown in this estimate are correct and the work has been performed in accordance with the contract documents.

Architect or Engineer John Coleman Hayes, P.C.
By [signature]
Date JUL 02 2002

**APPROVED BY OWNER:**

Owner
By
Date

**ACCEPTED BY FmHA:**
The review and acceptance of this estimate by FmHA does not attest to the correctness of the quantities shown or that the work has been performed in accordance with the contract documents.

By
Date

## TYPICAL UNIT PRICE BREAKDOWN *

| ITEM | DESCRIPTION | CONTRACT (revised) QUANTITY | CONTRACT UNIT PRICE | CONTRACT AMOUNT | THIS PERIOD QUANTITY | THIS PERIOD AMOUNT | TOTAL TO DATE QUANTITY | TOTAL TO DATE AMOUNT | % COMPLETE |
|---|---|---|---|---|---|---|---|---|---|
| 1A | 16" C50 | 5200 | $ 24.22 | $ 125,944.– | – | $ – | – | $ – | 0 |
| 2 | Gate Valve | 1 | 1700 | 1700 | | | | | |
| 3 | Tapping Tee | 1 | 1700 | 1700 | | | | | |
| 4 | Stone | 100 | 9 | 900 | | | | | |
| 5 | Pavement | 50 | 25 | 1250 | | | | | |
| 6 | Concrete | 15 | 45 | 675 | | | | | |
| 7 | Connection | 2 | 2000 | 4000 | | | | | |
| | TOTALS | | | 136169 | | 0 | | 0 | 0 |

## TYPICAL LUMP SUM PRICE BREAKDOWN *

| ITEM | DESCRIPTION | SCHEDULED VALUE | WORK COMPLETED THIS PERIOD | WORK COMPLETED TO DATE | % COMPLETE |
|---|---|---|---|---|---|
| | | $ | $ | $ | |
| | TOTALS | | | | |

## TYPICAL STORED MATERIALS AND RETAINAGE BREAKDOWN *

MATERIALS STORED AT END OF THIS PAYMENT PERIOD

| DESCRIPTION | QUANTITY | UNIT VALUE | AMOUNT |
|---|---|---|---|
| Pipe 16" C50 | 5200 | $ 16.10 | $ 83,720 |

RETAINAGE

| | THIS ESTIMATE | PERCENT | RETAINED |
|---|---|---|---|
| WORK COMPLETED: | $ 0 | 0 % | $ 0 |
| STORED MATERIALS: | 83720 | 10 | 8,372 |
| OTHER (explain) | | | |
| TOTAL | 83720 | | 8372 |

* As a minimum, detailed breakdowns should contain this information.

U.S. GPO: 1981-754-007/41515

Page 2 of 3

FmHA 1924-18
REVERSE

REMIT TO
4509 ROSSVILLE BOULEVARD
P.O. BOX 72847
CHATTANOOGA, TENNESSEE 37407-5847
PHONE 423/867-1033
FAX 423/867-7944

WATER WORKS SUPPLY CO., INC.

5638 MANCHESTER HWY.
P.O. BOX 308
MORRISON, TENNESSEE 37357-0308
PHONE 931/668-7866
FAX 931/668-3095

SHIP/TRANSFER NUMBER
A01221

SHIP/TR/INVOICE NUMBER
2164348-01

BILL TO: ADVANTAGE CONSTRUCTION SVCS
101 B W RAIROAD
DICKSON TN 37055

SHIP TO: ADVANTAGE CONSTRUCTION SVCS
1-615-740-0937
PORTLAND TN

CUSTOMER P.O. NO.

CUSTOMER P.O. NO. PORTLAND

| SHIP/TR/INVOICE NUMBER | SLSMN | ORDER DATE | TAKER | CUSTOMER P.O. NUMBER | DATE |
|---|---|---|---|---|---|
| 2164348-01 | 644 | 06/07/02 | 104 | PORTLAND | 06/17/02 |

| INSTRUCTIONS | FRT | PAGE NO. |
|---|---|---|
| DIRECT | P | 1 |

| QUANTITY ORDERED | B.O./RET. | SHIPPED | DISP. | ITEM CODE AND DESCRIPTION | U/M | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|---|---|
| 5200 | | 5223.40 | F* | *UD16" CL-350 DUCTILE IRON PIPE | EA | 16.1000 | 84096.7 |

CODE EXPLANATION
* - STATE TAX APPLICABLE
F - FED/OTHER TAX APPLICABLE
+ - STATE & FEDERAL TAX APPL
B - BALANCE BACK ORDERED
C - CONSIDER COMPLETE
D - DIRECT SHIPMENT
F - FACTORY MINIMUM
R - RETURNED CYL

*** THIS IS YOUR INVOICE ***

| FREIGHT IN | FREIGHT OUT |
|---|---|
| 0.00 | 0.00 |

NET TERMS: INV 30 DUE: 07/17/02

| | |
|---|---|
| SUB TOTAL | 84,096.7 |
| MISC. CHARGE | |
| TELE. CHARGE | |
| FREIGHT TOTAL | 0.0 |
| FED./OTHER TAX | |
| STATE TAX | 6,937.9 |
| PAYMENT REC'D | 0.0 |
| TOTAL AMT DUE | 91,034.7 |

Page 3 of 3

LOPTB 1/88

ORIGINAL

**BRADSHAW ENGINEERING & SURVEYING**
105 Main Street
Portland, TN 37148
(615) 323-0370
(615) 323-7370

**Invoice No.** 02-019b
NO. 3

RECEIVED ... 2003

| | | | |
|---|---|---|---|
| Name | CITY OF PORTLAND (attn: Steve Whitehead) | Date | 10/24/2003 |
| Address | 100 S. Russell Street | Order No. | |
| City | Portland State TN ZIP 37148 | Rep | |
| Phone | (615) 325-6776 | FOB | |

| Qty | Description | Unit Price | TOTAL |
|---|---|---|---|
| | Stake Waterline easement through William S. McGlothlin property | | |
| **HOURS** | | | |
| 1 | **Professional Land Surveyor** | $60.00 | $60.00 |
| 12 | **SURVEY CREW** | $70.00 | $840.00 |
| | | SubTotal | $900.00 |
| | | **TOTAL** | $900.00 |

1

Office Use Only

OK Steve Whitehead

*Providing Professional Services with a Smile*

Attachment to Subpoena

Any and all documents pertaining to the construction, repair or replacement of a water line for the City of Portland by Advantage Construction Services, LLC, Jones Bros. Construction Company and/or Norris Excavating Company, the same being Contract 2 - Water Distribution Line, and any and all records pertaining to leaks found in said line

# National Waterworks

109 CRUTCHFIELD AVE.
NASHVILLE, TN 37210

*PHONE: 615-244-1824* *FACSIMILE: 615-726-2112* *TOLL FREE: 800-251-8157*

# FAX

TO: City of Portland Attn Janice

DATE: 11/27/02

FAX #: 325-5346

PAGE: 1 OF 3

FROM: **RAY LANE**

RE: Bid # 0660271 Repair Clamps

MESSAGE:

If you have any questions please let me know

Thanks

Ray

**CONFIDENTIALITY NOTE:** The information contained in this facsimile is intended only for the use of the individual or entity to which it is addressed and may contain information that is legally privileged, confidential and exempt from disclosure under the applicable law. If you have received this communication in error, please notify us by telephone and return the original message to us at the address above via the United States Postal Service.

CITY OF PORTLAND
STOCK-NASHVILLE
100 S RUSSELL ST
PORTLAND TN 37148

NWW - Nashville TN
109 Crutchfield Ave.
Nashville TN 37210
Telephone: 615-244-1824

11/27/02 Bid ID: 660271 71/ REPAIR CLAMPS 11/27/02 

| Line | Quantity | Sell Per | Description | Net Price | Extended Price |
|---|---|---|---|---|---|
| | | | 71/ REPAIR CLAMPS 11/27/02<br>NWW BID #0660271<br>NATIONAL WATERWORKS INC.<br>109 CRUTCHFIELD AVE.<br>NASHVILLE, TN. 37210<br>615-244-1824 OR 1-800-251-8157<br>FAX:(615)726-2112<br>------------------------------<br>BID DATE:11/27/02<br>------------------------------<br>ALL PRICES ON THIS QUOTATION ARE FIRM FOR 30 DAYS FROM THE BID DATE. IF ORDER IS NOT PLACED WITHIN THE 30 DAYS FROM BID DATE, ALL PRICES ARE SUBJECT TO CHANGE.<br>------------------------------<br>NOTE: ALL ORDERS WHICH ARE PLACED WITHIN 30 DAYS FROM BID DATE MUST HAVE ALL MATERIAL SHIPPED WITHIN 60 DAYS. ALL PRICES ARE SUBJECT TO CHANGE AFTER THIS TIME FRAME.<br>------------------------------ | | |
| | | | **Bid Item 1** | | |
| | | | REPAIR CLAMP | | |
| 260 | 1 | EA | FS2-1790-20 SS REP CLAMP 16X20<br>OD 17.15-17.90 | 404.44 | 404.44 |
| 270 | 1 | EA | FS2-1790-30 SS REP CLAMP 16X30 | 645.13 | 645.13 |
| | | | Bid Item Sub-total: | | 1,049.57 |

Subtotal: 1,049.57

Tax: .00

Bid Total: 1,049.57

January 3, 2003

TO: Mayor Calloway

FROM: Kenneth Wilber

RE: Memo dated January 2, 2002 (Advantage Construction)

1) I also would like to see the line replaced.
2) Engineering-We could use existing plans that we already have.
3) Inspection-Steve Whitehead could do the inspection.
4) City installing the line-I have several concerns about us laying this line. None of the water department personnel at this time have had experience installing a line of this size and type. The city would have to either rent or purchase some equipment to lay this line with including a track hoe; this cost would need to be analyzed. The water dept. has only seven people that could work on this line of which you would need six at this site working on this project at all times in order to work safely. The normal work could not be performed such as new taps, repairing leaks, helping with traffic, blowing off of lines, and other daily items. I really feel like a project like this needs to be done by an outside contractor that has all of the proper equipment and experience in doing a project like this.

Mayor:
Jim Calloway

Vice-Mayor:
Luther Bratton

City Council:
Don Anderson
Jim Butler
Jerry Denning
Ronnie Meadows
Walter "Buck" Morris
Marilyn Utley

CITY OF PORTLAND, TN
Proud, Progressive Portland
Home of the STRAWBERRY FESTIVAL
100 South Russell, Portland, Tennessee 37148
615-325-6776

COPY

January 13, 2003

Mr. John Coleman Hayes
Woodmont Centre
104 Woodmont Blvd., Suite 401
Nashville, Tennessee 37205

RE:
Portland - WTP/Lake Project
Engineering Contract

Dear Mr. Hayes,

When we met in my office last week, the issue was brought up regarding three unpaid invoices to JCH Engineering for work related to the Water Treatment Plant/Lake Project. At that time, both Kenneth Wilber and I agreed that we should not hold those payments any longer, but should release them because: (1) We'd discussed solutions for completion at the WTP and agreed to contact the surety provider for Advantage Construction company, and (2) We'd received the third (and last) loan funding from Rural Development that we needed to pay invoices being held on Phase I of the project. (Water Treatment Plant)

However, it was later brought to my attention that the City's original 1997 contract with you had a "not to exceed" total of $215,000.00. In addition, there was an estimate of $90,000.00 for inspection and $60,000.00 allowed for "other engineering". In 2000, after it was evident that the City would need additional funding from Rural Development to fund this project in its entirety, Rural Development required an amendment to the engineering contract, with a new "not to exceed" total of $300,000.00.

CITY OF PORTLAND, TN
Proud, Progressive Portland
Home of the STRAWBERRY FESTIVAL
100 South Russell, Portland, Tennessee 37148
615-325-6776

Mayor:
Jim Calloway

Vice-Mayor:
Luther Bratton

City Council:
Don Anderson
Jim Butler
Jerry Denning
Ronnie Meadows
Walter "Buck" Morris
Marilyn Utley

COPY

January 13, 2003

Mr. John Coleman Hayes
Woodmont Centre
104 Woodmont Blvd., Suite 401
Nashville, Tennessee 37205

RE: Portland - WTP/Lake Project
Engineering Contract

Dear Mr. Hayes,

When we met in my office last week, the issue was brought up regarding three unpaid invoices to JCH Engineering for work related to the Water Treatment Plant/Lake Project. At that time, both Kenneth Wilber and I agreed that we should not hold those payments any longer, but should release them because: (1) We'd discussed solutions for completion at the WTP and agreed to contact the surety provider for Advantage Construction company, and (2) We'd received the third (and last) loan funding from Rural Development that we needed to pay invoices being held on Phase I of the project. (Water Treatment Plant)

However, it was later brought to my attention that the City's original 1997 contract with you had a "not to exceed" total of $215,000.00. In addition, there was an estimate of $90,000.00 for inspection and $60,000.00 allowed for "other engineering". In 2000, after it was evident that the City would need additional funding from Rural Development to fund this project in its entirety, Rural Development required an amendment to the engineering contract, with a new "not to exceed" total of $300,000.00.

Our second application (for additional funding) for a cost overrun exceeded 20% of the original total sought from Rural Development. This made it necessary that the project be handled as though there were two separate "pots of money" (as it was phrased by Rural Development officials), and it thereby became "Phase I" and "Phase II". However, other than the contracts numbered 1 - 4, there were no provisions made in the engineering contract for the total to be divided between Phase I and Phase II monies, though we have been required to keep the engineering fees paid accounted separately. (by spreadsheet)

When it was necessary to seek yet another cost overrun from Rural Development, the budget submitted to them increased the "architectural and engineering" line item from $399,000.00 to $419,000.00, and "project inspection" line item from $125,000.00 to $155,000.00. The "other engineering" line item was not increased. However, no contract amendment was done to reflect these increases on the engineering contract.

As of the last payments made to JCH, (Phases I and II) our records indicate a total paid of $448,439.54. (Contract allows $300,000.00) Inspection **is included** in this total and is at $107,415.00. (Contract allows $90,000.00) The amount paid for "other engineering" totals $112,567.25 on Phase I and $133,328.96 for Phase II. (Contract allows $60,000.00) The three unpaid invoices we are now holding total $22,184.00. (Engineering and inspection)

Without contract amendments, payments have already exceeded all three of these contract amounts. We obviously need contract amendments, and we obviously need to discuss the monetary amount of engineering it will take to complete this project. Given the past history of the project thusfar, even with contract amendments to reflect the cost overrun funding (third loan of $1.0 million) recently made available to us, we will likely double those amounts by the time the work's completed. With so much of the work yet to be done, we cannot afford this.

Please contact my office at your very earliest convenience to discuss this crucial matter.

Sincerely,

Jim Calloway

Jim Calloway
Mayor

JC:tk

c: Rural Development, Barbra Brown (w. spreasheet)
Public Works Supt., Kenneth Wilber
City Attorney, David Amonette

# FAX TRANSMISSION

**DAVID M. AMONETTE & ASSOCIATES**
100 MAIN STREET, SUITE 104
PORTLAND, TN 37148
615-325-1806
FAX: 615-325-1807

| | | | |
|---|---|---|---|
| **To:** | Mr. Kenneth Wilber<br>Director of Public Works | **Date:** | January 13, 2003 |
| **Fax #:** | 325-5345 | **Pages:** | 3, including this cover sheet. |
| **From:** | Jackie W. McCormick | | |
| **Subject:** | Letter from Advantage Construction Services, LLC | | |

COMMENTS:

Attached is the letter from Advantage Construction Services, LLC that was received today. I am providing you with a copy of this letter. David is out sick today so he has not had a chance to read the letter.

Advantage Construction Services, LLC
101 B West Railroad Street
Dickson, TN 37055

January 10, 2003

Mr. David M. Amonette
City Attorney
Amonette and Stubbs
554 West Main Street
Gallatin, TN 37066

Transmitted via Facsimile (615) 452-5592
and US Mail

RE: City of Portland Water System Improvements

Dear Mr. Amonette:

I received your letter dated January 8, 2003, regarding execution of specification section 18.02 of the General Conditions of the Contract. At this time we believe that the execution of this Section of the contract is improper and will lead to a greater dispute than what already exists. Please consider the following:

1. The pipeline has been fully installed and as of January 10, 2003, each joint of the pipeline has been fully exposed to allow for visual inspection for leaks. The pressure testing of the pipe is commencing, with the exposed joints being viewed directly for any leaks.

2. As you stated in your earlier correspondence, we have been performing repairs associated with a defect presented by the pipe manufacturer.

3. The City's Engineer failed to comply with the contract requirements General Conditions Section 19.1, which states that the engineer shall approve or reject the payment request within 10 days of the request. The approval (of PPE 2) was approximately one month after receipt of the request.

4. The City failed to comply with the General Conditions Section 19.1, which relates to payment within 10 days of receipt of the Engineers recommended payment. The Engineer did approve/recommend payment.

5. The lack of payment by the City has caused us to operate on reduced funding impacting the level of resources that could be placed on this job.

6. In accordance with General Conditions Section 15.4.2 the Contractor is due an extension to the contract for causes beyond the control of the Contractor. We submitted a letter to the Engineer dated October 14, 2002 notifying him of the cause of delay and notifying him that we were due an extension of time. To date we have not been informed that we did not receive that extension.

7. On two occasions the Public Works Director has "opened" a valve that then allowed unsanitised water to enter the operating City water system. This creates a condition in which the residents are exposed to contaminated drinking water. The Engineer's inspector was notified of this problem (following the first incident) and was requested to ask the City to not exercise this valve. This valve is part of the "new" waterline and is not an integral



Case 3:04-cv-00555 Document 83 Filed 07/19/05 Page 18 of 50 PageID #: 651

component of the City's operating system (i.e. there is no reason that the City should have opened this valve).

8. Since receipt of your letter, the City has threatened our staff, with police arrest if they perform any work on the project. While the arrests have not occurred, the harassment is impacting our ability to perform.

It is unfortunate and obvious that we are entering an adversarial relationship that if continued will result in our challenging the City and both of us raising issues that will cause damage to both parties. There is no doubt that both parties have made mistakes in this process, ranging from our assumption that the pipe was not defective and would test in a short time period to the City's contaminating the residential water system.

It is our goal to have completed the testing and if needed, repair of any leak prior to the 10-day deadline. However, the complete cleanup and punchlist remediation may not be practically completed within that time. I recommend that the City, you and myself meet on-site to discuss the timing involved with our completing the work vs. our leaving the project and having new and different staff performing the same work that we would be performing. There is no doubt that the completion would be reached sooner with our forces remaining.

If you have any questions, please call me at (615) 740-0930.

Sincerely,
ADVANTAGE CONSTRUCTION SERVICES, LLC

Trent Smith, P.E.
Project Manager

LAW OFFICES
SCHULMAN, LEROY & BENNETT, P.C.

SUITE 701-THE FIVE HUNDRED AND ONE UNION BUILDING
POST OFFICE BOX 190676
NASHVILLE, TENNESSEE 37219-0676
TELEPHONE (615) 244-6670
FACSIMILE (615) 254-5407

W. WAYNE LEROY
ANGUS GILLIS, III
GARY S. RUBENSTEIN
KLENE W. BARTLEY
BARBARA J. PERUTELLI
J. ANTHONY ARENA
MARIAN L. KOHL
ASHLEY N. ARNOLD

OF COUNSEL
J. CARSON STONE

I. R. SCHULMAN
(1908-1986)
T. T. McCARLEY
(1918-1975)
LEWIS D. PRIDE
(1933-1978)
H. MICHAEL BENNETT
(RETIRED 1998)
OF COUNSEL
SEYMOUR SAMUELS, JR.
(1912-1992)

# TRANSMITTAL COVER SHEET

TO: David Amonette

FROM: Angus Gillis, III

FAX NO. 452-5592

DATE: January 31, 2003

OUR FILE NO.

REMARKS:

---

The following transmittal consists of this cover sheet and ____ page(s). If you have any problems receiving this transmittal, please call Annie at 615/244-6670.

CONFIDENTIALITY NOTICE

This facsimile is intended solely for the use of the individual or entity named above and may contain information that is confidential, privileged and exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in this transmission is strictly PROHIBITED. IF YOU RECEIVE THIS TRANSMISSION IN ERROR, PLEASE NOTIFY THE SENDER IMMEDIATELY.

LAW OFFICES
SCHULMAN, LEROY & BENNETT, P.C.
SUITE 701-THE FIVE HUNDRED AND ONE UNION BUILDING
POST OFFICE BOX 190676
NASHVILLE, TENNESSEE 37219-0676
TELEPHONE (615) 244-6670
FACSIMILE (615) 254-5407

W. WAYNE LEROY
ANGUS GILLIS, III
GARY D. RUBENSTEIN
KEENE W. BARTLEY
BARBARA J. PERUTELLI
J. ANTHONY ARENA
DOUGLAS E. JONES
ASHLEY N. ARNOLD

OF COUNSEL
J. CARSON STONE
JOHN I. HARRIS, III
BRENDA MCARELLS DOWDLE

I. R. SCHULMAN
(1906-1986)
T. T. McCARLEY
(1916-1975)
LEWIS D. PRIDE
(1933-1976)
H. MICHAEL BENNETT
(RETIRED 1996)
OF COUNSEL
SEYMOUR SAMUELS, JR.
(1913-1992)

January 31, 2003

**VIA FAX - 452-5592**

David Amonette, Esq.
554 West Main Street
Gallatin, TN 37066-3132

Dear David:

You will find enclosed a proposed Takeover Agreement. Please review this agreement and give me a call. There may be a question on the amount owing under the contact. The engineer provided me with the second pay request which shows the gross amount set forth in this Takeover Agreement. When we were talking the other day in a meeting, a figure of $136,169.00 was discussed as the gross amount. I am not sure I know the reason for the discrepancy. I am not trying to pull the wool over your eyes. I just want you to know that I have used the higher figure. I assume it is based on unit quantities. RLI hopes to have Jones Bros. on the job some time next week. I am circulating completion contracts to Jones Bros., etc. at the same time I am sending this Takeover Agreement to you.

Sincerely,

Angus Gillis, III

Angus Gillis, III

AG:ags
Enclosure

# TAKEOVER AGREEMENT

This Takeover Agreement is made and entered into this ______ day of ________________, 2003, by and between RLI Insurance Company (RLI), and the City of Portland (the City).

## RECITALS:

WHEREAS, Advantage Construction Services, LLC (the Original Contractor) and the City entered into a contract (the Original Contract) for the Original Contractor to furnish all labor and material and to perform all work for a contract generally known as Phase II, Lake Project Distribution Main Contract, and

WHEREAS, under the terms of the Original Contract, the RLI made, executed and delivered to the City a Payment Bond and a Performance Bond having a combined penal sum of One Hundred Thirty Nine Thousand One Hundred Sixty Nine and No/100 ($139,169.00) Dollars, said bonds each bearing Bond No. SSB337832 and

WHEREAS, the City has advised RLI that the Original Contractor has defaulted under the terms and provisions of the Original Contract, and

WHEREAS, RLI is willing to undertake the completion of the Original Contract in accordance with the bond and this agreement provided that in doing so, it will receive the entire contract balance hereinafter defined "subject to the conditions hereinafter set forth".

NOW, THEREFORE, in consideration of the agreements hereinafter set forth and for other good and valuable consideration, receipt and sufficiency of which are hereby acknowledged, the City and RLI agree as follows:

1. RLI hereby undertakes to cause the performance of the Original Contractor's obligations under the Original Contract including all written change orders. The City acknowledges that RLI by its execution of this agreement is acting in its capacity as the Surety for the Original Contractor. The City further acknowledges that RLI, in making arrangements for the performance and completion of the Original Contract, is not acting as a completing contractor and that RLI is not assuming any obligations or liabilities beyond those set forth in the bonds. As to the completion of the Original Contract, except as otherwise provided in this agreement, RLI is entitled to all the rights, title and interest of the Original Contractor in and to the Original Contract in all respects as if RLI were the original party to the Original Contract.

2. The parties recognize that the 16 inch water line which was to be installed pursuant to the Original Contract has already been installed, however, there have been problems with leaks in the line. RLI will undertake through a completion contractor to repair the leaks by installing sleeves. The City agrees to accept the repairs performed by the completion contractor so long as the water line meets the pressure test requirements of the specifications. The City agrees that neither RLI nor the completion contractor shall be required to take up the previously laid pipe and replace the same. It is expressly agreed that the repair of any leaks by the use of sleeves of the type already used on the job is acceptable.

3. The City acknowledges that RLI will procure the performance of the work under the Original Contract through Jones Bros. Construction Company (the Completion Contractor). RLI may satisfy the required insurance obligations under the Original Contract by requiring the Completion Contractor to provide evidence that it carries the required insurance coverage. The performance of all of the obligations under the Original Contract shall be made by Jones Bros. Construction Company or such subcontractors as it may employ. The City hereby consents to RLI's designation of Jones Bros. Construction Company as the Completion Contractor to complete the Original Contract.

4. The City and RLI agree that as of the date of this agreement, the Original Contractor has been paid Seventy Five Thousand Three Hundred Forty Eight and No/100 ($75,348.00) Dollars of the total contract sum of One Hundred Thirty Nine Thousand Eight and No/100 ($139,008.32) Dollars (the total contract sum in the amount of the Original Contract, One Hundred Thirty Six One Hundred Sixty Nine and No/100 ($136,169.00) Dollars), leaving an estimated contract balance of Sixty Three Thousand Six Hundred Sixty and 32/100 ($63,660.32) Dollars. This contract balance will be adjusted pursuant to the Original Contract based on actual quantities installed. The City represents that it has no claims or offsets of any nature which would reduce the amount of the contract sum to be paid or the contract balance at the completion of the contract. As of the date of the execution of this agreement, the Owner represents and warrants that according to the records available to it, the contract balance as set forth herein is accurate. RLI reserves the right to verify the accuracy of the contract balance. RLI's sole remedy against City for such breach of this representation and warranty is reformation of the contract balance in the proper amount.

LTQ Damages

5. The payment of the contract balance to RLI shall be made in accordance with the terms of the Original Contract as to time, amount and method of payment.

6. The City agrees that RLI and its Completion Contractor shall have the right to use, without charge, any of the equipment, materials and appurtenances furnished or supplied by the Original Contractor which may be stored on or about the premises of the project site or materials which may have been fabricated for use in connection with the Original Contract whether or not presently upon the project site.

7. If there are any questions regarding the performance of the project by the Completion Contractor, RLI hereby designates Larry Wall of Larry Wall & Associates, LLC, Suite 202, 9 Office Park Circle, Birmingham, AL 35223, phone number (205) 870-4299, to be its representative in dealing with the City on day-to-day construction issues with respect to the project. RLI hereby designates Larry Wall of Larry Wall & Associates to work with the City or the City's representative to prepare and process pay estimates on the Original Contract. Checks or bank drafts from the City shall be made payable to RLI and transmitted to RLI at the following address unless and until the Owner is notified in writing of any different address: 9025B Lindbergh Drive, Peoria, IL 61614-1413, Attention Tim Winship.

8. Larry Wall of Larry Wall & Associates, LLC shall have, on behalf of RLI, the authority to negotiate and sign change orders for extra work, work that is different from, in excess of or beyond the scope of the work required by the original contract, which is requested or required by the Owner (hereinafter change order) without RLI's prior written approval provided the change order does not exceed Five Thousand and No/100 ($5,000.00) Dollars. If the change order exceeds Five Thousand and No/100 ($5,000.00) Dollars, then RLI's prior written approval is required to negotiate the change order. Any change order exceeding Five Thousand and No/100 ($5,000.00) Dollars must be signed by the City and RLI. Larry Wall's signature on a change order in excess of Five Thousand and No/100 ($5,000.00) Dollars shall not be binding on RLI. Larry Wall of Larry Wall & Associates, LLC has no authority to negotiate deductive change orders, credits, backcharges or net deductions from the Original Contract or the contract balance of any nature whatsoever without RLI's prior written approval. Any agreement with respect to warranty work or corrective work as

a result of a latent defect in the work performed by the Original Contractor or the Completion Contractor shall require the written approval of RLI.

9. The total liability of RLI under this agreement, the Performance Bond and the Payment Bond, after the expenditure of the contract balance, is limited to One Hundred Thirty Six Thousand One Hundred Sixty Nine and No/100 ($136,169.00) Dollars. All payments properly made by RLI for the performance of the Original Contract or made to subcontractors, material suppliers or others supplying labor, material or services to the project shall be credited against the penal sum of the Payment Bond and the Performance Bond. The combined penal sum of the Payment Bond and the Performance Bond is One Hundred Thirty Six Thousand One Hundred Sixty Nine and No/100 ($136,169.00) Dollars. Nothing in this agreement constitutes a waiver of such penal sum or an increase in the liability of RLI under the Performance Bond or the Payment Bond.

What if Jix Goes more Than This.

10. The Performance Bond and the Payment Bond shall remain in full force and effect in accordance with their terms and provisions.

11. This agreement is solely for the benefit of the City and RLI. The City and RLI do not intend by any provision of this agreement to create any rights in or increase the rights of any third party or to confer any benefit upon anyone other than the City and RLI. Specifically, the City and RLI acknowledge that nothing in this agreement shall extend or increase the rights of any third party claimants or the liabilities or the obligations of RLI under the Performance Bond and Payment Bond.

12. This agreement constitutes the whole of the understandings, discussions and agreements by and between the City and RLI. The terms and provisions of this agreement are contractual and not mere recitals. The City and RLI acknowledge that there have been no oral, written or other agreements of any kind as a condition precedent to or to induce the execution and delivery of this agreement. Any written or oral discussions conducted prior to the effective date of this agreement shall not in any way vary or alter the terms of this agreement.

13. This agreement shall not be changed, amended or altered in any way except in writing, executed by both the City and RLI.

14. This agreement may be executed in one or more counterparts, each of which shall be deemed an original.

15. This agreement shall be governed by and controlled by the laws of the State of Tennessee.

16. Any notices that are required to be given under the terms of this agreement or the bond shall be made as follows:

| | |
|---|---|
| As to the Owner Via Certified Mail Return Receipt Requested Postage Prepaid or by hand delivery to: | Jim Calloway, Mayor<br>City of Portland<br>100 South Russell Street<br>Portland, TN 37148-1208 |
| With a copy to: | David Amonette<br>554 West Main Street<br>Gallatin, TN 37066-3122 |
| As to Surety Via Certified Mail Return Receipt Requested Postage Prepaid to: | Tim Winship<br>RLI Insurance Company<br>9025 B Lindbergh Drive<br>Peoria, IL 61614-1413 |
| With copy to: | Angus Gillis, III<br>Schulman, LeRoy & Bennett, P.C.<br>P. O. Box 190676<br>Nashville, TN 37219-0676 |
| With a copy to: | Larry Wall<br>Larry Wall & Associates, LLC<br>Construction Consultants<br>Suite 202, 9 Office Park Circle<br>Birmingham, AL 35223 |

17. This agreement shall be binding upon the parties and their respective successors and assigns.

18. In the event that one or more provisions of this agreement shall be declared to be invalid, illegal or unenforceable in any respect (unless such invalidity, illegality or unenforceability shall be tantamount to a failure of a consideration), the validity, legality or enforceability of the remaining provisions contained in this agreement shall not in any way be affected or impaired thereby.

19. It is understood and agreed by the Owner and RLI that this agreement shall be construed without regard to any presumption or other rule requiring construction against the party causing this agreement to be drafted.

20. RLI will advise the City of the amount (a) it pays the Completion Contractor to complete the Original Contract, (b) all attorney fees and expenses of any nature which it incurs to complete the Original Contract, (c) the amount of any labor and material payment claims which it

pays under the terms of the payment bond. The sum of these amounts will be referred to as Contract Completion Costs. If the amount of all such payments are less than the contract balance, RLI will advise the City to remit to Advantage the difference between the contract balance and Contract Completion Costs. RLI represents and warrants that in accordance with an Indemnity Agreement executed by Advantage, it is entitled to retain the above sums from the contract balance.

21. This agreement is effective as of the ____ day of ____________, 2003.

IN WITNESS WHEREOF, the parties have executed this agreement on the date indicated above and each of the undersigned personally represent and warrant that they have the full right, power and authority to execute this agreement on behalf of the respective party.

RLI INSURANCE COMPANY

By:______________________

THE CITY OF PORTLAND

By:______________________

LTG, Drm no 0475740140 Bills

X:\Amon\RLI\City of Portland\Agreement.wpd

John Coleman Hayes

John

Pursuant to City Attorney David Amonette's letter to Advantage Construction Services, LLC, dated January 8, 2003, please notify Advantage Construction Services, LLC they are hereby instructed to vacate the City property relative to the construction of a Water Distribution Line.

David

Attach

AMONETTE AND STUBBS
ATTORNEYS AT LAW
AN ASSOCIATION OF SOLE PRACTITIONERS
554 WEST MAIN STREET
GALLATIN, TENNESSEE 37066

DAVID M. AMONETTE
WALTER H. STUBBS

GALLATIN
(615) 452-6537
TELECOPIER
(615) 452-5592

January 8, 2003

Mr. Trent B. Smith
Advantage Construction Services, LLC
101-B W. Railroad Street
Dickson, TN 37055

**CERTIFIED-RETURN RECEIPT REQUESTED and REGULAR MAIL**

RE: Advantage Construction Services, LLC
Performance and Payment Bond No. SSB-337832
Project: Water System Improvements, Contract 2 - Water Distribution Line

Dear Mr. Smith:

The status of your company's performance under the contract dated May 15, 2002 relating to the construction of a Water Distribution Line has been reviewed by City of Portland officials in consultation with Mr. John Coleman Hayes, the City Engineer. It has been determined that your company has failed to meet the requirements of this contract by having the project completed properly and within the time period required by the contract and there has been no apparent progress made in correcting the significant number of installation errors that have occurred.

Therefore, pursuant to Section 18.02 of the General Conditions of the Contract, notice is hereby given that the services of your company are terminated effective ten (10) days after the receipt by you of this letter. The City of Portland intends to take over the project and finish the work by whatever means and methods the City of Portland deems expedient. As indicated, notice of this action is being sent to you and your surety and you are respectfully asked to remove your company and subcontractors within the time required.

By taking this action, the City of Portland does not release your company or its surety for all costs and damages that the City of Portland may occur as a result of the failure of your company to perform the contract.

Should you have questions, feel free to call me.

Very truly yours,

David M. Amonette
City Attorney

DMA/jm

cc: RLI Insurance Company, Surety (sent Certified and Regular)
Mayor Jim Calloway, City of Portland
Mr. Ken Wilber, Superintendent of Public Works
City of Portland
✓Mr. John Coleman Hayes, Engineer, John Coleman Hayes, P.C.

C:\OFFICE\WPWIN\WPDOCS\MUNICIPA\COP-ADV.WPD

17.2 The OWNER shall promptly investigate the conditions, and if it is found that such conditions do so materially differ and cause an increase or decrease in the cost of, or in the time required for, performance of the WORK, an equitable adjustment shall be made and the CONTRACT DOCUMENTS shall be modified by a CHANGE ORDER. Any claim of the CONTRACTOR for adjustment hereunder shall not be allowed unless the required WRITTEN NOTICE has been given; provided that the OWNER may, if the OWNER determines the facts so justify, consider and adjust any such claims asserted before the date of final payment.

18. SUSPENSION OF WORK, TERMINATION, AND DELAY

18.1 The OWNER may suspend the WORK or any portion thereof for a period of not more than ninety days or such further time as agreed upon by the CONTRACTOR, by WRITTEN NOTICE to the CONTRACTOR and the ENGINEER which shall fix the date on which WORK shall be resumed. The CONTRACTOR will resume that WORK on the date so fixed. The CONTRACTOR will be allowed an increase in the CONTRACT PRICE or an extension of the CONTRACT TIME, or both, directly attributable to any suspension.

18.2 If the CONTRACTOR is adjudged a bankrupt or insolvent, or makes a general assignment for the benefit of its creditors, or if a trustee or receiver is appointed for the CONTRACTOR or for any of its property, or if CONTRACTOR files a petition to take advantage of any debtor's act, or to reorganize under the bankruptcy or applicable laws, or repeatedly fails to supply sufficient skilled workmen or suitable materials or equipment, or repeatedly fails to make prompt payments to SUBCONTRACTORS or for labor, materials or equipment or disregards laws, ordinances, rules, regulations or orders of any public body having jurisdiction of the WORK or disregards the authority of the ENGINEER, or otherwise violates any provision of the CONTRACT DOCUMENTS, then the OWNER may, without prejudice to any other right or remedy and after giving the CONTRACTOR and its surety a minimum of ten (10) days from delivery of a WRITTEN NOTICE, terminate the services of the CONTRACTOR and take possession of the PROJECT and of all materials, equipment, tools, construction equipment and machinery thereon owned by the CONTRACTOR, and finish the WORK by whatever method the OWNER may deem expedient. In such case the CONTRACTOR shall not be entitled to receive any further payment until the WORK is finished. If the unpaid balance of the CONTRACT PRICE exceeds the direct and indirect costs of completing the PROJECT, including compensation for additional professional services, such excess SHALL BE PAID TO THE CONTRACTOR. If such costs exceed such unpaid balance, the CONTRACTOR will pay the difference to the OWNER. Such costs incurred by the OWNER will be determined by the ENGINEER and incorporated in a CHANGE ORDER.

Bill Carpenter
377-5145



Case 3:04-cv-00555 Document 83 Filed 07/19/05 Page 30 of 50 PageID #: 663

Ja
Feb -
Mar - a
143

March 25, 2003

Advantage Construction Services

Contract amount $136,169.00
Start date: June 3, 2002 Completion date: October 31, 2002

Paid July 19, 2002 Advantage Construction $75,348.00

Amount left to pay $60,821.00

Liquidated damages 145 x $300.00 a day = $43,500.00 plus ($2937.00 cos
damage on 7/23/03) = $46,437.00 liquidated damage total
+$60,821.00 amount on contract left
$107,258.00 as of today 3/25/03

Ken's recommendation 3/24/03

16-inch $100,000 with no attachments from the insurance company leaves

Insurance company to settle any outside debts.

Ok to use JCH on the lake project.

I received a call today (3-25-03) from Walter A Woods Supply Co. The ge
name was Alvis and wanted the name of the engineer and where should he
statement for pipe that Advantage bought but has not paid for: The total in
service charges are $33,077.43. Also spoke with Pam Humphrey and she is
to:
RLI Insurance
P.O. Box 3961
Peoria, Illinois 61612
Claim# 153529

Consolidated Pipe - $766.94
Dixie Fuel $945.43

FAX 423/867-7944

SUPPLY CO., INC.

FAX 931/668-3095

SHIP/TRANSFER NUMBER
A01221

SHIP/TR/INVOICE NUMBER
2164348-01

BILL TO: ADVANTAGE CONSTRUCTION SVCS
101 B W RAIROAD
DICKSON TN 37055

SHIP TO: ADVANTAGE CONSTRUCTION SVCS
1-615-740-0937
PORTLAND TN

CUSTOMER P.O. NO.

CUSTOMER P.O. NO. PORTLAND

| SHIP/TR/INVOICE NUMBER | SLSMN. | ORDER DATE | TAKER | CUSTOMER P.O. NUMBER | SHIP DATE |
|---|---|---|---|---|---|
| 2164348-01 | 644 | 06/07/02 | 104 | PORTLAND | 06/17/02 |

INSTRUCTIONS: IRECT

FRT: P — PAGE NO. 1

| QUANTITY ORDERED | B.O./RET. | SHIPPED | DISP. | ITEM CODE AND DESCRIPTION | U/M | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|---|---|
| 5200 | | 5223.40 | F* | *UD16" CL-350 DUCTILE IRON PIPE | EA | 16.1000 | 84096.7 |

Page 3 of 3

CODE EXPLANATION
E TAX APPLICABLE
OTHER TAX APPLICABLE
E & FEDERAL TAX APPL.
ICE BACK ORDERED
C - CONSIDER COMPLETE
D - DIRECT SHIPMENT
F - FACTORY MINIMUM
R - RETURNED CYL.

*** THIS IS YOUR INVOICE ***

| FREIGHT IN | FREIGHT OUT |
|---|---|
| 0.00 | 0.00 |

NET TERMS: INV 30 DUE: 07/17/02

| | |
|---|---|
| SUB TOTAL | 84,096.7 |
| MISC. CHARGE | |
| TELE. CHARGE | |
| FREIGHT TOTAL | 0.0 |
| FED./OTHER TAX | |
| STATE TAX | 6,937.5 |
| PAYMENT REC'D | 0.0 |
| TOTAL AMT DUE | 91,034.7 |

ORIGINAL

CITY OF PORTLAND
100 South Russell Street
Portland, TN 37148
Fax: (615) 325-5345
Phone: (615) 325-6776

TO: Greg Harris
Fax# 269-6415

FROM: Darlene Baker

DATE: 3/03/03

SUBJECT: 16-inch water line (Advantage/Cyclone's fuel bill they have not paid)

Number of pages: 7

Send all Claims To:
RLI Insurance
P.O. Box 3961
Peoria, Illinois 61612
Attn: Dixie Claims Dept - Claim # 153529

MAR 0 3 2002

Cyclone Inc
ADDRESS 895 Morehead Road
Bowling Green, Ky. 42101
IN ACCOUNT WITH
Dixie Fuels & Lubricants
P.O. Box 147
Portland, Tn. 37148

| | | | | | |
|---|---|---|---|---|---|
| Balance on Account | | | | 931 | 46 |
| (Fuel delivered on | | | | | |
| Portland Job) in | | | | | |
| July | | | | | |
| | Past due | | | 931 | 46 |
| | Please remit | | fee 1.5% | 13 | 97 |
| | | | | 945 | 43 |

...resa is writing a
...ter to Mr. Patterson
the Mayor
...ached in front of file

... Coleman Hayes:
Called Greg Harris 3-3-03
...e is speaking to D. Amonette
...t this.

...his is not for the City to pay
...ue Copy to ... 3-3-03

Case 3:04-cv-00555 Document 83 Filed 07/19/05 Page 34 of 50 PageID #: 667

Cyclone LLC

ADDRESS 895 Morehead Road

Bowling Green, Ky 42101

IN ACCOUNT WITH Dixie Fuels & Lubricants

P. O. Box 147

Portland, Tn. 37148

| | | | | | |
|---|---|---|---|---|---|
| 7/02 | Diesel Fuel delivered to Portland Job. | | | | |
| | Balance on Account | | | 890 | 77 |
| | Nov Serv. Chg. | | | 13 | 36 |
| | | | | 904 | 13 |
| | This is with Dec Serv. Chg. | | | 13 | 56 |
| | Please Pay! | | | 917. | 69 |
| | Jan | | | 13 | 77 |
| | | | | 931 | 46 |

ADDRESS

895 Morehead Road
Bowling Green, Ky. 42101

IN ACCOUNT WITH

Dixie Fuels & Lubricants
P. O. Box 147
Portland, Tn. 37148

| | | | |
|---|---|---|---|
| 6/02 | Inv. # 28475 | | 35 28 |
| 7/02 | Inv. # 28778 | | 816 58 |
| | | | 851 86 |
| | | Serv. Chg | 12 78 |
| | | Amt. due | 864 64 |
| | | Sept Serv. Chg. | 12 97 |
| | | | 877 61 |
| | Please Pay | Dec. SC | 13 16 |
| | | | 890 77 |

DIXIE FUELS & LUBRICANTS
P.O. BOX 50321
NASHVILLE, TN. 37205-0321

TELEPHONE NUMBER (615)352-5210
FAX NUMBER (615)325-4357

FROM: Bill Patterson, Dixie Fuels

DATE: 10/7/02 TOTAL PAGES: ~~8~~ 4 INCLUDING COVER SHEET

TO: John Gilmore

COMPANY: Engineer for City of Portland

ADDRESS:

FAX NUMBER: 269-6415 PHONE NUMBER:

COMMENTS: Darlene with the City of Portland suggested we send copies of past due invoices to you.

Any assistance is appreciated

Thanks
Bill Patterson

193946

# STATEMENT

DATE 8/26/02

TERMS Past due

TO Cyclone LLC

ADDRESS 895 Marchant Road
Bowling Green, Ky. 42101

IN ACCOUNT WITH Dixie Fuels & Lubricants
P. O. Box 147
Portland, Tn. 37148

| | | | | | |
|---|---|---|---|---|---|
| 6/02 | Inv. # 28475 | | | 35 | 28 |
| 7/02 | Inv. # 28778 | | | 816 | 58 |
| | | | | 851 | 86 |
| | Serv. Chg. | | | 12 | 78 |
| | Amount due | | | 864 | 64 |
| | Serv. Chg. | | | 12 | 97 |
| | Please Pay | | | 877 | 61 |

adams DC5812

P.O. Box 50321
Nashville, TN. 37205-0321
615/352-5210

DIXIE
FUELS & LUBRICANTS, INC.

P.O. Box 147
Portland, TN. 37148-0147
615/325-7288
FAX: 615-325-4357

| Order Date | Order Number | Delivery Date | Terms: |
|---|---|---|---|
| 6/02 | | JUNE | JULY 10TH |

TO

CYCLONE BLASTING LLC
895 MOREHEAD RD.
BOWLING GREEN, KY. 42101

| Product | Packages | No. | Quantity | Price | Amount |
|---|---|---|---|---|---|
| X MYSTIK ATF DEXRON | 1/5 | 1 | PAIL | | 32 59 |

Received by Customer

Per ____________

Received Payment
Dixie Fuels & Lubricants, Inc.

Per ____________

| | | |
|---|---|---|
| Plus Sales Tax | Sub-Total | 32 59 |
| | 8.25% | 2 69 |
| Plus Charge on | Sub-Total | 35 28 |
| | Drums @ | |
| Less Returns on | Drums @ | |
| | Total # | 35 28 |

28475

SUBJECT TO A SERVICE CHARGE OF 1½% ON PAST DUE BALANCES

P.O. Box 50321
Nashville, TN. 37205-0321
615/352-5210

**DIXIE FUELS & LUBRICANTS, INC.**

P.O. Box 147
Portland, TN. 37148-0147
615/325-7288
FAX: 615-325-4357

| Order Date | Order Number | Delivery Date | Terms: |
|---|---|---|---|
| | | 7/9/02 | Net 30 days |

TO

CYCLONE [redacted] LLC
895 MOREHEAD ROAD
BOWLING GREEN, KY. 42101

| Product | Packages | No. | Quantity | Price | Amount | |
|---|---|---|---|---|---|---|
| DIESEL FUEL (FUEL OIL | | | 653.4 | | 770 | 36 |
| COMBUSTIBLE LIQUID NA1993) | | | | | | |
| | | | | | | |
| [illegible] | | | | | | |
| NON TAXABLE USE ONLY. | | | | | | |
| PENALTY FOR TAXABLE USE | | | | | | |
| OFF HIGHWAY/NOT LEGAL FOR MOTOR | | | | | | |
| VEHICLE USE | | | | | | |
| EMERGENCY ACCIDENTS OR SPILLS ONLY | | | | | | |
| CALL PERS 1-800-633-8253 | | | | | | |

Received by Customer

Per ____________

Received Payment
Dixie Fuels & Lubricants, Inc.

Per ____________

| | | | |
|---|---|---|---|
| | Sub-Total | 770 | 36 |
| Plus Sales Tax | 6 % | 46 | 22 |
| | Sub-Total | 816 | 58 |
| Plus Charge on | Drums @ | | |
| Less Returns on | Drums @ | | |
| | Total # | 816 | 58 |

28778

SUBJECT TO A SERVICE CHARGE OF 1½ % ON PAST DUE BALANCES

John Coleman Hayes, P. C.
Engineers, Architects & Construction Managers
Woodmont Centre
104 Woodmont Boulevard, Suite 401 • Nashville, Tennessee 37205
(615) 269-6397 FAX (615) 269-6415

# FACSIMILE COVER SHEET

**To:** Darlene
**Company:**
**Phone:**
**Fax:** 325 - 5345

**From:** Gregg Harris
**Phone:** (615) 269-6397
**Fax:** (615) 269-6415

**Date:** 24 Mar 03
**Pages including this cover page:** 2

**Comments:**
Darlene,

Here is the tree removal spec that we talked about for the city's review.

CONFIDENTIALITY NOTICE
This facsimile transmission and/or the documents accompanying same may contain confidential information belonging to the sender protected by the law. The information is intended only for the use by the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of information contained herein is strictly prohibited. If you have received this transmission in error, please immediately notify us by telephone to arrange the return or affirm the destruction of the documents.

:FAXCOVER_XX

**Tree Removal**
**Scope of Work**

Contractor is to remove all trees 6" caliper and larger as measured at a height of three (3) feet above the ground. Only remove those trees that are within the normal pool boundaries (687' elevation) of the proposed reservoir. There shall be no trees removed from any areas up gradient from the 687' elevation. No clearing or grubbing is to be done during tree removal operations so as to minimize disturbance to the soil within the reservoir area.

Contractor is to cut trees using chainsaws at a point as low as possible with stumps to be no higher than 18 inches. All stumps are to be left in place. It is the contractor's responsibility to remove all cut trees and limbs from the site using rubber-tired vehicles only. Tracked equipment is not permitted in order to minimize soil disturbance.

John Coleman Hayes, P. C.
Engineers, Architects & Construction Managers
Woodmont Centre
104 Woodmont Boulevard, Suite 401 • Nashville, Tennessee 37205
(615) 269-6397 FAX (615) 269-6415


# FACSIMILE COVER SHEET

**To:** Ken Wilber
**Company:**
**Phone:**
**Fax:** 325-5345

**From:** Gregg Harris
**Phone:** (615) 269-6397
**Fax:** (615) 269-6415

**Date:** 3-31-03
**Pages including this cover page:** 3

**Comments:**
Ken,
Please Review. I have to meet with Rural Development and get their approval.
Thanks
Gregg


CONFIDENTIALITY NOTICE

This facsimile transmission and/or the documents accompanying same may contain confidential information belonging to the sender protected by the law. The information is intended only for the use by the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of information contained herein is strictly prohibited. If you have received this transmission in error, please immediately notify us by telephone to arrange the return or affirm the destruction of the documents.


FAXCOVER...XX

## Contractor Evaluation Criteria

Contract award will be based on several factors, not just the lowest bid amount. The following factors will be evaluated with points assigned to each factor and the contractor that totals the most points will be awarded the contract. Any Contractor that fails to meet the minimum standards in a category may be disqualified.

1. Bid Amount - 40 Points

2. Company's Experience on Similar Projects – 15 Points
   The contractor shall demonstrate recent experience in construction of a minimum of two earthen dams of similar size and scope within the past 10 years for successful qualification. These projects should be listed in Attachment 1.

3. Project Manager / Superintendent Experience – 15 Points
   Describe the experience and all specialized expertise of the on-site project manager. The project manager should have, as a minimum, completed at least two other dam construction projects of similar scope and complexity. This experience can be with other companies. The project manager must have completed a TDEC approved Erosion Prevention and Sediment Control course. Resumes of key members of the company and of the project manager who would be managing this project should be included with this proposal.

4. Equipment Inventory – 10 Points
   Provide a list of equipment available to the contractor for use on this project and indicate if the equipment is owned or leased. The contractor must demonstrate access to adequate equipment to construct this project within the time frame specified.

5. Company Size – 10 Points
   The Contractor shall provide information on the number of employees and the position of each. The Contractor must demonstrate an adequate work force to complete the project within the specified time frame. Also, the contractor shall provide a list of proposed sub-contractors to be used on the project and a description of their item of work. It is the intent of this contract for the Contractor to utilize his own work force as much as possible, with the exception of specialized trades.

6. Financial – 10 Points
   The contractor shall provide information on bonding capacity, bonding company, insurance agent contact and telephone numbers. Contractor shall have sufficient bonding capacity to provide performance and payment bonds, both in the amount of 150 percent of the contract amount.

In addition to the information requested above, the following information should also be provided to assist in the evaluation process:

a. A statement that the contractor has never failed to complete a project and if this is not the case, provide an explanation of the circumstances.

b. Attachment 2, which is a list of the Contractor's work in progress.

c. Resumes of the project manager and all corporate officers.

d. A statement regarding the project manager's completion of a TDEC approved Erosion Prevention and Sediment Control course.

e. A statement that the contractor has never been disciplined by the State of Tennessee, any other state, the EPA or any municipality for storm water discharge violations during construction of any project during the last five years. If this is not the case, provide an explanation.

f. Provide a statement as to whether the Contractor has or has not been involved in litigation as a plaintiff against an Owner or Engineering Firm in the past five years. If contractor has, explain.

LAW OFFICES
SCHULMAN, LEROY & BENNETT, P.C.
SUITE 701-THE FIVE HUNDRED AND ONE UNION BUILDING
POST OFFICE BOX 190676
NASHVILLE, TENNESSEE 37219-0676
TELEPHONE (615) 244-6670
FACSIMILE (615) 254-5407

W. WAYNE LEROY
ANGUS GILLIS, III
GARY S. RUBENSTEIN
KEENE W. BARTLEY
BARBARA J. PERUTELLI
DOUGLAS E. JONES
ASHLEY N. ARNOLD

OF COUNSEL
JOHN I. HARRIS, III
BRENDA MEASELLS DOWDLE

I. R. SCHULMAN
(1908-1986)
T. T. McCARLEY
(1918-1975)
LEWIS D. PRIDE
(1933-1978)
H. MICHAEL BENNETT
(RETIRED 1998)
OF COUNSEL
SEYMOUR SAMUELS, JR.
(1912-1992)

April 7, 2003

**VIA FAX - 452-5592**
**AND U. S. MAIL**

David Amonette, Esq.
554 West Main Street
Gallatin, TN 37066-3132

Re: Portland Water Utility Job Bonded by RLI Insurance Company

Dear David:

This letter is to confirm our telephone conversation of Friday, April 4, 2003. As I stated to you in this phone conversation, RLI Insurance Company is not interested in completing the subject job. I indicated we would be willing to sit down and talk about settlement of the claim. The City of Portland retains approximately $60,000.00 to $65,000.00 in contract proceeds. You have a bid to complete the work for approximately $102,000.00 from Jones Bros. It would seem to me that the logical settlement of this case is for RLI to write a check for approximately $40,000.00 and the City can contract with whomever they wish for the completion of the job. I assume if the City is going to go forward with completion, they will get multiple bids for this project to be sure that they have the low responsive bidder. If you are interested in discussing settlement on these terms, please call me. Any such settlement would assume that RLI will be responsible for any payment claim that may be filed by the pipe supplier.

Sincerely,

Angus Gillis, III

AG:ags

cc: Mr. Tim Winship
RLI Insurance Company

16-[illegible]

**City of Portland**
**Office of the Mayor**
**100 South Russell Street**
**Portland, Tennessee 37148**
**615/325-6776**

April 21, 2003

David Amonette
554 West Main Street
Gallatin, Tennessee 37066

RE: Distribution Main - RLI Insurance | Telefacsimile and US. Mail

David,

I received your fax dated April 7, 2003, but it was my understanding when we last talked about this issue that John Coleman Hayes, as Project Engineer, would handle this, acting as the "go-between".

Your letter stated that we have a bid from Jones Brothers of $102,000.00. I know that their price has been tossed around in conversation a couple or three times, but I've not actually seen a written bid from this construction company. Does someone have their bid in hand? And yes, it would be my opinion that if we decide to get a contractor to complete this distribution main ourselves, that we'll have to re-bid the work. But again, it was my understanding that the consensus of the City Council was to put it back to RLI to complete and to allow John Coleman Hayes to negotiate this on behalf of the City.

As far as I'm concerned, this should've already been taken care of and installed. Please call if there have been new developments.

Thanks,

Jim Calloway

Jim Calloway
Mayor

JC:tk

c: Kenneth Wilber
Ronnie Meadows, Public Works Committee Chairman

I N T E R

O F F I C E

# MEMO

**To:** Mayor Calloway and Members of the Portland City Council
**From:** DAVID M. AMONETTE
**Subject:** Portland 16" water pipe extension
**Date:** May 5, 2003

Mayor Calloway has indicated that he believes the Council needs to be involved in the decision to determine the course of action by the City to bring the referenced subject to a conclusion. Initially it was thought that RLI Insurance company would take over and complete the project as the issuer of the performance bond. Attached is a copy of the letter from their attorney declining this option.

The original contract price was $136,169.00 of which $75,348.00 has been drawn. This leaves $60,821.00 left to be applied to the new construction. As indicated in the letter RLI has stated its willingness to be responsible for payment claims by suppliers and to pay the City approximately $40,000.00.

Projected completion costs range from $102,000.00 to $94,000.00 but the final cost would have to be determined by new bids with the pipes on site being refitted and utilized in the new construction. I need direction from you as to where we go from this point.

given to Mayor
and Council after
Monday night
meeting - file

Believe consensus
is to take deal
Ken to talk w/ JCH

May 15, 2003

To: Gregg Harris

From: Kenneth Wilber (City of Portland)

Ref: 16" Water Line

I talked to the sales rep. from U S Pipe and he said the pipe was still in warranty and if there are any problems with the pipe they would take care of them. Here is his name and phone number, and he said that he would help anyway he could or answer anyone's questions.

U. S. Pipe and Foundry Company
Michael Steagald
Phone (615) 883-2747
Fax (615) 883-6251
E Mail msteagald@uspipe.com

The following is the items on site.

140'-16" DI pipe w/gaskets
2-16" couplings w/mega lug
3- 16" caps w/mega lug
1-221/2 fitting w/mega lug
1-111/4 fitting w/mega lug
All fittings needs gaskets

**Post-it® Fax Note** 7671

| | |
|---|---|
| Date 5/15 | # of pages ▶ 1 |
| To Bu7cH | From |
| Co./Dept. | Co. |
| Phone # | Phone # |
| Fax # | Fax # |

Resolution

# City of Portland, Tennessee

No. 4750

**A RESOLUTION AUTHORIZING THE ACCEPTANCE OF THE BEST BID FOR NEW CONSTRUCTION FOR A WATER LINE FROM THE NEW WATER PLANT TO THE CITY OF PORTLAND.**

**WHEREAS**, the reconstruction of the 16-inch water line which the City has taken over from Advantage Construction on January 20, 2003, due to failure to complete construction; and

**WHEREAS**, the following bids have been properly solicited and received for a water line from the new water plant to the City of Portland which is included in the new water treatment plant and lake project; and

| BIDDING CONTRACTOR | BID AMOUNT |
|---|---|
| Jenkins Construction | $109,050.00 |
| 101 Construction Company | $164,430.00 |
| Norris Construction | $107,037.50 |

**WHEREAS**, this project has been properly re-bid due to Advantage Construction failure to complete the project; and

**WHEREAS**, the funding will be from the remainder of this project which leaves $60, 821.00 and funding from Advantage's insurance company; and

**WHEREAS,** the City of Portland Public Works Inspector will be doing inspections on the project; and

**NOW, THEREFORE BE IT RESOLVED** by the Mayor and Board of Aldermen of the City of Portland accept the best bid from Norris Construction for the reconstruction of the 16-inch line water line; and

**BE IT FURTHER RESOLVED** that this Resolution shall become effective upon its passage, the public welfare requiring it.