## 19. PAYMENT TO CONTRACTOR

19.1 At least ten (10) days before each progress payment falls due (but not more often than once a month), the CONTRACTOR will submit to the ENGINEER a partial payment estimate filled out and signed by the CONTRACTOR covering the WORK performed during the period covered by the partial payment estimate and supported by such data as the ENGINEER may reasonably require. If payment is requested on the basis of materials and equipment not incorporated in the WORK but delivered and suitably stored at or near the site, the partial payment estimate shall also be accompanied by such supporting data, satisfactory to the OWNER, as will establish the OWNER'S title to the material and equipment and protect the OWNER'S interest therein, including applicable insurance. The ENGINEER will, within ten (10) days after receipt of each partial payment estimate, either indicate in writing approval of payment, and present the partial payment estimate to the OWNER, or return the partial payment estimate to the CONTRACTOR indicating in writing the reasons for refusing to approve payment. In the latter case, the CONTRACTOR may make the necessary corrections and resubmit the partial payment estimate. The OWNER will, within ten (10) days of presentation of an approved partial payment estimate, pay the CONTRACTOR a progress payment on the basis of the approved partial payment estimate less the retainage. The retainage shall be an amount equal to 5% of said estimate. If at any time thereafter when the progress of the WORK is not satisfactory, additional amounts may be retained. Upon substantial completion of the work, any amount retained may be paid to the CONTRACTOR. When the WORK has been substantially completed except for WORK which cannot be completed because of weather conditions, lack of materials or other reasons which in the judgment of the OWNER are valid reasons for noncompletion, the OWNER may make additional payments, retaining at all times an amount sufficient to cover the estimated cost of the WORK still to be completed.

19.2 The request for payment may also include an allowance for the cost of such major materials and equipment which are suitably stored either at or near the site.

19.3 Prior to SUBSTANTIAL COMPLETION, the OWNER, with the approval of the ENGINEER and with the concurrence of the CONTRACTOR, may use any completed or substantially completed portions of the WORK. Such use shall not constitute an acceptance of such portions of the WORK.

19.4 The OWNER shall have the right to enter the premises for the purpose of doing work not covered by the CONTRACT DOCUMENTS. This provision shall not be construed as relieving the CONTRACTOR of the sole responsibility for the care and protection of the WORK, or the restoration of any damaged WORK except such as may be caused by agents or employees of the OWNER.

17.2 The OWNER shall promptly investigate the conditions, and if it is found that such conditions do so materially differ and cause an increase or decrease in the cost of, or in the time required for, performance of the WORK, an equitable adjustment shall be made and the CONTRACT DOCUMENTS shall be modified by a CHANGE ORDER. Any claim of the CONTRACTOR for adjustment hereunder shall not be allowed unless the required WRITTEN NOTICE has been given; provided that the OWNER may, if the OWNER determines the facts so justify, consider and adjust any such claims asserted before the date of final payment.

18. SUSPENSION OF WORK, TERMINATION, AND DELAY

18.1 The OWNER may suspend the WORK or any portion thereof for a period of not more than ninety days or such further time as agreed upon by the CONTRACTOR, by WRITTEN NOTICE to the CONTRACTOR and the ENGINEER which shall fix the date on which WORK shall be resumed. The CONTRACTOR will resume that WORK on the date so fixed. The CONTRACTOR will be allowed an increase in the CONTRACT PRICE or an extension of the CONTRACT TIME, or both, directly attributable to any suspension.

18.2 If the CONTRACTOR is adjudged a bankrupt or insolvent, or makes a general assignment for the benefit of its creditors, or if a trustee or receiver is appointed for the CONTRACTOR or for any of its property, or if CONTRACTOR files a petition to take advantage of any debtor's act, or to reorganize under the bankruptcy or applicable laws, or repeatedly fails to supply sufficient skilled workmen or suitable materials or equipment, or repeatedly fails to make prompt payments to SUBCONTRACTORS or for labor, materials or equipment or disregards laws, ordinances, rules, regulations or orders of any public body having jurisdiction of the WORK or disregards the authority of the ENGINEER, or otherwise violates any provision of the CONTRACT DOCUMENTS, then the OWNER may, without prejudice to any other right or remedy and after giving the CONTRACTOR and its surety a minimum of ten (10) days from delivery of a WRITTEN NOTICE, terminate the services of the CONTRACTOR and take possession of the PROJECT and of all materials, equipment, tools, construction equipment and machinery thereon owned by the CONTRACTOR, and finish the WORK by whatever method the OWNER may deem expedient. In such case the CONTRACTOR shall not be entitled to receive any further payment until the WORK is finished. If the unpaid balance of the CONTRACT PRICE exceeds the direct and indirect costs of completing the PROJECT, including compensation for additional professional services, such excess SHALL BE PAID TO THE CONTRACTOR. If such costs exceed such unpaid balance, the CONTRACTOR will pay the difference to the OWNER. Such costs incurred by the OWNER will be determined by the ENGINEER and incorporated in a CHANGE ORDER.

13.2 The ENGINEER, also, may at any time, by issuing a FIELD ORDER, make changes in the details of the WORK. The CONTRACTOR shall proceed with the performance of any changes in the WORK so ordered by the ENGINEER unless the CONTRACTOR believes that such FIELD ORDER entitles the CONTRACTOR to a change in CONTRACT PRICE or TIME, or both, in which event the CONTRACTOR shall give the ENGINEER WRITTEN NOTICE thereof within seven (7) days after the receipt of the ordered change. Thereafter the CONTRACTOR shall document the basis for the change in CONTRACT PRICE or TIME within thirty (30) days. The CONTRACTOR shall not execute such changes pending the receipt of an executed CHANGE ORDER or further instruction from the OWNER.

14. CHANGES IN CONTRACT PRICE

14.1 The CONTRACT PRICE may be changed only by a CHANGE ORDER. The value of any WORK covered by a CHANGE ORDER or of any claim for increase or decrease in the CONTRACT PRICE shall be determined by one or more of the following methods in the order of precedence listed below:

a. Unit prices previously approved.

b. An agreed lump sum.

15. TIME FOR COMPLETION AND LIQUIDATED DAMAGES

15.1 The date of beginning and the time for completion of the WORK are essential conditions of the CONTRACT DOCUMENTS and the WORK embraced shall be commenced on a date specified in the NOTICE TO PROCEED.

15.2 The CONTRACTOR will proceed with the WORK at such rate of progress to insure full completion within the CONTRACT TIME. It is expressly understood and agreed, by and between the CONTRACTOR and the OWNER, that the CONTRACT TIME for the completion of the WORK described herein is a reasonable time, taking into consideration the average climatic and economic conditions and other factors prevailing in the locality of the WORK.

15.3 If the CONTRACTOR shall fail to complete the WORK within the CONTRACT TIME, or extension of time granted by the OWNER, then the CONTRACTOR will pay to the OWNER the amount for liquidated damages as specified in the BID for each calendar day that the CONTRACTOR shall be in default after the time stipulated in the CONTRACT DOCUMENTS.

15.4 The CONTRACTOR shall not be charged with liquidated damages or any excess cost when the delay in completion of the WORK is due to the following and the CONTRACTOR has promptly given WRITTEN NOTICE of such delay to the OWNER or ENGINEER.

10. SURVEYS, PERMITS, REGULATIONS

10.1 The OWNER shall furnish all boundary surveys and establish all base lines for locating the principal component parts of the WORK together with a suitable number of bench marks adjacent to the WORK as shown in the CONTRACT DOCUMENTS. From the information provided by the OWNER, unless otherwise specified in the CONTRACT DOCUMENTS, the CONTRACTOR shall develop and make all detail surveys needed for construction such as slope stakes, batter boards, stakes for pipe locations and other working points, lines, elevations and cut sheets.

10.2 The CONTRACTOR shall carefully preserve bench marks, reference points and stakes and, in case of willful or careless destruction, shall be charged with the resulting expense and shall be responsible for any mistake that may be caused by their unnecessary loss or disturbance.

10.3 Permits and licenses of a temporary nature necessary for the prosecution of the WORK shall be secured and paid for by the CONTRACTOR unless otherwise stated in the SUPPLEMENTAL GENERAL CONDITIONS. Permits, licenses and easements for permanent structures or permanent changes in existing facilities shall be secured and paid for by the OWNER, unless otherwise specified. The CONTRACTOR shall give all notices and comply with all laws, ordinances, rules and regulations bearing on the conduct of the WORK as drawn and specified. If the CONTRACTOR observes that the CONTRACT DOCUMENTS are at variance therewith, the CONTRACTOR shall promptly notify the ENGINEER in writing, and any necessary changes shall be adjusted as provided in Section 13, CHANGES IN THE WORK.

11. PROTECTION OF WORK, PROPERTY, AND PERSONS

11.1 The CONTRACTOR will be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the WORK. The CONTRACTOR will take all necessary precautions for the safety of, will provide the necessary precautions for the safety of, and will provide the necessary protection to prevent damage, injury or loss to all employees on the WORK and other persons who may be affected thereby, all the WORK and all materials or equipment to be incorporated therein, whether in storage on or off the site, and other property at the site or adjacent thereto, including trees, shrubs, lawns, walks, pavements, roadways, structures and utilities not designated for removal, relocation or replacement in the course of construction.

## 7. INSPECTION AND TESTING

7.1 All materials and equipment used in the construction of the PROJECT shall be subject to adequate inspection and testing in accordance with generally accepted standards, as required and defined in the CONTRACT DOCUMENTS.

7.2 The OWNER shall provide all inspection and testing services not required by the CONTRACT DOCUMENTS.

7.3 The CONTRACTOR shall provide at the CONTRACTOR'S expense the testing and inspection services required by the CONTRACT DOCUMENTS.

7.4 If the CONTRACT DOCUMENTS, laws, ordinances, rules, regulations or orders of any public authority having jurisdiction require any WORK to specifically be inspected, tested, or approved by someone other than the CONTRACTOR, the CONTRACTOR will give the ENGINEER timely notice of readiness. The CONTRACTOR will then furnish the ENGINEER the required certificates of inspection, testing or approval.

7.5 Inspections, tests, or approvals by the engineer or others shall not relieve the CONTRACTOR from the obligations to perform the WORK in accordance with the requirements of the CONTRACT DOCUMENTS.

7.6 The ENGINEER and the ENGINEER'S representatives will at all times have access to the WORK. In addition, authorized representatives and agents of any participating Federal or State agency shall be permitted to inspect all work, materials, payrolls, records or personnel, invoices of materials, and other relevant data and records. The CONTRACTOR will provide proper facilities for such access and observation of the WORK and also for any inspection or testing thereof.

7.7 If any WORK is covered contrary to the written instructions of the ENGINEER it must, if requested by the ENGINEER, be uncovered for the ENGINEER'S observation and replaced at the CONTRACTOR'S expense.

3. SCHEDULES, REPORTS AND RECORDS

3.1 The CONTRACTOR shall submit to the OWNER such schedule of quantities and costs, progress schedules, payrolls, reports, estimates, records and other data where applicable as are required by the CONTRACT DOCUMENTS for the WORK to be performed.

3.2 Prior to the first partial payment estimate the CONTRACTOR shall submit construction progress schedules showing the order in which the CONTRACTOR proposes to carry on the WORK, including dates at which the various parts of the WORK will be started, estimated date of completion of each part and, as applicable:

3.2.1 The dates at which special detail drawings will be required; and

3.2.2 Respective dates for submission of SHOP DRAWINGS, the beginning of manufacture, the testing and the installation of materials, supplies and equipment.

3.3 The CONTRACTOR shall also submit a schedule of payments that the CONTRACTOR anticipates will be earned during the course of the WORK.

4. DRAWINGS AND SPECIFICATIONS

4.1 The intent of the DRAWINGS and SPECIFICATIONS is that the CONTRACTOR shall furnish all labor, materials, tools, equipment, and transportation necessary for the proper execution of the WORK in accordance with the CONTRACT DOCUMENTS and all incidental work necessary to complete the PROJECT in an acceptable manner, ready for use, occupancy or operation by the OWNER.

4.2 In case of conflict between the DRAWINGS and SPECIFICATIONS, the SPECIFICATIONS shall govern. Figure dimensions on DRAWINGS shall govern over general DRAWINGS.

4.3 Any discrepancies found between the DRAWINGS and SPECIFICATIONS and site conditions or any inconsistencies or ambiguities in the DRAWINGS or SPECIFICATIONS shall be immediately reported to the ENGINEER, in writing, who shall promptly correct such inconsistencies or ambiguities in writing. WORK done by the CONTRACTOR after discovery of such discrepancies, inconsistencies or ambiguities shall be done at the CONTRACTOR'S risk.

5. SHOP DRAWINGS

1.6 CHANGE ORDER - A written order to the CONTRACTOR authorizing an addition, deletion, or revision in the WORK within the general scope of the CONTRACT DOCUMENTS, or authorizing an adjustment in the CONTRACT PRICE or CONTRACT TIME.

1.7 CONTRACT DOCUMENTS - The contract, including Advertisement For BIDS, Information For BIDDERS, BID, BID BOND, Agreement, Payment BOND, Performance BOND, NOTICE OF AWARD, NOTICE TO PROCEED, CHANGE ORDER, DRAWINGS, SPECIFICATIONS, and ADDENDA.

1.8 CONTRACT PRICE - The total monies payable to the CONTRACTOR under the terms and conditions of the CONTRACT DOCUMENTS.

1.9 CONTRACT TIME - The number of calendar days stated in the CONTRACT DOCUMENTS for the completion of the WORK.

1.10 CONTRACTOR - The person, firm, or corporation with whom the OWNER has executed the Agreement.

1.11 DRAWINGS - The parts of the CONTRACT DOCUMENTS which show the characteristics and scope of the WORK to be performed and which have been prepared or approved by the ENGINEER.

1.12 ENGINEER - The person, firm, or corporation named as such in the CONTRACT DOCUMENTS.

1.13 FIELD ORDER - A written order effecting a change in the WORK not involving an adjustment in the CONTRACT PRICE or an extension of the CONTRACT TIME, issued by the ENGINEER to the CONTRACTOR during construction.

1.14 NOTICE OF AWARD - The written notice of the acceptance of the BID from the OWNER to the successful BIDDER.

1.15 NOTICE TO PROCEED - Written communication issued by the OWNER to the CONTRACTOR authorizing him/her to proceed with the WORK and establishing the date for commencement of the WORK.

1.16 OWNER - A public or quasi-public body or authority, corporation, association, partnership, or an individual for whom the WORK is to be performed.

1.17 PROJECT - The undertaking to be performed as provided in the CONTRACT DOCUMENTS.

1.18 RESIDENT PROJECT REPRESENTATIVE - The authorized representative of the OWNER who is assigned to the PROJECT site or any part thereof.

# TABLE OF CONTENTS

## CONTRACT DOCUMENTS

### CONTRACT 2 - WATER DISTRIBUTION LINE - RE-BID


| SUBJECT | PAGES |
|---|---|
| Certificate of Owners Attorney | 1 |
| RUS Concurrence | 1 |
| Recommended Construction Sign | 1 |
| Certification Regarding Debarment, Suspension, Ineligibility and Voluntary Exclusion – Lower Tier Covered Transactions | 1 - 2 |
| Certification for Contracts, Grants & Loans | 1 - 2 |
| Compliance Statement | 1 - 3 |
| Contract Change Order | 1 |
| Partial Payment Estimate | 1 - 2 |
| Bid Bond | 1 - 2 |
| Bid Form | 1 - 3 |
| Bid Schedule | 1 |
| Agreement | 1 - 4 |
| Performance Bond | 1 - 3 |
| Payment Bond | 1 - 3 |
| Notice of Award | 1 |
| Notice to Proceed | 1 |

14. Certificate of Owner's Attorney.

I, the undersigned, David M. Amonette, the duly authorized and acting legal representative of the City of Portland Portland, Tennessee, do hereby certify as follows

I have examined the attached contract(s) and performance and payment bond(s) and the manner of execution thereof, and I am of the opinion that each of the aforesaid agreements are adequate and have has been duly executed by the proper parties thereto acting through their duly authorized representatives; that said representatives have full power and authority to execute said agreements on behalf of the respective parties named thereon; and that the foregoing agreements constitute valid and legally binding obligations upon the parties executing the same in accordance with terms, conditions, and provisions thereof.

Date: 9/26/2003

NOTE: Delete phrase "performance and payment bonds" when not applicable.

15. RUS Concurrence.

As lender or insurer of funds to defray the costs of this contract, and without liability for any payments thereunder, the Rural Utilities Service (RUS) hereby concurs in the award of this CONTRACT to

Norris Excavating

U.S. Department of Agriculture
Rural Utilities Service

By [signature] Title RD Specialist

Date 9/30/03

This CONTRACT shall not be effective unless and until concurred in by the State Program Official of the Rural Utilities Service, U.S. Department of Agriculture or a delegated representative.

# temporary construction sign for RURAL DEVELOPMENT projects




SIGN DIMENSIONS: 1200mm x 2400mm x 19mm (approx 4' x 8' x 3/4")
PLYWOOD PANEL (APA RATED A-B GRADE - EXTERIOR)

5/14/01

**"ONE (1) PROJECT SIGN REQUIRED"**

U.S. DEPARTMENT OF AGRICULTURE

## Certification Regarding Debarment, Suspension, Ineligibility and Voluntary Exclusion - Lower Tier Covered Transactions

This certification is required by the regulations implementing Executive Order 12549, Debarment and Suspension, 7 CFR Part 3017, Section 3017.510, Participants' responsibilities. The regulations were published as Part IV of the January 30, 1989, Federal Register (pages 4722-4733). Copies of the regulations may be obtained by contacting the Department of Agriculture agency with which this transaction originated.

**(BEFORE COMPLETING CERTIFICATION, READ INSTRUCTIONS ON REVERSE)**

(1) The prospective lower tier participant certifies, by submission of this proposal, that neither it nor its principals is presently debarred, suspended, proposed for debarment, declared ineligible, or voluntarily excluded from participation in this transaction by any Federal department or agency.

(2) Where the prospective lower tier participant is unable to certify to any of the statements in this certification, such prospective participant shall attach an explanation to this proposal.

Norris Excavating — Contract 2: Water System Improvements Water Distribution Line-REBID

Organization Name — PR/Award Number or Project Name

Chris Norris, Owner

Name(s) and Title(s) of Authorized Representative(s)

Chris Norris

Signature(s)

7-29-03

Date

Form AD-1048 (1/92)

U.S. DEPARTMENT OF AGRICULTURE

# Certification Regarding Debarment, Suspension, Ineligibility and Voluntary Exclusion - Lower Tier Covered Transactions

This certification is required by the regulations implementing Executive Order 12549, Debarment and Suspension, 7 CFR Part 3017, Section 3017.510, Participants' responsibilities. The regulations were published as Part IV of the January 30, 1989, Federal Register (pages 4722-4733). Copies of the regulations may be obtained by contacting the Department of Agriculture agency with which this transaction originated.

**(BEFORE COMPLETING CERTIFICATION, READ INSTRUCTIONS ON REVERSE)**

(1) The prospective lower tier participant certifies, by submission of this proposal, that neither it nor its principals is presently debarred, suspended, proposed for debarment, declared ineligible, or voluntarily excluded from participation in this transaction by any Federal department or agency.

(2) Where the prospective lower tier participant is unable to certify to any of the statements in this certification, such prospective participant shall attach an explanation to this proposal.

Norris Excavating — Contract 2: Water System Improvements Water Distribution Line-REBID

Organization Name — PR/Award Number or Project Name

Chris Norris, Owner [signature]

Name(s) and Title(s) of Authorized Representative(s)

Signature(s) — Date

Form AD-1048 (1/92)

# CONTRACTOR AND SUBCONTRACTOR

# CERTIFICATION ON LOBBYING*

The undersigned certifies, to the best of his or her knowledge and belief, that:

1. No Federal appropriated funds have been paid or will be paid, by or on behalf of the undersigned, to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress in connection with awarding of any Federal contract, the making of any Federal grant or Federal loan, and the extension, continuation, renewal, amendment, or modification of any Federal contract, grant or loan.

2. If any funds other than Federal appropriated funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, or an employee of a Member of Congress in connection with this Federal contract, grant or loan, the undersigned shall complete and submit Standard Form - LLL, "Disclosure of Lobbying Activities," in accordance with its instructions.**

3. The undersigned shall require that the language of this certification be included in the award documents for all subawards at all tiers (including contracts, subcontractors, and subgrants under grants and loans) and that all subrecipients shall certify and disclose accordingly.

This certification is a material representation of fact upon which reliance was placed when this transaction was made or entered into. Submission of this certification is a prerequisite for making or entering into this transaction imposed by section 1352, title 31, U.S. Code. Any person who fails to file the required certification shall be subject to a civil penalty of not less than $10,000 and not more than $100,000 for each such failure.

Chris Norris - Norris Excavating 7-29-03

*me) (date)*

USDA-RUS

Form RUS 400-6

(Rev. 1/7/98)) **COMPLIANCE STATEMENT**

This statement relates to a proposed contract with ______ the City of Portland ______

______________________________________________________________,

(Name of borrower or grantee)

who expects to finance-the contract with assistance from Rural Utility Service, United States Department of Agriculture (whether by a loan, grant, loan insurance, guarantee, or other form of financial assistance). I am the undersigned bidder or prospective contractor. I represent that - - - - -

1. I have __ have not X participated in a previous contract or subcontract subject to executive order 11246 (regarding equal employment opportunity) or a preceding similar Executive order.

NA 2. If I have participated in such a contract or subcontract, I have __ have not __ filed all compliance reports that I have been required to file in connection with the contract or subcontract.

If the proposed contract is for $50,000 or more and I have 50 or more employees, I also

represent that ----

NA 3. I have __ have not __ previously had contracts subject to the written affirmative action program requirements of the Secretary of Labor.

NA 4. If I have participated in such a contract or subcontract, I have __ have not __ developed and placed on file at each establishment affirmative action programs as required by the rules and regulations of the Secretary of Labor.

I understand that if I have failed to file any compliance reports that have been required of me, I am not eligible and will not be eligible to have my bid considered or to enter into the proposed contract unless and until I make an arrangement regarding such reports that is satisfactory to the Rural Utility Service or to the

NOTE: the penalty for making false statements in offers is prescribed in 18 U.S.C. 1001.

Date ______________ [signature] ______________

*Signature of Bidder or Prospective Contractor or Subcontractor*

Norris Excavating
559 North Leath Road
Portland, TN 37148

*Address (including Zip Code)*

**<u>NOTE TO CONTRACTORS:</u> A COMPLIANCE STATEMENT (RUS 400-6) MUST ALSO BE COMPLETED BY EACH SUBCONTRACTOR PRIOR TO YOUR AWARD TO THEM OF A SUBCONTRACT EXCEEDING $10,000. THE COMPLIANCE STATEMENT MUST BE REVIEWED AND CONCURRED IN BY RURAL DEVELOPMENT PRIOR TO THE SUBCONTRACTED WORK BEING ELIGIBLE FOR PAYMENT USING RURAL DEVELOPMENT FUNDS.**

FORM APPROVED
OMB NO. 0575-0042

Form RD 1924-7
(Rev. 2-97)

UNITED STATES DEPARTMENT OF AGRICULTURE
RURAL DEVELOPMENT AND
FARM SERVICE AGENCY

# CONTRACT CHANGE ORDER

ORDER NO.

DATE

STATE

CONTRACT FOR

COUNTY

OWNER

To ______________________________
(Contractor)

You are hereby requested to comply with the following changes from the contract plans and specifications:

| Description of Changes (Supplemental Plans and Specifications Attached) | DECREASE in Contract Price | INCREASE in Contract Price |
|---|---|---|
| | $ | $ |
| TOTALS | $ | |
| NET CHANGE IN CONTRACT PRICE | $ | |

JUSTIFICATION:

The amount of the Contract will be (Decreased) (Increased) By The Sum Of: ______________________________

______________________________ Dollars ($ ____________ ).

The Contract Total Including this and previous Change Orders Will Be: ______________________________

______________________________ Dollars ($ ____________ ).

The Contract Period Provided for Completion Will Be (Increased) (Decreased) (Unchanged): ____________ Days.

This document will become a supplement to the contract and all provisions will apply hereto.

Requested ______________________________ (Owner) ______________ (Date)

Recommended ______________________________ (Owner's Architect/Engineer) ______________ (Date)

Accepted ______________________________ (Contractor) ______________ (Date)

Approved by Agency ______________________________ (Name and Title) ______________ (Date)

*Public reporting burden for this collection of information is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to U.S. Department of Agriculture, Clearance Officer, STOP 7602, 1400 Independence Avenue, S.W., Washington, D.C. 20250-7602. Please DO NOT RETURN this form to this address. Forward to the local USDA office only. You are not required to respond to this collection of information unless it displays a currently valid OMB control number.*

Case 3:04-cv-00535 Document 92 Filed 07/19/05 Page 17 of 50 PageID #: 940

FORM APPROVED
OMB NO. 0575-0042

Form RD 1924-18
(Rev. 6-97)

UNITED STATES DEPARTMENT OF AGRICULTURE
RURAL DEVELOPMENT
FARM SERVICE AGENCY

# PARTIAL PAYMENT ESTIMATE

CONTRACT NO.

PARTIAL PAYMENT ESTIMATE NO.

PAGE ______

OWNER: ______

CONTRACTOR: ______

PERIOD OF ESTIMATE

FROM ______ TO ______

## CONTRACT CHANGE ORDER SUMMARY

| No. | Agency Approval Date | Amount | |
|---|---|---|---|
| | | Additions | Deductions |
| | | | |
| TOTALS | | | |
| NET CHANGE | | | |

## ESTIMATE

1. Original Contract . . . . . . . . . . . . . . . . . . ______
2. Change Orders . . . . . . . . . . . . . . . . . . ______
3. Revised Contract (1 + 2) . . . . . . . . . . . . ______
4. Work Completed* . . . . . . . . . . . . . . . . . ______
5. Stored Materials* . . . . . . . . . . . . . . . . ______
6. Subtotal (4 + 5) . . . . . . . . . . . . . . . . . ______
7. Retainage* . . . . . . . . . . . . . . . . . . . . . . ______
8. Previous Payments . . . . . . . . . . . . . . . . ______
9. Amount Due (6-7-8) . . . . . . . . . . . . . . . ______

* *Detailed breakdown attached*

## CONTRACT TIME

Original (days) ______

Revised ______

Remaining ______

On Schedule ☐ Yes ☐ No

Starting Date ______

Projected Completion ______

CONTRACTOR'S CERTIFICATION:

The undersigned Contractor certifies that to the best of their knowledge, information and belief the work covered by this payment estimate has been completed in accordance with the contract documents, that all amounts have been paid by the contractor for work for which previous payment estimates was issued and payments received from the owner, and that current payment shown herein is now due.

Contractor ______

By ______

Date ______

APPROVED BY OWNER:

Owner ______

By ______

Date ______

ARCHITECT OR ENGINEER'S CERTIFICATION:

The undersigned certifies that the work has been carefully inspected and to the best of their knowledge and belief, the quantities shown in this estimate are correct and the work has been performed in accordance with the contract documents.

Architect or Engineer ______

By ______

Date ______

ACCEPTED BY AGENCY:

The review and acceptance of this estimate does not attest to the correctness of the quantities shown or that the work has been performed in accordance with the contract documents.

By ______

Title ______

Date ______

*ccording to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control umber for this information collection is 0575-0042. The time required to complete this information collection is estimated to average 30 minutes per response, including the time for reviewing structions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.*

**Volunteer State Bank**
Portland, TN 37148

229495

REMITTER Norris Excavating

DATE July 30, 2003

87-899/641 01

PAY TO THE ORDER OF City of Portland

$ 5,351.88

PAY EXACTLY 5,351.88 CTS

DOLLARS

FOR: Bid Bond Deposit

# CASHIER'S CHECK

⑈229495⑈ ⑆064102999⑆ 001 312 9⑈

*************************
* City of Portland *
*************************

Receipt Number: 05-00507887

Cashier: BETTY Session: BR31
Date: 07/30/2003 Time: 14:58:12

Miscellaneous Receipt
Name: NORRIS EXCAVATING
Code: 063 DUE TO OTHERS SPECIAL PROJECT
Ref: BID BOND 5,351.88
Note: BID BOND

Total: 5,351.88

CHECK 229495 5,351.88
Paid By: NORRIS EXCAVATING

Tendered: 5,351.88
Change:

# BID

Proposal of Norris Excavating (hereinafter called "BIDDER"), organized and existing under the laws of the State of Tennessee doing business as a Partnership.

To the City of Portland, Tennessee hereinafter called "OWNER").

In compliance with your Advertisement for Bids, BIDDER hereby proposes to perform all work for the construction of WATER SYSTEM IMPROVEMENTS, CONTRACT 2, WATER DISTRIBUTION LINE in strict accordance with the Contract Documents, within the time set forth therein, and at the prices stated below.

By submission of this BID, each BIDDER certifies, and in the case of a joint BID each party thereto certifies as to its own organization, that this BID has been arrived at independently, without consultation, communication, or agreement as to any matter relating to this BID with any other BIDDER or with any competitor.

BIDDER hereby agrees to commence work this contract on or before a date to be specified in the Notice to Proceed and to fully complete the project within 150 consecutive calendar days thereafter. BIDDER further agrees to pay as liquidated damages, the sum of $300.00 for each consecutive calendar day thereafter as provided in Section 1 of the General Conditions.

The undersigned BIDDER has carefully examined the site of the work described therein; has become familiar with local conditions and the character and extent of the work;

In compliance with your Advertisement for Bids, the undersigned hereby proposes to furnish the materials and perform the work for completion of all items listed below in strict accordance with the Advertisement for Bids, Information for Bidders, Plans, General and Special Conditions, Technical Specifications, and all other Contract documents for the consideration of the prices quoted in the following items, and agrees, upon receipt of written notice of the acceptance of this Proposal within sixty (60) days after the date of the opening of the Proposals, that it will execute a Contract in accordance with the Proposal as accepted, and give the required Contract and Payment Bond with good and sufficient surety and sureties, within ten (10) days after receipt of notice of formal Award of Contract and presentation of the prescribed forms.

CONTRACT 2: WATER SYSTEM IMPROVEMENTS – WATER DISTRIBUTION LINE

The CONTRACTOR shall fill in a price, in both numbers and words, for each item on this Proposal form. Failure to fill in any portions will be considered sufficient grounds for declaring the BID irregular.

BIDDER hereby agrees to furnish all materials, equipment, services, and labor required for the construction of the CONTRACT 2: WATER SYSTEM IMPROVEMENTS – WATER DISTRIBUTION LINE, including all appurtenances and incidentals as shown on the Plans as specified herein.

# BID SCHEDULE

WATER SYSTEM IMPROVEMENTS
CONTRACT 2 - WATER DISTRIBUTION LINE - RE-BID

Bidder acknowledges receipt of the following Addendum(s): Addendum 1 to Contract 2 (4 pages)

Bidder agrees to perform all improvements described in the specifications and as shown on the plans for the following unit prices:

| ITEM NO. | DESCRIPTION & UNIT PRICE IN WORDS | ESTIMATED QUANTITY | UNIT | UNIT PRICE | EXTENDED AMOUNT |
|---|---|---|---|---|---|
| 1. | Removal & Reinstallation of 16" Piping for Entire Project 140 L.F. of Existing / Unused On-Site Stored 16-Inch D.I. Pipeing & Appurtenances are Included for Use in the Reinstallation.<br>For ______<br>Dollars ______<br>Cents, per Linear Foot | 5,000 | L.F. | $ 17.20 | $ 86,000.00 |
| 2. | 16" Class 50, Ductile Iron Pipe. (Installation of this Piping is Included in Item 1.)<br>For ______<br>Dollars ______<br>Cents, per Linear Foot | 300 | L.F. | $ 37.50 | $ 11,250.00 |
| 3. | 6-Inch Muller Fire Hydrant Assembly with One (1) 4½-Inch Pumper Connection & Two (2) 2½-Inch Nozzle Connections.<br>For ______<br>Dollars ______<br>Cents, per Each | 1 | EA | $ 1750.00 | $ 1750.00 |
| 4. | A Layer of Crushed Stone Bedding at Rock Bottoms.<br>For ______<br>Dollars ______<br>Cents, per Ton | 75 | TONS | $ 12.50 | $ 937.50 |

[illegible]

| | | | | | |
|---|---|---|---|---|---|
| 5. | Concrete Required at Thrust Blockings at Existing / New Bends.<br>For ____<br>Dollars ____<br>Cents, per Cubic Yard | 40 | C.Y. | $ 65.00 | $ 2600.00 |
| 6. | 16-Inch D.I. Fittings.<br>For ____<br>Dollars ____<br>Cents, per Pound | 3000 | LBS | $ 1.50 | $ 4500.00 |

**TOTAL BID:** $ 107,037.50

One Hundred and Seven Thousand and Thirty Seven Dollars & 50 cents
(Total Amount in Words)

Respectfully submitted:

By Chris Norris
(Signature)

Norris Excavating - 559 N. Leath R Portland Tn. 3714
(Business Name, Address & Zip Code)

Owner
(Title)

Tn. License No. 47291

Exp. 7-31-03

(License Numbe

C:\ALCWIT\ADDENDUM BKSHEET

has carefully examined the Plans, the Technical Specifications, the General and Special Conditions, Information for Bidders, the form of Contract, and the form of Contract Bond, and thoroughly understands their stipulations, requirements and provisions.

The undersigned BIDDER has determined the quality and quantity of materials required; has investigated the location and determined the sources of supply of materials required; has investigated labor conditions; has arranged for the continuous prosecution of the work herein described.

The undersigned BIDDER hereby agrees to be bound by the award of the Contract; and, if awarded the Contract on this proposal, to execute within ten (10) days after Notice of Award the required Contract and the required Contract Bonds, of which Contract this Proposal, the Plans for the work, the Technical Specifications, General and Special Conditions and information for Bidders shall be a part.

The undersigned BIDDER further agrees to provide all necessary equipment, tools, incidentals, and other means of construction to do all work and to furnish all the materials of the specified requirements which are necessary to complete the work in accordance with the Proposal, the Plans, and the Technical Specifications, and agrees to accept therefore, as payment in full, the unit prices for the various items described in the Plans and Technical Specifications as set forth in the Proposal to do all "Extra Work" which may be required in connection with the construction and completion of the Work as required.

The undersigned BIDDER declares that this Proposal is made without connection with any other person or persons making Proposals for the same work, and is in all respects fair and without collusion or fraud.

TYPICAL UNIT PRICE BREAKDOWN *

| ITEM | DESCRIPTION | CONTRACT *(revised)* | | | THIS PERIOD | | TOTAL TO DATE | | % COMPLETE |
|---|---|---|---|---|---|---|---|---|---|
| | | QUANTITY | UNIT PRICE | AMOUNT | QUANTITY | AMOUNT | QUANTITY | AMOUNT | |
| | | | $ | $ | | $ | | $ | |
| | TOTALS | | | | | | | | |

TYPICAL LUMP SUM PRICE BREAKDOWN *

| ITEM | DESCRIPTION | SCHEDULED VALUE | WORK COMPLETED | | % COMPLETE |
|---|---|---|---|---|---|
| | | | THIS PERIOD | TO DATE | |
| | | $ | $ | $ | |
| | TOTALS | | | | |

TYPICAL STORED MATERIALS AND RETAINAGE BREAKDOWN *

| MATERIALS STORED AT END OF THIS PAYMENT PERIOD | | | |
|---|---|---|---|
| DESCRIPTION | QUANTITY | UNIT VALUE | AMOUNT |
| | | $ | $ |

| RETAINAGE | | | |
|---|---|---|---|
| | THIS ESTIMATE | PERCENT | RETAINED |
| WORK COMPLETED: | $ | % | $ |
| STORED MATERIALS: | | | |
| OTHER *(explain)* | | | |
| TOTAL | | | |

* As a minimum, detailed breakdowns should contain this information.

RD 1924-18
REVERSE

office where the reports are required to be filed.

I also certify that I do not maintain or provide for my employees any segregated facilities at any of my establishments, and that I do not permit my employees to perform their services at any location, under my control, where segregated facilities are maintained. I certify further that I will not maintain or provide for my employees any segregated facilities at any of my establishments, and that I will not permit my employees to perform their services at any location, under my control, where segregated facilities are maintained. I agree that a breach of this certification is a violation of the Equal Opportunity clause in my contract. As used in this certification, the term "segregated facilities" means any waiting rooms, work areas, rest rooms and wash room, restaurants and other eating areas, time clocks, locker rooms and other storage or dressing areas, parking lots, drinking fountains, recreation or entertainment areas, transportation, and housing facilities provided for employees which are segregated by explicit directive or are in fact segregated on the basis of race, creed, color, or national origin, because of habit, local custom, or otherwise. I further agree that (except where I have obtained identical certifications for proposed subcontractors for specific time periods) I will obtain identical certifications from proposed subcontractors prior to the award of subcontracts exceeding $10,000 which are not exempt from the provisions of the Equal Opportunity clause; that I will retain such certifications in my files; and that I will forward the following notice to such proposed subcontractors (except where the proposed subcontractors have submitted identical certifications for specific time periods): (See Reverse).

Position 6

RUS 400-6 (Rev. 1/7/98)

NOTICE TO PROSPECTIVE SUBCONTRACTORS OF REQUIREMENTS FOR

CERTIFICATION ON NON-SEGREGATED FACILITIES

A certification of Nonsegregated Facilities, as required by the May 9, 1967, order (32F.R. 7439, May 19, 1967) on Elimination of Segregated Facilities, by the Secretary of Labor, must be submitted prior to the award of a subcontract exceeding $10,000 which is not exempt from the provisions of the Equal Opportunity clause. The certification may be submitted either for each subcontract or for all subcontracts during a period (i.e., quarterly, semiannually, or annually).

Case 3:04-cv-00555 Document 92 Filed 07/19/05 Page 30 of 50 PageID #: 953

by: [signature]

Owner

*(title)*

*THE ABOVE CERTIFICATION MUST BE COMPLETED AND SUBMITTED BY BIDDER WITH BID PROPOSAL. AFTER A CONTRACT IS AWARDED, PRIME CONTRACTORS SHALL OBTAIN THIS SAME CERTIFICATION FROM SUBCONTRACTORS PRIOR TO ENTERING INTO SUBCONTRACT AND FURNISH OWNER AND RURAL DEVELOPMENT WITH A COPY OF SAME. RURAL DEVELOPMENT MUST REVIEW AND CONCUR IN THIS FORM FROM SUBCONTRACTOR(S) BEFORE THE SUBCONTRACTED WORK CAN BE PAID FOR USING RURAL DEVELOPMENT FUNDS.

**IF CONTRACTOR OR SUBCONTRACTOR IS REQUIRED TO COMPLETE STANDARD FORM - LLL - DISCLOSURE OF LOBBYING ACTIVITIES, THE OWNER SHOULD BE CONTACTED FOR ASSISTANCE IN OBTAINING THIS FORM. AWARD OF CONTRACT OR CONCURRENCE IN SUBCONTRACT BY OWNER IS CONTINGENT ON REVIEW OF INFORMATION IN THIS FORM.

## Instructions for Certification

1. By signing and submitting this form, the prospective lower tier participant is providing the certification set out on the reverse side in accordance with these instructions.

2. The certification in this clause is a material representation of fact upon which reliance was placed when this transaction was entered into. If it is later determined that the prospective lower tier participant knowingly rendered an erroneous certification, in addition to other remedies available to the Federal Government, the department or agency with which this transaction originated may pursue available remedies, including suspension and/or debarment.

3. The prospective lower tier participant shall provide immediate written notice to the person to which this proposal is submitted if at any time the prospective lower tier participant learns that its certification was erroneous when submitted or has become erroneous by reason of changed circumstances.

4. The terms "covered transaction," "debarred," "suspended," "ineligible," "lower tier covered transaction," "participant," "person," "primary covered transaction," "principal," "proposal," and "voluntarily excluded," as used in this clause, have the meanings set out in the Definitions and Coverage sections of rules implementing Executive Order 12549. You may contact the person to which this proposal is submitted for assistance in obtaining a copy of those regulations.

5. The prospective lower tier participant agrees by submitting this form that, should the proposed covered transaction be entered into, it shall not knowingly enter into any lower tier covered transaction with a person who is debarred, suspended, declared ineligible, or voluntarily excluded from participation in this covered transaction, unless authorized by the department or agency with which this transaction originated.

6. The prospective lower tier participant further agrees by submitting this form that it will include this clause titled "Certification Regarding Debarment, Suspension, Ineligibility and Voluntary Exclusion - Lower Tier Covered Transactions," without modification, in all lower tier covered transactions and in all solicitations for lower tier covered transactions.

7. A participant in a covered transaction may rely upon a certification of a prospective participant in a lower tier covered transaction that it is not debarred, suspended, ineligible, or voluntarily excluded from the covered transaction, unless it knows that the certification is erroneous. A participant may decide the method and frequency by which it determines the eligibility of its principals. Each participant may, but is not required to, check the Nonprocurement List.

8. Nothing contained in the foregoing shall be construed to require establishment of a system of records in order to render in good faith the certification required by this clause. The knowledge and information of a participant is not required to exceed that which is normally possessed by a prudent person in the ordinary course of business dealings.

9. Except for transactions authorized under paragraph 5 of these instructions, if a participant in a covered transaction knowingly enters into a lower tier covered transaction with a person who is suspended, debarred, ineligible, or voluntarily excluded from participation in this transaction, in addition to other remedies available to the Federal Government, the department or agency with which this transaction originated may pursue available remedies, including suspension and/or debarment.

Form AD-1048 (1/92)

AGREEMENT

THIS AGREEMENT, made this 15th day of Sept 2003, by and between the City of Portland, TN , hereinafter called "OWNER" (name of Owner), XXXXXXXXXXXXXXXX and Norris Excavating doing business as XXXXXXXXXXXXXXXX XXX (a partnership,) XXXXXXXXXXXXXXXXXXXX hereinafter called "CONTRACTOR". WITNESSETH: That for and in consideration of the payments and agreements herein after mentioned:

1. The CONTRACTOR will commence and complete the construction of Water System Improvements, Contract 2 - Water Distribution Line

2. The CONTRACTOR will furnish all of the materials, supplies, tools, equipment, labor, and other services necessary for the construction and completion of the PROJECT described herein.

3. The CONTRACTOR will commence the work required by the CONTRACT DOCUMENTS within 10 calendar days after the date of the NOTICE TO PROCEED and will complete the same within 150 calendar days unless the period for completion is extended otherwise by the CONTRACT DOCUMENTS.

4. The CONTRACTOR agrees to perform all of the WORK described in the CONTRACT DOCUMENTS and comply with the terms therein for the sum of $ 107,037.50 or as shown in the BID schedule.

5. The term "CONTRACT DOCUMENTS" MEANS and includes the following:

6. The OWNER will pay to the CONTRACTOR in the manner and at such times as set forth in the General Conditions such amounts as required by the CONTRACT DOCUMENTS.

7. This Agreement shall be binding upon all parties hereto and their respective heirs, executors, administrators, successors, and assigns.

IN WITNESS WHEREOF, the parties hereto have executed or caused to be executed by their duly authorized official, this Agreement in ( Five (5) ) copies each of which shall be deemed an original on
(Number of Copies)
the date first above written.

OWNER:

City of Portland

BY Jim Calloway

Name Jim Calloway
(Please Type)

Title Mayor
(SEAL)

ATTEST: Patricia Keen

Name Patricia Keen
(Please Type)

Title Acting Recorder

**ACORD**™ **CERTIFICATE OF LIABILITY INSURANCE**

DATE (MM/DD/YY): DEC 31 02

PRODUCER
ZANDER INSURANCE GROUP, INC.
212 OCEOLA AVENUE
P O BOX 50559
NASHVILLE TN 37205
PHONE: 615-356-1700

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.

INSURED
NORRIS EXCAVATING
559 NORTH LEATH ROAD
PORTLAND TN 37148

| INSURERS AFFORDING COVERAGE | NAIC # |
|---|---|
| INSURER A: ST PAUL | |
| INSURER B: | |
| INSURER C: | |
| INSURER D: | |
| INSURER E: | |

**COVERAGES**

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED, NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. AGGREGATE LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EXPIRATION DATE (MM/DD/YY) | LIMITS | |
|---|---|---|---|---|---|---|
| | GENERAL LIABILITY<br>COMMERCIAL GENERAL LIABILITY<br>CLAIMS MADE / OCCUR<br>GEN'L AGGREGATE LIMIT APPLIES PER: POLICY / PROJECT / LOC | | | | EACH OCCURRENCE | $ |
| | | | | | DAMAGE TO RENTED PREMISES (Ea occurence) | $ |
| | | | | | MED. EXP (Any One Person) | $ |
| | | | | | PERSONAL & ADV INJURY | $ |
| | | | | | GENERAL AGGREGATE | $ |
| | | | | | PRODUCTS-COMP/OP AGG. | $ |
| | AUTOMOBILE LIABILITY<br>ANY AUTO<br>ALL OWNED AUTOS<br>SCHEDULED AUTOS<br>HIRED AUTOS<br>NON-OWNED AUTOS | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | | | | | BODILY INJURY (Per person) | $ |
| | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | PROPERTY DAMAGE | $ |
| | GARAGE LIABILITY<br>ANY AUTO | | | | AUTO ONLY - EA ACCIDENT | $ |
| | | | | | OTHER THAN AUTO ONLY: EA ACC | $ |
| | | | | | AGG | $ |
| | EXCESS / UMBERELLA LIABILITY<br>OCCUR / CLAIMS MADE<br>DEDUCTIBLE<br>RETENTION $ | | | | EACH OCCURRENCE | $ |
| | | | | | AGGREGATE | $ |
| | | | | | | $ |
| | | | | | | $ |
| | | | | | | $ |
| A | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY<br>ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MAMBER EXCLUDED?<br>If yes, describe under SPECIAL PROVISIONS below | 821X411302 | JAN 1 03 | JAN 1 04 | WC STATUTORY LIMITS / OTHER | |
| | | | | | E.L. EACH ACCIDENT | $ 1,000,0 |
| | | | | | E.L. DISEASE-EA EMPLOYEE | $ 1,000,0 |
| | | | | | E.L. DISEASE-POLICY LIMIT | $ 1,000,0 |
| | OTHER: | | | | | |

DESCRIPTION OF OPERATIONS/LOCATION/VEHICLES/EXCLUSIONS ADDED ENDORSEMENT/ SPECIAL PROVISIONS
OPERATIONS OF THE INSURED.

CERTIFICATE HOLDER | ADDITIONAL INSURED; INSURER LETTER: ___

GENERAL PURPOSES ONLY

Attention: MRS. IMOGENE NORRIS

CANCELLATION

SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING COMPANY WILL ENDEAVOR TO MAIL 10 DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT FAILURE TO DO SO SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE INSURER, IT,'S AGENTS OR REPRESENTATIVES.

AUTHORIZED REPRESENTATIVE

Michael A. Weinberger

# ACORD™ CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YY) 07/09/2003

PRODUCER
Carl R. Wells & Assoc, Inc.
1938 South Water Street
Box 357
Gallatin, TN 37066-0357

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.

INSURERS AFFORDING COVERAGE

INSURED
NORRIS EXCAVATING
559 N. LEATH ROAD
PORTLAND, TN 37148

INSURER A: ZURICH GROUP
INSURER B:
INSURER C:
INSURER D:
INSURER E:

## COVERAGES

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. AGGREGATE LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EXPIRATION DATE (MM/DD/YY) | LIMITS | |
|---|---|---|---|---|---|---|
| A | GENERAL LIABILITY<br>[X] COMMERCIAL GENERAL LIABILITY<br>[X] CLAIMS MADE [X] OCCUR<br>GEN'L AGGREGATE LIMIT APPLIES PER: [ ] POLICY [ ] PROJECT [ ] LOC | SCP 31657514 | 06/26/2003 | 06/26/2004 | EACH OCCURRENCE | $ 1,000,000 |
| | | | | | FIRE DAMAGE (Any one fire) | $ |
| | | | | | MED EXP (Any one person) | $ |
| | | | | | PERSONAL & ADV INJURY | $ 500,00 |
| | | | | | GENERAL AGGREGATE | $ 1,000,00 |
| | | | | | PRODUCTS - COMP/OP AGG | $ 1,000,00 |
| A | AUTOMOBILE LIABILITY<br>[X] ANY AUTO<br>[ ] ALL OWNED AUTOS<br>[ ] SCHEDULED AUTOS<br>[ ] HIRED AUTOS<br>[ ] NON-OWNED AUTOS | SCP 31657514 | 06/26/2003 | 06/26/2004 | COMBINED SINGLE LIMIT (Ea accident) | $ 500,0( |
| | | | | | BODILY INJURY (Per person) | $ |
| | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | GARAGE LIABILITY<br>[ ] ANY AUTO | | | | AUTO ONLY - EA ACCIDENT | $ |
| | | | | | OTHER THAN AUTO ONLY: EA ACC | $ |
| | | | | | AGG | $ |
| A | EXCESS LIABILITY<br>[X] OCCUR [ ] CLAIMS MADE<br>[X] DEDUCTIBLE<br>RETENTION $ 500 | SCP 31657514 | 06/26/2003 | 06/26/2004 | EACH OCCURRENCE | $ 4,000,0( |
| | | | | | AGGREGATE | $ |
| | | | | | | $ |
| | | | | | | $ |
| | | | | | | $ |
| | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY | | | | WC STATU-TORY LIMITS / OTH-ER | |
| | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | E.L. DISEASE - POLICY LIMIT | $ |
| | OTHER | | | | | |

DESCRIPTION OF OPERATIONS/LOCATIONS/VEHICLES/EXCLUSIONS ADDED BY ENDORSEMENT/SPECIAL PROVISIONS

CERTIFICATE HOLDER [X] ADDITIONAL INSURED; INSURER LETTER: ____

CANCELLATION

SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIR DATE THEREOF, THE ISSUING INSURER WILL ENDEAVOR TO MAIL 30 DAYS WR NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT FAILURE TO DO SO IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE INSURER, ITS AGEN REPRESENTATIVES.

AUTHORIZED REPRESENTATIVE



© ACORD CORPORATION

# PERFORMANCE BOND

KNOW ALL PERSONS BY THESE PRESENTS: that

Norris Excavating
(Name of Contractor)

559 North Leath Road, Portland, TN 37148
(Address of Contractor)

a Partnership, hereinafter called Principal, and
(~~Corporation~~ Partnership ~~or Individual~~)

(Name of Surety)

(Address of Surety)

hereinafter called Surety, are held and firmly bound unto

City of Portland, TN
(Name of Owner)

100 South Russell Street, Portland, TN 37148
(Address of Owner)

hereinafter called OWNER in the total aggregate penal sum of One Hundred Seven Thousand, Thirty-Seven Dollars & Fifty Cents Dollars ($ 107,037.50)

in lawful money of the United States, for the payment of which sum well and truly to be made, we bind ourselves, our heirs, executors, administrators, successors, and assigns, jointly and severally, firmly by these presents.

THE CONDITION OF THIS OBLIGATION is such that whereas, the Principal entered into a certain contract with the OWNER, dated the 15th day of Sept 2003, a copy of which is hereto attached and made a part hereof for the construction of:

Water System Improvements, Contract 2 - Water Distribution Line

NOW, THEREFORE, if the Principal shall well, truly and faithfully perform its duties, all the undertakings, covenants, terms, conditions, and agreements of said contract during the original term thereof, and any extensions thereof which may be granted by the OWNER with or without notice to the SURETY and during the one year guaranty period and if the PRINCIPAL shall satisfy all claims and demands incurred under such contract, and shall fully indemnify and save harmless the OWNER from all costs and damages which it may suffer by reason of failure to do so, and shall reimburse and repay the OWNER all outlay and expense which the OWNER may incur in making good any default, then this obligation shall be void, otherwise to remain in full force and effect.

PROVIDED, FURTHER, that the said SURETY, for value received hereby stipulates and agrees that no change, extension of time, alteration or addition to the terms of the contract or to WORK to be performed thereunder or the SPECIFICATIONS accompanying same shall in any way affect its obligation on this BOND, and it does hereby waive notice of any such change, extension of time, alteration or addition to the terms of the contract or to the WORK or to the SPECIFICATIONS.

PROVIDED, FURTHER, that it is expressly agreed that the BOND shall be deemed amended automatically and immediately, without formal and separate amendments hereto, upon amendment to the Contract, so as to bind the PRINCIPAL and the SURETY to the full and faithful performance of the CONTRACT as so amended. The term "Amendment", wherever used in this BOND, and whether referring to this BOND, the Contract or the Loan Documents shall include any alteration, addition, extension, or modification of any character whatsoever.

PROVIDED, FURTHER, that no final settlement between the OWNER and the PRINCIPAL shall abridge the right of the other beneficiary hereunder, whose claim may be unsatisfied. The OWNER is the only beneficiaries hereunder.

Western Surety Company

## PERFORMANCE BOND

Bond Number: 69565316

KNOW ALL PERSONS BY THESE PRESENTS, That we Norris Excavating of 559 N. Leath Rd., Portland, TN 37148, hereinafter referred to as the Principal, and Western Surety Company, as Surety, are held and firmly bound unto City of Portland of 100 S. Russell St., Portland, TN 37148, hereinafter referred to as the Obligee, in the sum of One Hundred Seven Thousand Thirty-Eight and 00/100 Dollars ($ 107,038.00 ), for the payment of which we bind ourselves, our legal representatives, successors and assigns, jointly and severally, firmly by these presents.

WHEREAS, Principal has entered into a contract with Obligee, dated the ______ day of ______, ______, for Contract 2-Water distribution Line-Re-bid. Portland Blvd. to Portland City Lake, Portland, TN. Reinstallation of 16" Water Distribution Lines.

NOW, THEREFORE, if the Principal shall faithfully perform such contract or shall indemnify and save harmless the Obligee from all cost and damage by reason of Principal's failure so to do, then this obligation shall be null and void; otherwise it shall remain in full force and effect.

ANY PROCEEDING, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located and shall be instituted within two years after Contractor Default or within two years after the Contractor ceased working or within two years after the Surety refuses or fails to perform its obligations under this Bond, whichever occurs first. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

NO RIGHT OF ACTION shall accrue on this Bond to or for the use of any person or corporation other than the Obligee named herein or the heirs, executors, administrators or successors of the Obligee.

SIGNED, SEALED AND DATED this 12th day of August, 2003.

Norris Excavating
(Principal)

By Chris Norris (Seal)
Imogene Norris PARTNER

Western Surety Company
(Surety)

By M. Bent M. Bent, Ass't Sec. (Seal)
Attorney-in-Fact

G-105578-C

Case 3:04-cv-00555 Document 92 Filed 07/19/05 Page 39 of 50 PageID #: 962

# Western Surety Company

## GENERAL PURPOSE RIDER

TO BE ATTACHED TO and form part of Bond Number 69565316 issued by the Western Surety Company, as Surety, on behalf of Norris Excavating of 559 N. Leath, Portland, TN 37148, hereinafter referred to as the Principal, and in favor of City of Portland of 100 S. Russell St., Portland, TN 37148, hereinafter referred to as the Obligee, in the sum of One Hundred Seven Thousand Thirty-Eight and 00/100 Dollars ($ $107,038.00 ), effective the 15th day of September, 2003.

NOW, THEREFORE, it is agreed that the effective date has been changed to read: September 12, 2003

IT IS FURTHER AGREED that all other terms and conditions of this bond shall remain unchanged.

THIS RIDER IS TO BE EFFECTIVE the 15th day of September, 2003.

SIGNED, SEALED AND DATED this 15th day of September, 2003.

Accepted By:

By Imogene Norris
Partner

Norris Excavating
(Principal)

By Chris Norris (Seal)

Western Surety Company
(Surety)

By M. Bent M. Bent, Ass't. Sec. (Seal)
Attorney-in-Fact



G-23174-D

# Western Surety Company

## POWER OF ATTORNEY

**KNOW ALL MEN BY THESE PRESENTS:**

That WESTERN SURETY COMPANY, a corporation organized and existing under the laws of the State of South Dakota, and authorized and licensed to do business in the States of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, Wyoming, and the United States of America, does hereby make, constitute and appoint

M. Bent of Sioux Falls, State of South Dakota, its regularly elected Assistant Secretary, as Attorney-in-Fact, with full power and authority hereby conferred upon him to sign, execute, acknowledge and deliver for and on its behalf as Surety and as its act and deed, all of the following classes of documents to-wit:

Indemnity, Surety and Undertakings that may be desired by contract, or may be given in any action or proceeding in any court of law or equity, policies indemnifying employers against loss or damage caused by the misconduct of their employees; official, bail, and surety and fidelity bonds. Indemnity in all cases where indemnity may be lawfully given; and with full power and authority to execute consents and waivers to modify or change or extend any bond or document executed for this Company, and to compromise and settle any and all claims or demands made or existing against said Company.

Western Surety Company further certifies that the following is a true and exact copy of Section 7 of the by-laws of Western Surety Company duly adopted and now in force, to-wit:

Section 7. All bonds, policies, undertakings, Powers of Attorney, or other obligations of the corporation shall be executed in the corporate name of the Company by the President, Secretary, any Assistant Secretary, Treasurer, or any Vice President, or by such other officers as the Board of Directors may authorize. The President, any Vice President, Secretary, any Assistant Secretary, or the Treasurer may appoint Attorneys-in-Fact or agents who shall have authority to issue bonds, policies, or undertakings in the name of the Company. The corporate seal is not necessary for the validity of any bonds, policies, undertakings, Powers of Attorney or other obligations of the corporation. The signature of any such officer and the corporate seal may be printed by facsimile.

WESTERN SURETY COMPANY CORPORATE SEAL SOUTH DAKOTA

In Witness Whereof, the said WESTERN SURETY COMPANY has caused these presents to be executed by its Senior Vice President with the corporate seal affixed this 15th day of September, 2003.

ATTEST

A. Vietor

Assistant Secretary

WESTERN SURETY COMPANY

By Paul T. Bruflat

Paul T. Bruflat, Senior Vice President

STATE OF SOUTH DAKOTA }
COUNTY OF MINNEHAHA } ss

On this 15th day of September, 2003, before me, a Notary Public, personally appeared Paul T. Bruflat and A. Vietor who, being by me duly sworn, acknowledged that they signed the above Power of Attorney as Senior Vice President and Assistant Secretary, respectively, of the said WESTERN SURETY COMPANY, and acknowledged said instrument to be the voluntary act and deed of said Corporation.

D. KRELL
SEAL NOTARY PUBLIC SOUTH DAKOTA SEAL

D. Krell

Notary Public

My Commission Expires November 30, 2006

Form 672-4-2002

IN WITNESS WHEREOF, this instrument is executed in 5 (Number) counterparts, each one of which shall be deemed an original, this the 19th day of September, 2003.

ATTEST:

Imogene Norris
(Principal) Secretary

(SEAL)

Norris Excavating
(Principal)

By [signature] (s)

559 North Leath Road
(Address)
Portland, TN 37148

Kathy R. Dixon
Witness as to Principle
Exp. 6-5-05
(Address)
County: Sumner State: TN

ATTEST:

WESTERN SURETY COMPANY
(Surety)

By G. Van Veldhuizen
G. Van Veldhuizen, Attorney-in-Fact
G. Van Veldhuizen, Ass't Sec.

101 S. Phillips Avenue
(Address)
Sioux Falls, SD 57104-6703

L Johnson
Witness as to Surety
101 S. Phillips Avenue
(Address)
Sioux Falls, SD 57104-6703

NOTE: Date of BOND must not be prior to date of Contract.

If CONTRACTOR is partnership, all partners should execute BOND.

IMPORTANT: Surety companies executing BONDS must appear on the Treasury Department's most current list (Circular 570 as amended) and be authorized to transact business in the state where the Project is located.

oOo

IN WITNESS WHEREOF, this instrument is executed in 5 (Number) counterparts, each one of which shall be deemed an original, this the ______ day of ______.

ATTEST: Freida Jones, Notary
Freida Jones Exp 6-5-07

Norris Excavating
Principle

______
(Principal) Secretary

By ______ (s)

(SEAL)

FREIDA JONES NOTARY PUBLIC AT LARGE SUMNER COUNTY TENNESSEE

559 North Leath Road
(Address)

Portland, TN 37148

______
Witness as to Principle

______
(Address)

______

ATTEST:

______
Surety

By ______
Attorney-in-Fact

______
Witness as to Surety

______
(Address)

______
(Address)

______

______

NOTE: Date of BOND must not be prior to date of Contract.

If CONTRACTOR is partnership, all partners should execute BOND.
IMPORTANT: Surety companies executing BONDS must appear on the Treasury Department's most current list (Circular 570 as amended) and be authorized to transact business in the State where the Project is located.

# PAYMENT BOND

KNOW ALL PERSONS BY THESE PRESENTS: that

Norris Excavating
(Name of Contractor)

559 North Leath Road, Portland, TN 37148
(Address of Contractor)

a Partnership hereinafter called PRINCIPAL and
(~~Corporation~~ Partnership ~~or Individual~~)

(Name of Surety)

hereinafter called SURETY, are held and firmly bound unto City of Portland, TN
(Name of Owner)

100 South Russell Street, Portland, TN 37148
(Address of Owner)

hereinafter called OWNER and unto all persons, firms, and corporations who or which may furnish labor, or who furnish materials to perform as described under the contract and to their successors and assigns in the total aggregate penal sum of One Hundred Seven Thousand, Thirty-Seven Dollars & Fifty Cents ($ 107,037.50) in lawful money of the United States, for the payment of which sum well and truly to be made, we bind ourselves, our heirs, executors, administrators, successors, and assigns, jointly and severally, firmly by these presents.

THE CONDITION OF THIS OBLIGATION is such that whereas, the PRINCIPAL entered into a certain contract with the OWNER, dated the Sept 15 day of 2003, a copy of which is hereto attached and made a part hereof for the construction of:

Water System Improvements, Contract 2 - Water Distribution Line

NOW, THEREFORE, if the PRINCIPAL shall promptly make payment to all persons, firms, and corporations furnishing materials for or performing labor in the prosecution of the WORK provided for in such contract, and any authorized extensions or modification thereof, including all amounts due for materials, lubricants, oil, gasoline, coal and coke, repairs on machinery, equipment and tools, consumed or used in connection with the construction of such WORK, and for all labor cost incurred in such WORK including that by a SUBCONTRACTOR, and to any mechanic or materialman lienholder whether it acquires its lien by operation of State or Federal law; then this obligation shall be void, otherwise to remain in full force and effect.

PROVIDED, that beneficiaries or claimants hereunder shall be limited to the SUBCONTRACTORS, and persons, firms, and corporations having a direct contract with the PRINCIPAL or its SUBCONTRACTORS.

PROVIDED, FURTHER, that the said SURETY for value received hereby stipulates and agrees that no change, extension of time, alteration or addition to the terms of the contract or to the WORK to be performed thereunder or the SPECIFICATIONS accompanying the same shall in any way affect its obligation on this BOND, and it does hereby waive notice of any such change, extension of time, alteration or addition to the terms of this contract or to the WORK or to the SPECIFICATIONS.

PROVIDE, FURTHER, that no suit or action shall be commenced hereunder by any claimant: (a) Unless claimant, other than one having a direct contract with the PRINCIPAL shall have given written notice to any two of the following: The PRINCIPAL, the OWNER, or the SURETY above named within ninety (90) days after such claimant did or performed the last of the work or labor, or furnished the last of the materials for which said claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the materials were furnished, or for whom the work or labor was done or performed. Such notice shall be served by mailing the same by registered mail or certified mail, postage prepaid, in an envelope addressed to the PRINCIPAL, OWNER, or SURETY, at any place where an office is regularly maintained for the transaction of business, or served ~~in~~ any manner in which legal process may be served in the state in which the aforesaid project is located, save that such service need not be made by a public officer. (b) After the expiration of one (1) year following the date of which PRINCIPAL ceased work on said CONTRACT, is being understood, however, that if any limitation embodied in the BOND is prohibited by any law controlling the construction hereof, such limitation shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

PROVIDED, FURTHER, that it is expressly agreed that this BOND shall be deemed amended automatically and immediately, without formal and separate amendments hereto, upon amendment to the Contract, so as to bind the PRINCIPAL and the SURETY to the full and faithful performance of the Contract as so amended. The term "Amendment", wherever used in this BOND and whether referring to this BOND, the contract or the loan Documents shall include any alteration, addition, extension or modification of any character whatsoever.

PROVIDED, FURTHER, that no final settlement between the OWNER and the CONTRACTOR shall abridge the right of any beneficiary hereunder, whose claim may be unsatisfied.

# Western Surety Company

## PAYMENT BOND

Bond Number: 69565316

KNOW ALL PERSONS BY THESE PRESENTS, That we Norris Excavating of 559 N. Leath Rd., Portland, TN 37148, hereinafter referred to as the Principal, and Western Surety Company, as Surety, are held and firmly bound unto City of Portland of 100 S. Russell St., Portland, TN 37148, hereinafter referred to as the Obligee, in the sum of One Hundred Seven Thousand Thirty-Eight and 00/100 Dollars ($107,038.00), for the payment of which we bind ourselves, our legal representatives, successors and assigns, jointly and severally, firmly by these presents.

WHEREAS, Principal has entered into a contract with Obligee, dated ________ day of ________, ________, for Contract 2-Water Distribution Line-Re-Bid. Portland Blvd. to Portland City Lake, Portland, TN. Reinstallation of 16" Water Distribution Lines. copy of which contract is by reference made a part hereof.

NOW, THEREFORE, if Principal shall, in accordance with applicable Statutes, promptly make payment to all persons supplying labor and material in the prosecution of the work provided for in said contract, and any and all duly authorized modifications of said contract that may hereafter be made, notice of which modifications to Surety being waived, then this obligation to be void; otherwise to remain in full force and effect.

No suit or action shall be commenced hereunder

(a) After the expiration of one (1) year following the date on which Principal ceased work on said contract it being understood, however, that if any limitation embodied in this bond is prohibited by any law controlling the construction hereof such limitation shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

(b) Other than in a state court of competent jurisdiction in and for the county or other political subdivision of the state in which the project, or any part thereof, is situated, or in the United States District Court for the district in which the project, or any part thereof, is situated, and not elsewhere.

The amount of this bond shall be reduced by and to the extent of any payment or payments made in good faith hereunder.

SIGNED, SEALED AND DATED this 12th day of August, 2003.

Norris Excavating
(Principal)

By Chris Norris / Imogene Norris PARTNER (Seal)

Western Surety Company
(Surety)

By [signature], Asst. Sec. (Seal)
Attorney-in-Fact

Case 3:04-cv-00555 Document 92 Filed 07/19/05 Page 46 of 58 PageID #: 969

STATE OF SOUTH DAKOTA }
County of Minnehaha } ss

**ACKNOWLEDGMENT OF SURETY**
(Corporate Officer)

On this 12th day of August, 2003, before me, a Notary Public in and for said County, personally appeared **M. Bent, Ass't. Sec.** personally known to me, who being by me duly sworn, did say that he is the aforesaid officer of WESTERN SURETY COMPANY, a corporation duly organized and existing under the laws of the State of South Dakota, that the seal affixed to the foregoing instrument is the corporate seal of said corporation, that the said instrument was signed, sealed and executed on behalf of said corporation by authority of its Board of Directors, and further acknowledge that the said instrument and the execution thereof to be the voluntary act and deed of said corporation.

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed my official seal the day and year last above written.

My commission expires

S. EICH
My Commission Expires 2-12-2009

S. Eich
Notary Public

Form 103-12-98

Western Surety Company

## GENERAL PURPOSE RIDER

TO BE ATTACHED TO and form part of Bond Number 69565316 issued by the Western Surety Company, as Surety, on behalf of Norris Excavating of 559 N. Leath, Portland, TN 37148, hereinafter referred to as the Principal, and in favor of City of Portland of 100 S. Russell St., Portland, TN 37148, hereinafter referred to as the Obligee, in the sum of One Hundred Seven Thousand Thirty-Eight and 00/100 Dollars ($ $107,038.00 ), effective the 15th day of September, 2003.

NOW, THEREFORE, it is agreed that the effective date has been changed to read: September 12, 2003

IT IS FURTHER AGREED that all other terms and conditions of this bond shall remain unchanged.

THIS RIDER IS TO BE EFFECTIVE the 15th day of September, 2003.

SIGNED, SEALED AND DATED this 15th day of September, 2003.

Accepted By:

By Imogene Norris

Norris Excavating
(Principal)

By Chris Norris (Seal)

Western Surety Company
(Surety)

By M. Bent M. Bent, Ass't. Sec. (Seal)
Attorney-in-Fact



G-23174-D

# Western Surety Company

## POWER OF ATTORNEY

**KNOW ALL MEN BY THESE PRESENTS:**

That WESTERN SURETY COMPANY, a corporation organized and existing under the laws of the State of South Dakota, and authorized and licensed to do business in the States of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, Wyoming, and the United States of America, does hereby make, constitute and appoint

M. Bent of Sioux Falls, State of South Dakota, its regularly elected Assistant Secretary, as Attorney-in-Fact, with full power and authority hereby conferred upon him to sign, execute, acknowledge and deliver for and on its behalf as Surety and as its act and deed, all of the following classes of documents to-wit:

Indemnity, Surety and Undertakings that may be desired by contract, or may be given in any action or proceeding in any court of law or equity, policies indemnifying employers against loss or damage caused by the misconduct of their employees; official, bail, and surety and fidelity bonds. Indemnity in all cases where indemnity may be lawfully given; and with full power and authority to execute consents and waivers to modify or change or extend any bond or document executed for this Company, and to compromise and settle any and all claims or demands made or existing against said Company.

Western Surety Company further certifies that the following is a true and exact copy of Section 7 of the by-laws of Western Surety Company duly adopted and now in force, to-wit:

Section 7. All bonds, policies, undertakings, Powers of Attorney, or other obligations of the corporation shall be executed in the corporate name of the Company by the President, Secretary, any Assistant Secretary, Treasurer, or any Vice President, or by such other officers as the Board of Directors may authorize. The President, any Vice President, Secretary, any Assistant Secretary, or the Treasurer may appoint Attorneys-in-Fact or agents who shall have authority to issue bonds, policies, or undertakings in the name of the Company. The corporate seal is not necessary for the validity of any bonds, policies, undertakings, Powers of Attorney or other obligations of the corporation. The signature of any such officer and the corporate seal may be printed by facsimile.

In Witness Whereof, the said WESTERN SURETY COMPANY has caused these presents to be executed by its Senior Vice President with the corporate seal affixed this 15th day of September, 2003.

ATTEST

A. Vietor
Assistant Secretary

WESTERN SURETY COMPANY

By Paul T. Bruflat
Paul T. Bruflat, Senior Vice President

STATE OF SOUTH DAKOTA }
COUNTY OF MINNEHAHA } ss

On this 15th day of September, 2003, before me, a Notary Public, personally appeared Paul T. Bruflat and A. Vietor who, being by me duly sworn, acknowledged that they signed the above Power of Attorney as Senior Vice President and Assistant Secretary, respectively, of the said WESTERN SURETY COMPANY, and acknowledged said instrument to be the voluntary act and deed of said Corporation.

D. KRELL
SEAL NOTARY PUBLIC SEAL
SOUTH DAKOTA

My Commission Expires November 30, 2006

D. Krell
Notary Public



Form 672-4-2002

IN WITNESS WHEREOF, this instrument is executed in 5 (Number) counterparts, each one of which shall be deemed an original, this the 19th day of September, 2003.

ATTEST:

Imogene Norris
(Principal) Secretary

(SEAL)

Norris Excavating
(Principal)

By Chris Norris (s)

559 North Leath Road
(Address)

Portland, TN 37148

Kathy R. Dixon
Witness as to Principal

Exp. 6-5-05
(Address)

County: Sumner State: TN

ATTEST:

WESTERN SURETY COMPANY
(Surety)

By G. Van Veldhuizen
G. Van Veldhuizen, Asst Sec
G. Van Veldhuizen, Attorney-in-Fact

L Johnson
Witness as to Surety

101 S. Phillips Avenue
(Address)

Sioux Falls, SD 57104-6703

101 S. Phillips Avenue
(Address)

Sioux Falls, SD 57104-6703

NOTE: Date of BOND must not be prior to date of Contract.

If CONTRACTOR is partnership, all partners should execute BOND. IMPORTANT: Surety companies executing BONDS must appear on the Treasury Department's most current list (Circular 570 as amended) and be authorized to transact business in the state where the Project is located.