IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| RLI INSURANCE COMPANY | ) | |
| | ) | |
| v. | ) | NO. 3:04-0555 |
| | ) | |
| ADVANTAGE CONSTRUCTION | ) | |
| SERVICES, LLC, et al. | ) | |

TO: Honorable Todd J. Campbell, Chief District Judge

# REPORT AND RECOMMENDATION

By order entered July 27, 2005 (Docket Entry No. 99), this action was referred to the Magistrate Judge for a Report and Recommendation on all dispositive motions.

Presently pending before the Court is the plaintiff's motion for summary judgment (Docket Entry No. 63), to which the defendants have filed a response (Docket Entry No. 103). Also before the Court is the plaintiff's reply (Docket Entry No. 106).

For the reasons set out below, the Court recommends that the motion for summary judgment be granted.

## I. COMPLAINT AND PROCEDURAL BACKGROUND

RLI Insurance Company ("RLI") is an Illinois corporation which does business in Tennessee. It filed this action on June 24, 2004, asserting diversity jurisdiction under 28 U.S.C. § 1332. Named as defendants are Advantage Construction Services, LLC ("Advantage"), Southern Consulting LLC

("Southern"), Trent B. Smith, and Ilia Jefferson.[1] Smith and Jefferson are husband and wife and are the owners and operators of both Advantage and Southern.

RLI was the surety for performance and payment bonds it executed on behalf of Advantage for two, separate construction contracts Advantage had entered into with two municipalities. In return for RLI agreeing to execute such bonds, RLI asserts that the defendants had entered into an indemnity agreement whereby they agreed to indemnify RLI for any liability and losses it incurred as the surety on the bonds.

RLI alleges that Advantage defaulted on the first contract by not properly and timely performing the work it had contracted to complete and by not paying businesses for materials which were supplied for the project. As a consequence of Advantage's actions, RLI asserts that it paid $33,004.00 to a construction company in an attempt to locate and repair the faulty work and ultimately paid $46,216.50 to the City of Portland to settle the city's claim on the performance bond. RLI also asserts that it paid $29,833.21 to a material supplier, Walter A. Wood Supply Company, Inc. ("Walter A. Wood"), to settle a claim on the payment bond and that a claim of $1,018.49 is outstanding from another material supplier.

With respect to the second contract, RLI alleges that Advantage did not pay for materials supplied and that a claim exists on the payment bond from Walter A. Wood in the amount of $17,923.18, which RLI has not yet settled.

RLI asserts that it spent an additional sum of $14,363.23 for consulting engineers, attorneys, and other expenses to adjust and properly investigate these claims.

---

[1] Ms. Jefferson is incorrectly named as Illiad Jefferson in the Complaint. See Docket Entry No. 14, at 1 ¶ 5.

The instant lawsuit seeks damages for the losses already incurred by RLI, damages for further sums that RLI may pay in settlement of claims, reasonable attorneys fees, costs, and discretionary costs. RLI also requests general and specific relief as may be fair and equitable.

Subsequent to the complaint, a series of counterclaims, cross-claims, and third party complaints were filed which brought three other parties into this action. However, pursuant to a stipulation of dismissal (Docket Entry No. 53) and a voluntary dismissal (Docket Entry No. 109), all of these claims and parties were dismissed from the action without prejudice. See Orders entered April 1, 2005 (Docket Entry No. 53), and September 15, 2005 (Docket Entry No. 110).

Discovery and pretrial activity has occurred pursuant to a scheduling order (Docket Entry No. 51), and the action is set for a bench trial on December 20, 2005. See Order entered March 23, 2005 (Docket Entry No. 52).

## II. FACTUAL BACKGROUND

On June 29, 2001, RLI and Advantage executed an Agreement of Indemnity ("Indemnity Agreement"), see Exhibit C to Complaint (Docket Entry No. 1), to which Southern, Smith, and Jefferson were also parties as corporate and individual indemnitors. Id. RLI agreed to issue payment and performance bonds as a surety on behalf of Advantage for future contracts Advantage may enter into in exchange for Advantage and the indemnitors agreeing to indemnify RLI against any liability for losses and expenses sustained by RLI related to any bonds issued on behalf of Advantage.

In May 2002, Advantage entered into a contract with the City of Portland, Tennessee ("City of Portland") to install iron pipe which was to be used as a water distribution line. The project was

3

to be completed by October 31, 2002. RLI executed a performance bond and a payment bond in the amount of $136,169.00 on behalf of Advantage for this contract. See Exhibit A to Complaint. Advantage used a subcontractor, Tyrone Tackett, to install the pipe line and received one payment from the City of Portland in the amount of $75,348.00. However, there were numerous leaks in the bell housings[2] of the pipe line. Although Advantage attempted to repair the leaks and several meetings and communications occurred between Advantage and the City of Portland concerning the matter, the pipe line was not deemed satisfactory by the City of Portland and the City of Portland did not make another payment to Advantage. By a letter dated January 8, 2003, the City of Portland notified Advantage that it had not completed the project properly and within the time period required under the contract, that the City of Portland was terminating the contact, and that the City of Portland was taking over the project. See Docket Entry No. 74 at 41.

RLI was notified by the City of Portland through a letter, dated December 19, 2002, that a potential claim existed against it as the surety on the performance bond because of the problems associated with completion of the water line project. RLI then engaged two contractors, Larry A. Wall & Associates and Jones Brothers, Inc., to assess the situation and determine the potential for repair or salvage and to assess the costs of completing the project. RLI determined that it was not advisable to attempt to repair the water line as laid by Advantage.

The City of Portland then relet the job to another contractor who dug up the existing pipe and reused it to the extent possible. RLI eventually settled any claims the City of Portland had under the performance bond for $46,216.50.[3] See Exhibit D to Complaint. Because Advantage's contract

---

[2] The bell housing is the area where two pieces of pipe are joined.

[3] This amount is the difference between the amount of the contract the City of Portland awarded to another contractor to complete the project ($107,037.50) and the amount of funds retained by the

4

with the City of Portland provided for liquidated damages of $300.00 per day for each day the project was past the scheduled completion day of October 31, 2002, and because an outstanding backcharge of $2,937.03 existed for damage caused by Advantage to an existing water line, RLI believed that this settlement amount was economically advantageous.

In June 2002, RLI executed a performance bond and a payment bond in the amount of $92,960.00 on behalf of Advantage for a contract Advantage had entered into with Webster County, Kentucky ("Webster County") for work on a water line extension project. See Exhibit C to Complaint. RLI alleges that it suffered losses on the bonds because it had to pay out funds in order to investigate the amount of work remaining on the job, to determine what was necessary to complete the job, and to pay for water pipe that had been utilized on the job.

RLI contends that it made a demand that the defendants place funds on deposit to cover its losses but that this demand was refused. The instant lawsuit then ensued.

### III. THE MOTION FOR SUMMARY JUDGMENT AND THE RESPONSE

RLI contends that there are no material facts in dispute and that it is entitled to judgment as a matter of law. In support of its motion, RLI relies on the affidavit of Tim Winship, the affidavit of Angus Gillis, III, and the depositions of Gregg Harris, John Coleman Hayes, Kenneth Wilber, Terrance David Van Nuck, and Trent Smith (Docket Entry Nos. 69-96).

RLI argues that the Indemnity Agreement provides, in part, that:

The Contractor and Indemnitors jointly and severally shall exonerate, indemnify and keep indemnified the Surety from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, interest, court

---

City of Portland on the contract with Advantage ($60,821.00). See Docket Entry No. 75 at 11.

5

> costs, and counsel fees) and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of having executed or procured the execution of the Bonds, (2) By reason of the failure of the Contractor and the Indemnitors to perform or comply with the covenants of this Agreement or (3) in enforcing any of the covenants and conditions of this Agreement.
>
> Payment by reason of the aforesaid causes shall be made to the Surety by the Contractor and Indemnitors as soon as liability exists or is asserted against the Surety whether or not the Surety shall have made any payment therefore. Such payment shall be equal to the amount of the reserve set by the Surety or equal to such amounts as the Surety, and (sic) its sole judgment, deems sufficient to protect it from loss or potential loss. In the event of any payment by the Surety, the Contractor and Indemnitors further agree that in any accounting between the Surety, Contractors, and Indemnitors, the Surety shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such payments made by the Surety shall be prima facie evidence of the fact and the amount of the liability to Surety.

See Exhibit C to Complaint at 1. RLI further asserts that the Indemnity Agreement contains a "takeover" provision which permits it to step in when a default is asserted against Advantage on the construction contract and to complete the work or take such other action as RLI deems necessary. Id. at 2.

Based upon these contractual provisions, RLI contends that summary judgment should be granted in its favor. Relying on the affidavit of Tim Winship, RLI asserts that it should be awarded the sum of $161,516.85, plus prejudgment interest and unspecified photocopying charges incurred by the plaintiff's counsel.

The defendants' response is twofold. First, they argue that RLI did not properly investigate the claims that Advantage had defaulted on the underlying construction contracts. Advantage contends that the City of Portland breached the construction contract by failing to make a timely payment to Advantage for work which it had already completed on the water line project and that

this breach caused Advantage's delayed performance under the contract. Although Advantage does not dispute that the pipe line it laid had numerous leaks, Advantage argues that RLI had an obligation to investigate the City of Portland's allegation of a breach of contract and to contest these allegations in lieu of tendering payments to the City of Portland and incurring expenses. Advantage also contends that RLI did not properly investigate the Webster County contract. If it had, Advantage contends that it would have discovered that Advantage had paid Walter Wood Supply in full for the materials provided for that contract and that Webster County owed Advantage approximately $7,027.02 under the terms of the contract.

Second, the defendants argue that the expenses incurred by RLI were unreasonable. The defendants make this assertion in a general sense, however, and point to only two specific claims paid by RLI as unreasonable: the $33,004.00 payment to Jones Bros. and the payment to Walter Wood for supplies on the Webster County job. The defendants support their motion with the affidavit of Trent Smith (Docket Entry No. 105).

## IV. SUMMARY JUDGMENT STANDARD

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(c); Meyers v. Columbia/HCA Healthcare Corp., 341 F.3d 461, 466 (6th Cir. 2003). In deciding a motion for summary judgment, the court must view the factual evidence and draw all reasonable inferences in favor of the non-moving party. Id.; Hopson v. DaimlerChrysler Corp., 306 F.3d 427, 432 (6th Cir. 2002).

7

To prevail, the non-movant must produce specific evidence that demonstrates there is a genuine issue of material fact for trial. Meyers, 341 F.3d at 466. A mere scintilla of evidence is insufficient; there must be evidence on which the trier of fact could reasonably find for the non-movant. Id. The non-moving party may not rest on mere allegations but must set forth specific facts showing that there is a genuine issue for trial. Hopson, 306 F.3d at 432.

## V. CONCLUSIONS

The defendants do not take issue with the Indemnity Agreement itself or raise any argument that they are not bound, in a general sense, by the terms and provisions of that document. As such, the Court finds the Indemnity Agreement to be valid and enforceable.

With respect to RLI's claims, there is no support for the defendants' argument that RLI failed to act in good faith by not investigating the City of Portland's allegation of default on the part of Advantage and the city's claim against the performance bond. Although the defendants assert that RLI did not perform a full investigation of the matter, the defendants' only support for this assertion is the affidavit of Trent Smith (Docket Entry No. 103). However, the affidavit statements of Mr. Smith are merely conclusory assertions that RLI did not perform an investigation. Mr. Smith does not set out facts, of which he has personal knowledge, which support this assertion. The defendants have not offered any other type of supporting evidence for this assertion.

The lack of support for the defendants' argument is not surprising given the substantial and undisputed evidence presented by RLI which shows that RLI did, in fact, investigate the water line project upon being informed that problems and potential claims existed on the performance bond. RLI engaged the services of two consultants and analyzed the costs and benefits of the various

scenarios which existed regarding completion of the project.  See Affidavit of Timothy Winship (Docket Entry No. 66) at ¶¶ 6-13, Supplemental Affidavit of Timothy Winship (Docket Entry No. 108) at ¶¶ 1-3, and Affidavit of Larry Wall (Docket Entry No. 107).  There is simply no evidence before the Court which supports a conclusion that RLI did not perform a good faith investigation into the claim made by the City of Portland or into any other aspect of the City of Portland water line project as it related to the performance and payment bonds executed by RLI.

The defendants have also not supported their argument that the City of Portland was the breaching party in the underlying construction contract.  The defendants have not shown any basis for this argument in the contract itself and have not set out any actual legal argument which supports this contention.  Merely saying that a breach occurred because a payment was not made to the City of Portland in the midst of the problems that developed because of leaks in the water pipe line is not sufficient to support this legal argument.

The defendants also argue that RLI should have contested the City of Portland's claim against the performance bond because the city's design engineer, through a letter dated October 8, 2002, had approved the use of repair sleeves and instructed Advantage to repair any leaks.  See Defendants' Response (Docket Entry No. 103) at 2 and Affidavit of Trent Smith (Docket Entry No. 105) at ¶ 6.  The defendants apparently contend that the City of Portland was thus somehow estopped from rejecting the water pipe line as completed by Advantage.

This argument is unsupported by the undisputed facts before the Court.  First, the contract between the City of Portland and Advantage specifically provides that approval of work by the City or its engineers does not relieve Advantage from its contractual obligation to satisfy the contract.  See Plaintiff's reply (Docket Entry No. 106) at 3.  Second, the October 8, 2002, letter cannot be

9

reasonably read as a statement by the City of Portland that it was ratifying or affirming any of the actions taken by Advantage on the water pipe project or that the City was in any way relieving Advantage from it obligations under the contract. To the contrary, in the letter, the City of Portland clearly rejects Advantage's contention that faulty pipe was to blame for the leaks on the project, suggests that assembly and installation faults were the reason for leaks, and indicates that Advantage should take the appropriate steps necessary to complete the project in a timely manner. See Docket Entry No. 78 at 3-5. If anything, the letter was a clear warning shot to Advantage that the City of Portland was not satisfied with the performance of Advantage on the project and there was a possibility of liquidated damages if the project was not completed on time in terms of both a satisfactory water pipe line and the full payment by Advantage to all of the material suppliers. Id.

Moreover, if the defendants believed that the City of Portland was the breaching party and/or that the City of Portland's claim against the performance bond should not be paid but should instead be disputed by RLI, the Indemnity Agreement provided the defendants with the ability to request that RLI litigate such claim. Specifically, the Indemnity Agreement provided that the defendants could make such a request and deposit with RLI cash or collateral. In the section entitled "SETTLEMENTS," the Indemnity Agreement provides as follows:

> The Surety shall have the right to adjust, settle or compromise any claim, demand, suit or judgment upon the Bonds, unless the Contractor and Indemnitors shall request the Surety to litigate such claim or demand, or to defend such suit, or to appeal from such judgment, and shall deposit with the Surety, at the time of such request, cash or collateral satisfactory to the Surety in kind and amount to be determined at the Surety's sole discretion, to be used in paying any judgment or judgments rendered or that may be rendered, with interest, costs, expenses and attorneys' fees, including those of the Surety.

See Indemnity Agreement at 3, Exhibit C to Complaint. The defendants did not exercise this right under the Indemnity Agreement. Their failure to do so undercuts their own argument.

The defendants' sole remaining argument in opposition to summary judgment is that the payments made by RLI were unreasonable. The defendants do not dispute that the actual amount of payments made by RLI related to the City of Portland project totalled $126,402.54 and that the actual amount of payments made by RLI related to the Webster County project totalled $29,907.38. See Defendants' Response to the Plaintiff's Statement of Material Facts (Docket Entry No. 104) at ¶¶ 8-9. The defendants also do not dispute that RLI has incurred $6,973.65 in attorneys fees for work performed since November 29, 2005, and $1,960.00 for the cost of deposition transcripts Id. at ¶ 11.

The defendants' unreasonable costs argument is based upon three theories. The first theory is easily clearly without merit. The defendants assert that Walter A. Wood had been paid in full for the costs of materials provided for the Webster County project. See Defendants' Response in Opposition (Docket Entry No. 103) at 2. As RLI points out, however, the total amount of indebtedness Advantage had to Walter A. Wood, which was paid by RLI on the payment bonds, is not disputed by the defendants. See Defendants' Response to Statement of Material Facts (Docket Entry No. 104) at 7. Further, RLI has offered evidence that it did, in fact, contact Walter A. Wood regarding exactly what materials charges were considered unpaid and which materials charges were credited by Walter A. Wood for the payments which Advantage had made. See Supplemental Affidavit of Timothy Winship (Docket Entry No. 108) at ¶ 4 and Exhibit A. This issue simply fails to support the defendants' contention that RLI's payments to Walter A. Wood for materials was unreasonable.

The defendants' second theory similarly fails to raise a genuine issue of material fact. The defendant contends that the sum of $7,027.02 is the proper amount of unpaid contract proceeds

11

which RLI should have recovered on the Webster County project instead of the sum of $2,726.72 which RLI recovered. See Defendants' Response in Opposition (Docket Entry No. 103) at 2. However, the defendants fail to provide any actual evidence to support the accuracy of this higher figure. Again, the defendants rely only on the affidavit of Trent Smith, see Docket Entry No. 105 at ¶ 7, but this affidavit offers only a conclusion and no supporting facts.

The defendants' last theory is that the payments made to Jones Brothers were excessive. The defendants contend that Jones Brothers did not perform any actual work to repair the leaks and did not expose any of the bell housings since these were already exposed by Advantage at the time they left the project. The defendants' attempts to minimize the work performed by Jones Brothers in an attempt to create a genuine issue of material fact is unavailing. Regardless of what work the defendants contend that Jones Brothers did not perform, it is undisputed that they did perform substantial services for RLI related to investigation and analysis of the situation involving the water line project, the extent of the leakage problem, and the costs of repairing the problem. See Affidavit of Timothy Winship (Docket Entry No. 66) ¶¶ 7-8, Supplemental Affidavit of Timothy Winship (Docket Entry No. 108) at ¶¶ 2-3, Affidavit of Larry Wall (Docket Entry No. 107), and deposition of Terrance Van Nuck (Docket Entry No. 87). In addition, other than asserting that the amount paid to Jones Brothers was unreasonable, the defendants have not pointed to any particular expense paid by RLI to Jones Brothers as unreasonable. Further, defendant Smith himself stated in his deposition that he had not reviewed the invoices of Jones Brothers and could not offer an opinion as to whether the invoices were reasonable or unreasonable. See Deposition of Trent Smith (Docket Entry No. 96) at 35.

The defendants have not raised a genuine issue of material fact to warrant the Court denying the plaintiff's motion for summary judgment. A showing of bad faith on the part of a surety requires more than merely the indemnitor's disagreement with the payments made. Neither a lack of diligence nor negligence are sufficient to satisfy a showing of bad faith. See Safeco Ins. Co. of Am. v. Criterion Investment Corp., 732 F. Supp. 834, 841 (E.D. Tenn. 1989).

Based on the evidence before the Court, no reasonable trier of fact could find in favor of the defendants if this action went to trial. The evidence shows that Advantage defaulted on contractual obligations under the two construction contracts by not performing the contracted-for work properly and by not paying for materials supplied. Advantage's actions caused RLI to make payments on the performance and payment bonds it had executed on behalf of Advantage. RLI acted reasonably and in good faith in making these payments, all of which were reasonable and are supported by the evidence. The Indemnity Agreement signed by each of the defendants obligated the defendants to indemnify RLI for the payments it made as surety on the bonds. Accordingly, summary judgment should be granted to RLI as a matter of law.

## RECOMMENDATIONS

Based on the foregoing, the Court respectfully RECOMMENDS that:

1) the plaintiff's motion for summary judgment (Docket Entry No. 63) be GRANTED; and

2) judgment be awarded against defendants Advantage Construction Services, LLC, Southern Consulting LLC, Trent B. Smith, and Ilia Jefferson, jointly and severally, in favor of the RLI Insurance Company in the amount of $161,516.85, plus prejudgment interest and costs as may be determined.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of receipt of this notice and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

JULIET GRIFFIN
United States Magistrate Judge